1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| UNITED FEDERATION OF CHURCHES, LLC (DBA "THE SATANIC TEMPLE"), | ) ) ) ) | No. 20-cv-509 |
| Plaintiff, | ) ) ) | COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF |
| v. | ) ) | |
| DAVID ALAN JOHNSON (AKA "ADJ"), LEAH FISHBAUGH, MICKEY MEEHAM, AND NATHAN SULLIVAN, | ) ) ) ) ) | |
| Defendants. | | |

In support of its claims, Plaintiff United Federation of Churches, LLC (dba "The Satanic Temple") (abbreviated as "TST") alleges as follows:

## I.  PREAMBLE

1.     This case is about two hacked social media accounts and failed attempts at hacking a social media account and an email account.   TST is suing Defendants for misappropriating two of TST's Facebook business pages by replacing all approved administrators with themselves.   Shortly after the misappropriation, Johnson started posting content critical of TST from TST's own webpage while retaining the original branding.   Later, Johnson modified the name of the website, ostensibly to create a competitor organization, while appending the suffix "Archive Temple Chapter."  Defendants now wrongfully maintain exclusive control of over five years of content, all created by and for TST, on websites with more than 17,500 followers.  Because of Defendants' defamatory commentary, unfairly aimed directly at

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 1

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

TST's audience, the Washington Chapter has lost members and has had its reputation harmed.

2.      The questions presented by this case are whether the above constitutes (1) cyber fraud and abuse under the Computer Fraud and Abuse Act ("CFAA"); (2) cyberpiracy under the Lanham Act; (3) tortious interference with business expectancy under Washington common law; (4) unfair competition; or (5) defamation.

3.      If so, the Court should find Defendants liable for permanent injunctive relief to return the websites to TST as their rightful owner and to refrain from accessing any TST materials, statutory damages, punitive damages, attorney's fees, and the costs of litigation.  In aggregate, Defendants should be ordered to pay $142,973.92 or more in statutory and economic damages.

## II.      JURISDICTION AND VENUE

4.      This Court has original jurisdiction over the federal claims arising under the CFAA and the Lanham Act. 28 U.S.C. § 1331 (federal question); 18 U.S.C. § 1030(g) (CFAA); 15 U.S.C. § 1121 (trademark).  The Court has supplemental jurisdiction over the state common law claims arising from the same facts. 28 U.S.C. § 1367.

5.      The Court can properly exercise personal jurisdiction over each Defendant because they live within this District.

6.      Venue properly lies with this Court because the hacking took place in Seattle, Washington. 28 U.S.C. § 1391.

## III.      PARTIES

7.      TST is a religious organization.  See generally "About us," available at https://www.thesatanictemple.org/about-us.html

8.      TST subscribes and advances seven fundamental tenets:

(1) One should strive to act with compassion and empathy toward all creatures in accordance with reason.

(2) The struggle for justice is an ongoing and necessary pursuit that should prevail over laws and institutions.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 2

No. 20-cv-509

(3) One's body is inviolable, subject to one's own will alone.

(4) The freedoms of others should be respected, including the freedom to offend. To willfully and unjustly encroach upon the freedoms of another is to forgo one's own.

(5) Beliefs should conform to one's best scientific understanding of the world. One should take care never to distort scientific facts to fit one's beliefs.

(6) People are fallible. If one makes a mistake, one should do one's best to rectify it and resolve any harm that might have been caused.

(7) Every tenet is a guiding principle designed to inspire nobility in action and thought. The spirit of compassion, wisdom, and justice should always prevail over the written or spoken word.

*See* "Our tenets" available at https://www.thesatanictemple.org/our-tenets.html.

9.      TST's mission is to "encourage benevolence and empathy among all people, reject tyrannical authority, advocate practical common sense and justice, and be directed by the human conscience to undertake noble pursuits guided by the individual will." *See* "Our mission" available at https://www.thesatanictemple.org/our-mission.html.

10.      TST was the subject of the recent documentary "Hail Satan?" (2019), directed by Penny Lane and distributed by Magnolia Pictures.

11.      TST maintains sole title to the trade name "The Satanic Temple" in the context of religious organizations. *See* **Exhibit 1** (registration of trademark).

12.      TST has adherents in each of the 50 States, importantly to include Washington. Groups of adherents are commonly denominated "Chapters." Chapters are largely autonomous but are subject to centralized control to ensure faithfulness to organizational principles and purposes.

13.      Defendant David Alan Johnson is an individual residing in Seattle, which is within this Court's District.   Johnson is a former associate of TST who misappropriated TST's Washington Chapter Facebook website from within this Court's District and is using it and its audience in an effort to undermine TST and to create a competitor organization.

14.      Defendant Leah Fishbaugh is an associate of Johnson, and former associate of

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 3

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

TST, who aided and abetted the hacking.  Fishbaugh also lives in Seattle.  Fishbaugh changed the account credentials to the Washington Chapter's email account in a failed attempt to usurp control over the email account.  On information and belief, Johnson has wrongfully given Fishbaugh administrative privileges to TST's Washington Chapter page.

15.   Defendant Mickey Meeham is an associate of Johnson, and former associate of TST, who aided and abetted the hacking.  Meeham also lives in Seattle.  On information and belief, Johnson has wrongfully given Fishbaugh administrative privileges to TST's Washington Chapter page.  Meeham misappropriated the Affiliate page.

16.   Defendant Nathan Sullivan is an associate of Johnson, and former associate of TST, who aided and abetted the hacking.  Sullivan also lives in Seattle.  TST entrusted Sullivan as the custodian of various documents which constitute trade secrets.  Examples include original signed membership agreements, internal policies and procedures, and a listing of members with contact information.  Sullivan now wrongfully maintains exclusive control over these sensitive documents.  On information and belief, Johnson has wrongfully given Sullivan administrative privileges to TST's Washington Chapter page.

## IV.   FACTUAL BACKGROUND

17.   Facebook is a ubiquitous internet social medium which permits users to create and share content including without limitation links, commentary, and written conversations.  Content can be shared by individuals on personal pages or by organizations on business pages.

18.   Twitter is also a ubiquitous internet social medium which permits users to create and share substantially similar content as Facebook.

19.   Google is a ubiquitous internet-based information platform.  Among its many services, Google provides an email platform ("Gmail") and a cloud-based document creation and storage platform ("Google Drive.")

20.   Facebook is TST's primary platform of communicating with its membership.

21.   Twitter is TST's secondary platform of communicating with its membership.

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 4

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

22.     TST's Washington Chapter has a Google account to generally facilitate its organizational purposes by creating and storing documents.

23.     In October of 2014, the Washington Chapter business page was created exclusively for the benefit of TST in its efforts to disseminate information for what was then the Seattle Chapter. This       page,       in       its       current       state,       is       available       at https://www.facebook.com/thesatanictemplewashington (content predating March 20, 2020). *See also* **Exhibit 2** (Chapter page history)

24.     Over the next several years, the Washington Chapter grew the Facebook page to an audience exceeding 17,000 followers. *Id.*

25.     In January of 2015, the Washington Chapter created a Twitter account for the organization. *See* https://twitter.com/TST_Washington.  Currently, the Twitter account has an audience of about 4,000 followers. *Id.*

26.     In September of 2018, the Washington Chapter created a secondary Facebook page, named "TST WA Allies," to facilitate communications with individuals who were interested in TST but did not want to identify as a member. This page., in its current state, is available at https://www.facebook.com/queersatanicmemes; *see also* **Exhibit 3** (Allies page history).  The Allies page has about 500 followers.

27.     Until the hacking by Defendants, both Facebook pages were maintained and controlled exclusively by approved administrators.

28.     Administrators are subject to a written Membership Agreement and Code of Conduct, which instruct requirements for permissible activity on behalf of TST.  In relevant part, the instructions pertaining to online conduct follow:

Public statements & interactions with med

All public actions and statements must be approved and vetted by the TST National Council and the TST Executive Council. If a member is approached by media or asked for any official statement regarding an action or belief relating to TST all members must refrain

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 5

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

from comment and refer the inquiring party to the Chapter Head.

. . .

Confidentiality

Members should respect confidentiality, including documentation. Internal information should not be shared beyond members of the local chapter. Members' names, contact information, and meeting locations are also considered confidential. If you are ever unsure, don't share.

. . .

Copyright

Material produced by The Satanic Temple is the property of the organization. Consent for use of logo, name or other identity materials may be approved for use for certain projects. You may not use any official materials without prior approval. Approval may also be withdrawn at any time.

. . .

Online code of conduct

As a member of TST, your interactions with others, both online and off, will be held to the TST Code of Conduct. As an individual, we support your freedom of speech and freedom to hold your opinions. Members' behavior, however, reflects on the organization as whole and also builds the internal culture of TST. Therefore, we have a code of conduct specifically for the internet.

Respect the diversity of opinions you find online and respond in a courteous manner. All TST members' online conduct must be free of harassment, stalking, threats, abuse, insults, defamation, or humiliation. This includes, but is not limited to, demeaning comments of an ethnic, religious, sexist, or racist nature; and unwanted sexual advances or intimidation by email or online. Such behavior will result in termination from the organization.

As a member of TST, always assume that what you publish on the web is permanent.

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

Anyone can easily print out a comment or save it as a screenshot. Remember, that TST is often engaged in legal suits and exchanges online, or via text have the right to be exposed in the case of a deposition. Think before you hit "send".

Using TST in connection with surveys, contests, pyramid schemes, chain letters, junk email, spamming or any duplication or unsolicited messages is prohibited and will result termination from the organization.

Any public disagreements between TST members should be taken to a private conversation. If mediation is needed, it will be provided.

*See* Membership Agreement and Code of Conduct (abbreviated as "Code of Conduct"), available as **Exhibit 4**.

29.     The above terms of the Code of Conduct form the contours of administrators' authorization to access TST's social media accounts.

30.     Defendants, each, were entrusted with administrative rights to the above-described social media accounts, subject to the requirements set forth in the Code of Conduct.

31.     Until the hacking, Defendant Sullivan had exclusive access to the original copies of each Defendants' signature, acknowledging and agreeing to be bound by the above terms in return for access to the social media accounts.

32.     On information and belief, Sullivan still has exclusive access to these documents, among other highly sensitive materials including membership listings, internal policies and procedures, and meeting notes.

33.     Defendants were each well aware of the Code of Conduct because it served as a source of friction leading up to the events giving rise to this litigation.  For example, on March 2, 2020, Johnson shared the following post on the Allies page outside of his authority:

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15



16   34.   The ensuing deletion and reiteration of the expectation that Johnson adhere to the

17   Code of Conduct as a condition of continued social media access would serve as foreshadowing for

18   the misappropriation of the Allies page.

19   35.   Some time before March 14, 2020, Defendants entered into an unlawful agreement

20   to misappropriate and shut down substantially all the internet presence of TST's Washington

21   Chapter.  Defendants sought to advance the twin goals of forming a competitor organization and

22   harming TST.

23   36.   On March 14, 2020, Meeham exceeded authorization for the Allies page by

24   removing all TST-approved administrators except the other named Defendants, changing the name

25   to "Evergreen Memes for Queer Satanic Friends," and posting the following manifesto:

26

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

**Evergreen Memes for Queer Satanic Fiends**
March 14 at 7:59 PM

**This page is no longer affiliated with The Satanic Temple.**

Ave Satanas!

I was recently notified that talking about transphobes and ableism was considered not to be relevant to The Satanic Temple's "International Council" in Salem or to the local chapter in Washington State.

So by talking about leftist politics like how "The struggle for justice is an ongoing and necessary pursuit that should prevail over laws and institutions," this page wasn't being Satanic.

Specifically:
"(IC is aware of how badly the allies page is fucking up), isn't worried about being labelled a criminal (and endorses negative and unrelated leftist politics on TST-affiliated social media). TST WA Allies should be about Satanism. On March 4th, this was told to you and ADJ, but just as recently as two days ago, there is a post about ableism. (this as a post from an individual is great - as TST WA not acceptable)."

So to be clear, this page thinks ableism, misogyny, and racism are superstitions, fascists are bad, transphobes can shut the fuck up, and the only good bootlickers do it for a kink and not because they love making excuses for cops killing people.

No gods, no masters.

Be gay, do crime, hail Satan

37.     Meeham, in conjunction with the other named Defendants, has since been posting material in violation of the Code of Conduct.

38.     On or around March 18, 2020, Johnson exceeded authorization for the Twitter account by following a number of extremist groups to create a false impression of affiliation between TST and extremism, and changing the description from "Washington State Chapter of the Satanic Temple" to "Satan stands as the ultimate icon for selfless revolt.  We oppose irrational, unjust hierarchies like white supremacy, patriarchy, ableism, & cishet normality."

39.     On March 20, 2020 beginning at 10:11 pm, Johnson exceeded authorization for the Chapter page by removing all TST-approved administrators, modifying the cover page without approval, and posting a three-page manifesto.  The manifesto, as it looks today, is attached and incorporated as **Exhibit 5** (the archive reflects Central time).  Originally, the manifesto was posted with the original trade dress of TST.

40.     Broadly, the manifesto levies false claims that TST leadership is cozy with the alt-right, are white supremacists, are generally insufficiently leftist for Johnson's preference, and does

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

not conform to Johnson's impression of Satanism.  Posting the manifesto exceeded Johnson's grant of authority as defined in the Code of Conduct.

41.     Johnson then spent the next couple days posting links and commentary from the Chapter page, all with the general, and false, theme that TST leaders are incompetent fascists.  See **Exhibit 6** (posts and commentary in excess of authority).  The links and commentary all exceeded Johnson's grant of authority as defined in the Code of Conduct.

42.     On March 20 at 11:36 pm, Fishbaugh exceeded authorization by changing the password to the Chapter's Google-based email account, changing the recovery email, and changing the phone number.

43.     On March 22 at 3:08 pm, Johnson modified the name of the Chapter page from "The Satanic Temple Washington" to "Satanic Washington State – Archived Temple Chapter" and modified the profile picture to replace TST-specific iconography with "antifa" symbolism.  These modifications exceeded Johnson's grant of authority as defined in the Code of Conduct.

44.     As a result of the foregoing conduct, Sullivan's control over original signed copies of membership agreements and cloud-based trade secret documentation, became unauthorized.  Sullivan's continued control over these materials exceeds the authority granted by the Code of Conduct.

45.     "Antifa" is a left-wing political movement with a penchant for violence.

46.     TST opposes the use or threat of violence as a mechanism for control.

47.     The    Chapter    page    maintains    its    original    URL: https://www.facebook.com/TheSatanicTempleWashington/.

48.     As of  the date of  filing, TST's Washington Chapter has lost between 20 and 30 members because of Johnson's false claims published to the Chapter page.

49.     TST's Washington leadership have repeatedly demanded the return of the Facebook pages from both Facebook and Defendants.

50.     Facebook refused to correct the matter, mislabeling the issue as a "Page admin

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

issue" to the exclusion of "infringements of your legal rights."

51.     One week ago, this time through counsel, TST reiterated to Facebook and to Johnson the unlawful nature of the foregoing conduct of Defendants.

52.     Facebook did not respond and did not correct the issue.

53.     Defendants simply ignored all communications, from counsel and TST alike.

54.     TST was able to recover the Twitter account and the email account through Twitter and Google, respectively.

55.     TST is unable to recover the Facebook account without relief from this Court.

### III.     CAUSES OF ACTION

### Count 1:

### CFAA violation

56.     The CFAA provides a civil cause of action when a Defendant knowingly accesses a "protected computer" by "exceeding authorized access," which causes a cumulative "loss" of at least $5,000.  *See* 18 U.S.C. § 1030(g), (c)(4)(A)(i)(I).  Or, in the case of an attempted violation, the successful violation would cause at least $5,000 in "loss."  *Id.*

57.     A "computer," is broadly defined as any device for processing or storing data.   18 U.S.C. § 1030(e)(1).

58.     A "protected computer" is a "computer" which is "used in or affecting interstate or foreign commerce or communication."  18 U.S.C. § 1030(e)(2)(B).

59.     Websites have been recognized as a "protected computer" within the meaning of the CFAA.  See United States v. Drew, 259 F.R.D. 449, 457-58 (C.D. Cal. 2009).

60.     A defendant "exceeds authorized access" by accessing a computer "with authorization and to use such access to obtain or alter information in the computer that the accesser is not entitled so to obtain or alter."  18 U.S.C. § 1030(e)(6).

61.     A "loss" is "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 11

No. 20-cv-509

information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

62.     As described above, Defendants wrongfully and intentionally by exceeding their authorized access, perpetrated fraud upon TST and its membership, as well as any who happened upon the offending posts, by posting under the misappropriated identity of TST.   Perfectly encapsulating the issue, one commenter expressed confusion on March 21, stating:



*See* https://www.facebook.com/TheSatanicTempleWashington/posts/2908426992513671

63.     There is a cognizable dollar value to social media accounts.  Preliminary estimates of the "loss" related to the misappropriation of the Chapter page is $33,689.70, plus $1,037.52 for the Allies page.  The Twitter page, if successfully misappropriated, would have lost $8,246.70.  The aggregate sum being $42,973.92—well in excess of the $5,000 jurisdictional requirement.

64.     Further compounding the losses are TST's attorney's fees for investigating this matter, entering futile demands for corrective action to both Facebook and Defendants, and preparing this legal action.  TST will continue to incur losses in the costs and fees related to this lawsuit.  TST's costs and attorney's fees already exceed $6,000 for dealing with this matter.

65.     TST has incurred, and continues to incur, reputation losses from the misappropriation of its Facebook pages.  These reputation losses are irreparable by money damages.

66.     Based on the foregoing, TST is entitled to injunctive relief in the form of an order requiring Defendants surrender control of the Facebook pages, a permanent injunction enjoining

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

Defendants from accessing any of TST's "protected computers" (i.e. any internet-based media) under threat of contempt, and economic damages of at least $48,973.92.

## Count 2:

## Cyberpiracy

67.     The Lanham Act makes cyberpiracy an actionable trademark violation.  15 U.S.C. § 1125(d).

68.     The Lanham Act provides for a statutory award of not less than $1,000 and not more than $100,000.  15 U.S.C. § 1117(d).  A plaintiff is also entitled to the costs of the litigation and, in the Court's discretion, a reasonable attorney's fee.  15 U.S.C. § 1117(a).

69.     Injunctive relief is also available to a successful plaintiff.  15 U.S.C. § 1116.

70.     TST holds the exclusive rights to the name "The Satanic Temple."  **Exhibit 1**.

71.     Defendants are trafficking in the name "The Satanic Temple" by misappropriating the website located at the URL "facebook.com/**TheSatanicTemple**Washington" (emphasis added).

72.     Bad faith is established by the manner in which Defendants hijacked the webpages, attempted to hijack the Twitter and email accounts, removed all approved administrators, gloated about the matter, and refused to return control of the websites to their rightful owners.

73.     Based on the foregoing, TST is entitled to injunctive relief in the form of an order requiring Defendants surrender control of the Facebook pages, a permanent injunction enjoining Defendants from accessing any of TST's "protected computers" under threat of contempt, statutory damages between $1,000 and $100,000, costs, and a reasonable attorney's fee.

## Count 3:

## Tortious interference with business expectancy

74.     TST maintains ongoing business relationships with Facebook, importantly to include the Chapter page and Allies page.

75.     There is an economic benefit for TST in having a ubiquitous platform to interact with members and prospective members in the convenience of their homes and wherever they carry

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 13

No. 20-cv-509

their smartphones.  Namely, with increased awareness comes increased membership and donations which create a positive feedback loop.

76.     At the relevant time, Defendants had subjective knowledge of the business relationship.

77.     Defendants intentionally and with an improper motive acted to sever the Washington Chapter's relationships with Facebook by misappropriating the two websites for the twin goals of harming the Washington Chapter, and TST at large, and creating a competitor organization.

78.     As a direct and proximate result of Defendants' wrongful conduct, TST has suffered substantial economic injury and loss of business opportunity and has incurred attorney's fees and other costs in attempting to remedy the situation.

79.     Based on the foregoing, TST is entitled to injunctive relief in the form of an order requiring Defendants surrender control of the Facebook pages, a permanent injunction enjoining Defendants from accessing any of TST's "protected computers" under threat of contempt and punitive damages.

### Count 4:

### Violations of the Consumer Protection Act

80.     Washington's Consumer Protection Act prohibits unfair, unconscionable, or deceptive methods in the conduct of trade or commerce.  *See* Chapter 19.86 RCW.

81.     TST has protected, registered trade names and common law trade dress for the services it provides to the community.  Of importance to this case, the name "The Satanic Temple" is a registered mark; and the symbolism and content included in the Chapter page and Allies page at the time substantially all of the offending material was posted are trade dress.

82.     Further, TST has a protected interest in its trade secret materials including membership listings, membership agreements, internal policies and procedures, other governance materials, and access to a hard-won social media following.

83.     Defendants' unauthorized use of TST's protected intellectual property are intended

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 14

No. 20-cv-509

to unlawfully aid in the creation of a competitor organization by diverting the recognition arising from TST's reputation and goodwill.

84.     Defendants' unauthorized use of TST's protected intellectual property is intended to deceive the public with a deliberate, willful intent to disparage or pass off competitor services as those of TST, for the end-goal of harming TST's goodwill.

85.     The harm to TST's goodwill cannot be adequately remedied at law.

86.     The unfair or deceptive acts or practices occurred in the conduct of Defendants' trade or commerce.

87.     The unfair or deceptive acts or practices impact the public interest.

88.     As a result of Defendants' unfair or deceptive acts or practices Plaintiff suffered injury to its business or property.

89.     Defendants' acts or practices are the proximate cause of damages suffered by Plaintiff.

90.     Based on the foregoing, TST is entitled to injunctive relief in the form of an order requiring Defendants surrender control of the Facebook pages, surrender control of all TST materials, a permanent injunction enjoining Defendants from accessing any of TST's "protected computers" under threat of contempt, a permanent injunction enjoining Defendants from making use of any information obtained during their association with TST under threat of contempt, and actual and treble damages.

## Count 5:

### Defamation

91.     Defendants owed and continue to owe a duty to TST to refrain from publishing false and defamatory statements about TST and its employees.

92.     By falsely ascribing extremist ideologies and affiliations to TST, Defendants published and republished false and defamatory statements about TST and TST's employees.

93.     The false and defamatory statements published by Defendants regarding TST and

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

its employees, as reasonably understood by outside observers, impugns the integrity and competence of TST and its employees, discredits TST's activities, undermines confidence of the public in TST's role in the community, and drives away current and prospective members from TST.

94.     The false and defamatory statements published by Defendants, when considered alone, tends to subject TST and its employees to hatred, distrust, ridicule, contempt, or disgrace, and tends to injure TST's reputation.

95.     By carrying out the foregoing conduct, Defendants acted maliciously and with reckless indifference to the consequences of their actions and the rights of TST.

96.     Based on the foregoing, TST is entitled to injunctive relief in the form of an order requiring Defendants surrender control of the Facebook pages, surrender control of all TST materials, a permanent injunction enjoining Defendants from publishing false statements about TST or any of its membership, and punitive damages.

## IV.     PRAYER FOR RELIEF

**WHEREFORE**, in addition to all other relief to which the Court finds TST entitled, TST prays for orders providing as follows:

(1)     Defendants shall, jointly and severally, immediately return full control of the following to Plaintiff, under threat of contempt:

    (a)  The Chapter Facebook page

    (b)  The Allies Facebook page; and

    (c)  All TST materials, whether in paper or electronic format, including without limitation: all signed agreements, all membership listings, all internal policies and procedures, all governance documentation, any branding materials, and any other document created by or for the benefit of TST.

(2)     Defendants shall, jointly and severally, permanently refrain from the following under threat of contempt:

    (a)  Accessing any administrative function of any internet-based medium, including

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 16

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

without limitation any social media accounts, email accounts, or document storage accounts, created by or for the benefit of TST

    (b) Publishing or republishing false statements about TST or any of its membership or causing or permitting third parties to publish or republish false statements about TST or any of its membership.

(3)    Defendants shall, jointly and severally, pay economic damages to Plaintiff in an amount to be determined by the Court, to meet or exceed $42,973.92.

(4)    Defendants shall, jointly and severally, pay statutory damages to Plaintiff in an amount to be determined by the Court, to meet or exceed $100,000.

(5)    Defendants shall, jointly and severally, pay treble damages to Plaintiff in an amount to be determined at trial.

(6)    Defendants shall, jointly and severally, pay attorney's fees and costs to Plaintiff in an amount to be determined after trial.

(7)    Defendants shall, jointly and severally, pay pre-judgment and post-judgment interest until paid in full.

Respectfully submitted this 3rd day of April, 2020.

LYBECK PEDREIRA & JUSTUS, PLLC

By: */s/ Benjamin Justus*
Benjamin Justus (#38855)
Attorneys for Plaintiff
Chase Bank Building
7900 SE 28th St., Fifth Floor
Mercer Island, WA 98040
206.687.7805 /ph  206.230.7791 /fax
ben@lpjustus.com / email Justus

And: */s/ Matthew A. Kezhaya*
Matthew A. Kezhaya (AR#2014161), pro hac vice pending
Attorney for Plaintiff
Kezhaya Law PLC

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 17

No. 20-cv-509

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

1202 NE McClain Rd
Bentonville, AR 72712
479.431.6112 /ph  479.282.2892 /fax
matt@kezhaya.law / email Kezhaya

COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF - 18

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791