1

2

3

4

5

6

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

7

8   United Federation of Churches, LLC (dba        )
    "The Satanic Temple"),                          )        No. 2:20-cv-00509-RAJ
9                                                    )
                          Plaintiff,                 )        PLAINTIFF'S   RESPONSE      IN
10                                                   )        OPPOSITION  TO  DEFENDANTS'
          v.                                         )        MOTION TO DISMISS
11                                                   )
    David Alan Johnson (aka "ADJ"), Leah            )
12  Fishbaugh, Mickey Meeham, and Nathan           )
    Sullivan,                                        )
13                                                   )
                          Defendants.                )
14

15      Comes now Plaintiff United Federation of Churches, LLC (dba "The Satanic Temple")

16  (abbreviated as "TST") with a response in opposition to Defendants' Rule 12(b)(6) Motion to

17  Dismiss (Dkt. 11).

18

19

20

21

22

23

24

25

26

PLAINTIFF'S RESPONSE  IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS - 1

No. 2:20-cv-00509-RAJ

1

## I.   Introduction

2

TST filed a complaint because Defendants stole TST's Facebook pages to create a competitor

3

organization and to publish defamatory statements about TST to TST's social media followers.

4

Defendants move to dismiss on all counts.

5

6

The Court should deny the motion to dismiss the Computer Fraud and Abuse Act (CFAA)

7

count because TST revoked Defendants' permission to use the social media accounts prior to the

8

misappropriation and, "technological gamesmanship . . . to aid in access will not excuse liability."

9

The Court should deny the motion to dismiss the Cyberpiracy count because TST pleaded

10

that Defendants misappropriated the Facebook page, in part, with the goal of forming a

11

competitor organization.

12

The Court should deny the motion to dismiss the tortious interference claim because the

13

Facebook page is a service which provides TST an economic benefit.  For Defendants to divert

14

the value of that service away from TST is, necessarily, an interruption of the business

15

relationship between Facebook and TST.  To Defendants' point that TST can build a new

16

Facebook page, TST responds, "Build your own."

17

The Court should deny the motion to dismiss the Consumer Protection Act (CPA) claim

18

because Defendants intend to offer competitor services on the back of the recognition arising

19

from TST's reputation and goodwill and the trade-secret membership listings, membership

20

agreements, internal policies and procedures, other governance materials, and access to a hard-

21

won social media following.

22

Last, the Court should deny the motion to dismiss the defamation claim.  First, because the

23

First Amendment's bar against court intrusion into ecclesiastical affairs has nothing to do with

24

25

26

PLAINTIFF'S RESPONSE  IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 2

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

this case.  This Court is not being involved to adjudicate a schism, it is being involved to remedy the theft of a website and the publication of false and defamatory accusations.

The Court should also deny the motion to dismiss the defamation claim as to the remaining Defendants because of civil conspiracy liability.  Johnson may have been the individual who hit "send" on the false and defamatory statements, but the statements were part of a group effort to steal TST's Facebook page and defame TST.  It is too late for the co-conspirators to abandon Johnson.  They are all in it together.

## II.      Argument

### A.  Standards for Motion to Dismiss.

"At this stage in the proceedings, [the court must] accept as true all allegations in [the plaintiff's] complaint and treat as false those allegations in the answer that contradict [the plaintiff's] allegations." *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 955 (9th Cir. 2004). "A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997) (quotations and citations omitted).

"The Rule 8 standard contains 'a powerful presumption against rejecting pleadings for failure to state a claim.' " *Id.* at 249 (citation omitted); *see also Hall v. City of Santa Barbara*, 833 F.2d 1270, 1274 (9th Cir. 1986) ("It is axiomatic that '[t]he motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted.' ") (quoting 5 Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1357, at 598 (1969)). Defendants' Motion to Dismiss does not even approach these exacting standards.

First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable

PLAINTIFF'S RESPONSE  IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 3

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1
2
3

the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

4   *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v.*

5   *Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011)).

6       Where the Court dismisses for failure to state a claim, "leave to amend should be granted

7   unless the court determines that the allegation of other facts consistent with the challenged

8   pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture*

9   *Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

10

11   **B.   The CFAA prohibits accessing a website in excess of authority.  Defendants**
     **exceeded their authority, as formed by the Code of Conduct, to access the**
12   **Facebook page.**

13       Defendants' motion to dismiss the CFAA claim is rooted in the premise that the

14   misappropriation of a website is never a CFAA violation if the Defendants had the ability to

15   access the website. *See* Dkt. 11 at pp. 6-7.  The flaw in this premise is in disregarding the language

16   of the statute. *See* 18 USC § 1030(a)(2)(C) (barring the intentional access of a computer when it

17   "exceeds authorized access" and thereby obtains "information from any protected computer.")

18

19       As explained in the Complaint, a website is a "protected computer." Dkt 1 (Complaint) at ¶

20   59; *see United States v. Drew*, 259 F.R.D. 449, 457-58 (C.D. Cal 2009); *see also, e.g.*, *Craigslist*

21   *Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 968 (N.D. Cal. 2013), *Ticketmaster L.L.C. v. Prestige*

22   *Entm't W., Inc.*, 315 F. Supp. 3d 1147 (C.D. Cal. 2018), *United States v. Nosal*, 676 F.3d 854

23   (9th Cir. 2012) (hereinafter "*Nosal I*").

24

25       Defendants cite *Nosal I* without discussing it.  This landmark case deserves more.  In *Nosal*

26   *I*, a former employee (Nosal) encouraged current employees to access confidential information

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1    on the employer's computer system and to transfer that information to Nosal. 676 F.3d at 856.

2    Nosal wanted to use that information to form a competitor. *See id.* at 864 (Silverman, J.,

3    dissenting).  The Ninth Circuit found that this does not violate the CFAA because the language

4    "exceeds authorized access" is limited to violations of restrictions on <u>access</u> to information, and

5    not restrictions on its <u>use</u>. *Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962, 968 (N.D. Cal. 2013)

6    (emphasis in original).

7

8        But *Nosal I* does not end the analysis.  Later cases have distinguished *Nosal I* by pointing to

9    explicit limits on authorization.  For example, in *Craigslist*, above, a cease and desist letter

10   denying authorization to use the website "for any purposes" constituted "unauthorized access"

11   under the statute. *Craigslist*, 942 F. Supp 2d at 970. *See also United States v. Nosal*, 844 F.3d

12   1024, 1028 (9th Cir. 2016) (hereinafter "*Nosal II*") ("Unequivocal revocation of computer access

13   closes both the front door and the back door;") *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127

14   (9th Cir. 2009) ("[A] person uses a computer 'without authorization' under [the CFAA] . . . when

15   the employer has rescinded permission to access the computer and the defendant uses the

16   computer anyway.")

17

18       Similarly, in *Ticketmaster*, a cease and desist letter which emphasized Ticketmaster's demand

19   for an end user conglomerate adhere to its terms of use. *See* 315 F. Supp. 3d at 1172.  The

20   *Ticketmaster* court rejected the defendant's argument that CFAA liability did not attach where

21   the cease and desist letter did not revoke "*all*" authorization to use the website because "the

22   CFAA penalizes both access without authorization *and* situations where a defendant possesses

23   some authorization, but acts [in] excess of that authorization." *Id.* (emphasis in original).

24

25       As Defendants will be quick to point out, in *Craigslist* the titular plaintiff also implemented

26   efforts to block the defendant's access, *id.* at 970, but this was not necessary to perfect a CFAA

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1   claim.  *See id.* (citing *Weingand v. Harland Fin. Sols., Inc.*, No. C-11-3109 EMC, 2012 U.S. Dist.

2   LEXIS 84844, 2012 WL 2327660, at *3 (N.D. Cal. June 19, 2012) (concluding that the CFAA

3   applies to "access[ing] information without permission" regardless of a lack of technological

4   barriers;") *see also Domain Name Comm'n Ltd. v. DomainTools, LLC*, No. C18-0874RSL, 2020

5   U.S. Dist. LEXIS 53303, at *5 (W.D. Wash. Mar. 26, 2020) ("Once permission has been revoked,

6   technological gamesmanship . . . to aid in access will not excuse liability.")

7

8       Similarly, here, TST never afforded Johnson free reign to post whatever he felt like.  See

9   Complaint at ¶¶ 28-34.  As alleged at ¶¶ 33-34, TST had previously and explicitly enforced the

10  limits of Johnson's authorization to access the Facebook page.  As explained there, "The ensuing

11  deletion [of material previously posted in "excess of authorization"] and reiteration of the

12  expectation that Johnson adhere to the Code of Conduct as a condition of continued social media

13  **access** would serve as foreshadowing for the misappropriation of the Allies page."  Complaint at

14  ¶ 34 (emphasis added).

15

16      It is compelling if not dispositive that the whole fiasco was prompted by Defendants' offense

17  taken for being kicked out "without notice." *See* Dkt. 1-5 (Johnson manifesto).  There, Johnson

18  gloats that he took over the Facebook page before his administrative privileges were revoked.

19

20      The emphasis on limits to Johnson's "access" to the social media account is critical because

21  it distinguishes this case from *Nosal I* and likens it to *Craigslist* and *Ticketmaster*.  Under both

22  *Craigslist* and *Ticketmaster*, a defendant's permission to access the information was predicated

23  on contract terms.  Identically, Defendants' permission to access the administrative privileges of

24  the Facebook account were predicated on the Code of Conduct.  When the parties had a falling

25  out, Defendants' authority to access the social media account was revoked.  Although TST had

26

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1  not yet removed Defendants' *ability* to access the administrative privileges of the account,

2  Defendants were not authorized to boot all the other administrative users.

3  Defendants' abuse of those administrative privileges, which exceeded the grant of authority

4  as defined by the Code of Conduct, and their refusal to return the website to TST despite repeated

5  demand, brings this case wholly out of the "little known" or "innocuous" technical violations the

6

7  *Nosal I* Court was concerned with. *See* 676 F.3d at 860-863 ("[M]inor dalliances would become

8  federal crimes. While it's unlikely that you'll be prosecuted for watching Reason.TV on your

9  work computer [presumably in violation of your employer's computer-use policy], you *could*

10  be.")

11  Defendants are not charged with watching Reason.TV.  They are charged with stealing TST's

12  websites for the specific purpose of harming TST, refusing to return them despite repeated

13

14  demands, and then targeting defamatory statements directly at TST's hard-won audience with

15  TST's own platform.

16  Nor do Defendants make a convincing argument in taking issue with whether Facebook

17  intervened to correct Defendants' misappropriation.  Defendants have subordinate rights to TST

18
   to the Facebook page.  The question of authorization is directed at whether TST authorized the
19
   access to the administrative features, not whether Facebook authorized it.  This argument is a red
20
21  herring and merits no further response.

22  Similarly, TST need not specifically plead each individual Defendant's bad faith conduct,

23  because the acts of one in furtherance of the conspiracy are the acts of all.  A civil conspiracy

24  claim operates to extend, beyond the active wrongdoer, liability in tort to actors who have merely

25  assisted, encouraged, or planned the wrongdoer's acts. *Flowers v. Carville*, 266 F. Supp. 2d 1245,

26  1249 (D. Nev. 2003) (citing 16 Am. Jur. 2d Conspiracy § 57 (1998)).  Defendants acted in

PLAINTIFF'S RESPONSE  IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS - 7

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1     association and in concert to deprive TST of its website and post defamatory content. *See, e.g.*,

2     Complaint at ¶¶ 14, 15, 16 (other defendants are associates of and aided and abetted Johnson),   ¶

3     35 (defendants entered into  an unlawful  agreement), ¶ 37 (Meeham acted in conjunction with

4     the other defendants).  It is too late for the remaining defendants to abandon Johnson.

5         To support its argument that the CFAA claim should be dismissed, Defendants present a false

6     dichotomy between "misappropriating" and "exceeding authorized use."   This fails to

7     accommodate the plain language of the statute which expressly bars exceeding authorized use of

8     a protected computer to obtain information.  As alleged at ¶ 28-34, TST explicitly informed

9     Defendants that the Code of Conduct forms the contours of their social media access and

10    explicitly reminded Johnson of the expectation that he adhere to those terms as a condition of his

11    access.  After Defendants stole the website, TST demanded its return to no avail.

12        Defendants cannot hide behind the mere technicality that TST had not yet removed their

13

14    ability to abuse their administrative powers to avoid liability.  The Court should deny Defendants'

15    motion to dismiss because "the CFAA applies to restrictions on access regardless of whether the

16    restrictions are contractual or technological." *Craigslist*, 942 F.Supp.2d at 969.

17

18        **C. Cyberpiracy turns on a bad faith intent to profit from the mark, which is guided
           by a nine-factor statutory test.  A review of the nine factors overwhelmingly
19         shows Defendants had a bad faith intent to profit from the mark.**

20        Defendants next take issue with whether TST adequately pleaded that they had a bad faith

21    intent to profit from the mark. Dkt. 11 at pp. 12-13.  Defendants' concern is allayed by a routine

22

23    application of the applicable nine factor totality of the circumstances test. 15 USC §

24    1125(d)(1)(B)(i).

25        **1.   TST owns the trademark rights of the domain name.**

26

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

The first factor asks whether the plaintiff has trademark rights in the domain name.  It does.  *See* Dkt. 1-1 (wordmark registration for "The Satanic Temple").  The domain in question is facebook.com/**TheSatanicTemple**Washington.  Emphasis added.  Defendants do not own it.  This factor tends to suggest Defendants had a bad faith intent to profit from the mark.

**2.  "TheSatanicTempleWashington" is the name commonly used to identify TST's Washington Chapter, not Defendant's nascent competitor organization.**

The second factor asks the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person.  Plaintiff's trade name is "The Satanic Temple."  Defendants' trade name is "Satanic Washington State."  The website in question was for TST's Washington chapter, not Defendant's nascent competitor organization.  This factor tends to suggest Defendants had a bad faith intent to profit from the mark.

**3.  Prior to the wrongful conduct, TST (not Defendants) used the website in connection with the bona fide offering of religious services.**

The third factor inquires into "the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services."  The website in question was used by TST to advertise TST's prior offering of religious services.  Prior to usurping the website, Defendants had never previously used it to offer competing services.  This factor tends to suggest Defendants had a bad faith intent to profit from the mark.

**4.  Defendants have no bona fide noncommercial or fair use of the mark.**

The fourth factor asks about "the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name."  Defendants have no bona fide noncommercial or fair use of the mark.  Quite the opposite, Defendants are using TST's mark for the express purpose of diverting TST's good will to themselves. *See, e.g.*, Complaint at ¶ 77.  This is the very essence of a Lanham Act violation.

PLAINTIFF'S RESPONSE  IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 9

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1    **5.    Defendants intend to divert consumers from TST with the intent to tarnish or
          disparage the mark by creating a likelihood of confusion as to the source,
2          sponsorship, affiliation, or endorsement of the site.**

3    The fifth factor asks about:

4              the person's intent to divert consumers from the mark owner's
5              online location to a site accessible under the domain name that
              could harm the goodwill represented by the mark, either for
6              commercial gain **or with the intent to tarnish or disparage the
              mark**, by creating a likelihood of confusion as to the source,
7              sponsorship, affiliation, or endorsement of the site

8    15 USC § 1125(d)(1)(B)(i)(V) (emphasis added).  This factor is the crux of Defendants' motion.

9    They argue there is no intent for commercial gain, but disregard that it is sufficient that they have
10
11   the intent to disparage the mark. *See, e.g.,* Complaint at ¶ 77.

12        Further, Defendants posted a link to their own Twitter page (*see* Dkt. 1-6 at p. 17), which

13   creates a likelihood of confusion as to source. *See also* Complaint at ¶ 62 ("I'm **confused** as to

14   why a TST Facebook page is being used to attack TST") (emphasis added).  Again, this factor

15   lends toward a finding that Defendants had a bad faith intent to profit off the mark.

16   **6.    Defendants intended to hold the website hostage without using it to offer any goods
17          or services.**

18        The sixth factor inquires into whether Defendants offered to transfer the domain name for

19   financial gain to the mark owner without having used it in the bona fide offering of any goods or

20   services.  A plain reading of Johnson's manifesto shows Defendants renamed the Facebook page

21   "Archived Temple Chapter" and relishes in the idea of TST trying to get in touch with him. Dkt

22   1-5.

23        These two facts show Defendants intended to hold the website hostage.  And, taking their

24   motion to dismiss at face value, they had no intention of offering for sale any assets or services.

25   Dkt. 11 at p. 15.  These two facts support a finding that Defendants intended to ransom the

26

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1   website back to TST without a bona fide intent to sell goods or services.  This factor lends toward

2   a finding that Defendants had a bad faith intent to profit off the mark.

3       **7.  Defendants intentionally failed to maintain accurate contact information or provided
            false contact information to obtain the website and have a pattern of such conduct.**

4

5   The seventh factor inquires into:

6           the person's provision of material and misleading false contact
            information when applying for the registration of the domain
7           name, the person's intentional failure to maintain accurate contact
            information, or the person's prior conduct indicating a pattern of
8           such conduct.

9   15 USC § 1125(d)(1)(B)(i)(VII).  First, Defendants have demonstrated a pattern of providing

10  material and misleading false contact information by attempting to steal TST's Gmail account

11  through changing the account recovery credentials.  Complaint at ¶ 42.  Additionally, Defendants

12  needed to change the account recovery credentials to the Facebook page.  This factor lends

13  toward a finding that Defendants had a bad faith intent to profit off the mark.

14

15      **8.  Defendants stole other websites with TST's marks.**

16      The eighth factor looks into whether Defendants have a history of stealing or diluting marks.

17  They did. *See* Complaint at ¶ 36 (stealing the Allies page); ¶ 38 (briefly stealing the Twitter

18  account); and ¶ 42 (attempting to steal the Gmail account).  This factor also lends toward a finding

19  that Defendants had a bad faith intent to profit off the mark.

20

21      **9.  TST's mark is distinctive.**

22      The last factor asks about "the extent to which the mark . . . is or is not distinctive and

23  famous."  15 USC § 1125(d)(1)(B)(i)(IX).  Defendants touch on TST's fame in their motion to

24  dismiss. *See* Dkt. 11 at fn. 6 ("Defendants in no way concede that The Satanic Temple should be

25  considered a private plaintiff for purposes of its defamation claim.")

26

PLAINTIFF'S RESPONSE  IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS - 11

No. 2:20-cv-00509-RAJ

In some circles, TST is well-known.  *See, e.g.*, The Guardian, "Devil's advocate: are Satanists now the good guys in the fight against the evangelical right?" Aug. 15, 2019 (available at https://perma.cc/XRW3-LQHE) (Last visited June 21, 2020); "Hail Satan?" Penny Lane (Magnolia Films 2019).  The mark is sufficiently distinct and famous that this factor should lend in favor of a finding that Defendants intended to profit from it.

As explained in the Complaint at ¶¶ 74-75, the Facebook page provides TST with an economic benefit through a positive feedback loop between awareness and donations. Defendants' misappropriation of the site is a misappropriation of that economic benefit with the purpose of diverting it from TST to Defendants' organization.  This is the essence of a Lanham Act violation.

After applying the nine-factor totality of the circumstances test, the Court should find that Defendants' theft of TST's Facebook pages was done in a bad faith attempt to profit off the mark. At minimum, Plaintiff has plead sufficient facts to support this allegation.  The Court should deny Defendants' motion to dismiss.

> **D. Defendants are liable for tortious interference because they stole the websites which harmed TST's ability to communicate with its audience.**

Defendants next contest whether TST has pleaded a tortious interference case because "[t]here is nothing preventing The Satanic Temple from continuing to use Facebook products." Dkt. 11 at p. 14.  Defendants' argument relies on two faulty premises.

First, Facebook does not offer "widgets," as analogized in the motion to dismiss.  To draw a more apt analogy, Facebook offers sculpting services.  The organization and Facebook get together to begin sculpting a work of art.  That artwork is economically beneficial to the organization.  Then, five years later, a disgruntled former employee of the organization convinces

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

Facebook to give the employee exclusive access to the now-ornate sculpture, defaces it, and falsely represents the defaced sculpture as the employee's own work.  At all times, the disgruntled former employee intended to usurp the economic benefit of that artwork both to harm TST and to benefit the employee.

While true that the organization "could" get together with Facebook to start a new artwork, Facebook no longer offers to the organization the sculpting services *for that sculpture*. Defendants' conduct interrupts the relationship between the service (hosting and publishing the Facebook pages) between Facebook and TST.  Defendants' argument simply lacks merit.

Defendants' argument is that there is no interference with the business relationship because TST can create a new Facebook page.  TST responds, "make your own Facebook page."  The Court should deny the motion to dismiss because Defendants stole the economically beneficial services for the specific purpose of harming TST.

**E. Commerce results from the exchange of money.  Defendants may not have intended to solicit donations for themselves, but their efforts to reduce the donations TST receives from Washington residents fall within the ambit of the CPA.**

Defendants next take issue with the fact that their wrongful conduct did not include any sale of assets or services. Dkt. 11 at p. 15.  The relevant definition is:

> "Trade and commerce shall **include** the sale of assets or services, and any **commerce** directly or indirectly affecting the people of the state of Washington."

RCW 19.86.010 (emphasis added).  "Commerce" is, simply, the exchange of currency.  See The Law Dictionary, "Commerce" (available at https://thelawdictionary.org/commerce/) (Last visited June 21, 2020).

Commerce is implicated by the stolen Facebook pages because they have an economic value to TST.  Complaint at ¶ 75.  As explained there, the Facebook pages provide increased awareness,

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1    which tends to provide "increased membership and donations which create a positive feedback

2    loop."  By diverting the Facebook pages, Defendants stole from TST its avenue to communicate

3    with its audience and thereby reduced TST's ability to grow its membership and deterred the

4    growth of TST's donation base.  That caused an economic harm to TST, which implicates the

5    CPA.

6

7        Defendants wanted to use TST as a template to form their own organization.  Which, by itself,

8    would be fine.  Imitation is the sincerest form of flattery.  The problem arises when Defendants

9    abused their special access to TST's confidential materials to shortcut the creation of a competitor

10   organization and to deceive the public into thinking a competitor is, instead, a successor.  The

11   Court should deny Defendants' motion to dismiss the CPA claim.

12       **F.   Defamation**

13

14       **1.   The First Amendment's bar against judicial intervention in ecclesiastical affairs
             has nothing to do with this case.**

15       In objecting to the defamation claim, Defendants principally cast themselves as the supposed

16   heroes in a schism as part an effort to portray false statements that TST are a bunch of neo-Nazis

17   as acts of "religious" freedom.  Defendants give themselves far too much credit.  This case does

18   not involve judicial interference into ecclesiastical affairs: TST does not ask the Court to

19   determine who the "real" Satanists are.  There is enough room in the sandbox for both parties.

20   Instead, for purposes of its defamation claim,  TST simply asks the Court to find that TST and

21   its principals are not neo-Nazis, as Defendants falsely claimed. *See* Dkt. 1-5, p. 2; Dkt. 1-6, pp.

22   5, 10, and 14.

23

24       Nor do Defendants find any safe harbor in *Hartwig v. Albertus Magnus Coll.*, 93 F. Supp. 2d

25   200, 219 (D. Conn. 2000).  There, a former priest had no defamation claim against the Catholic

26

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1    Church, even though an interpretation of canon law might say "once a priest, always a priest,"

2    because the defamation claim would require the court to "examine and weigh competing views

3    of church doctrine." *Id.*

4        Whether TST is a bunch of neo-Nazis does not implicate the parties' competing views of the

5    seven fundamental tenets.  TST does not invite the Court to adjudicate whether veganism is

6    mandated by the First Tenet ("One should strive to act with compassion and empathy toward all

7    creatures in accordance with reason.")  Instead, we ask the Court to resolve the falsity of the

8    claim that, e.g., TST has a "weird coziness with the alt-right in general." Dkt. 1-5 at p. 2.

9

10       There is a marked difference between political extremism and religious doctrine.

11   Defendant's efforts to twist the former into the latter notwithstanding, the Court should deny the

12   motion to dismiss.

13
        **2.  The defamation sufficiently pleads the statements by including the verbatim of
14           the statements and pleading that they are false.**

15       In a throwaway argument, Defendants object to the specificity of the defamation claim.  TST

16   adequately pleaded that Defendants posted links and commentary with the general, and false,

17   theme that TST leaders are incompetent fascists. Complaint at ¶¶ 35, 41; Dkt. 1-6, *passim*.

18
        The defamatory statements are more than pleaded with specificity: the statements are
19
     included in full and attached to the Complaint.  A Complaint is not a motion for summary
20
     judgment.  It is sufficient to plead that the allegedly defamatory statements are false.  If Defendant
21
     wants to pursue truth as an affirmative defense, it is welcome to file for summary judgment with
22
     proof that TST is, in fact, a bunch of neo-Nazis. Dkt. 1-6 at pp. 5, 10, and 14.
23

24                                  **III.    Conclusion**

25
        Defendants argue there is no CFAA claim because they had the ability to access the
26
     administrative privileges.  This is undermined by Johnson's own manifesto that indicates he

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

knew he had been ousted as a member.  He acted fast enough to usurp TST's control over its own Facebook pages, which is insufficient because technological gamesmanship is not sufficient to avoid CFAA liability.  Defendants conflate "ability" for "authorization."  The Court should deny the motion to dismiss the CFAA claim.

Defendants next argue there is no Cyberpiracy liability because they did not market the sale of goods or services on the Facebook pages.  This misses the mark because there is a robust statutory analysis to determine whether there was a bad faith intent to profit off the mark.  All of the nine factors show Defendants had a bad faith intent to profit off the mark.  The Court should deny the motion to dismiss the Cyberpiracy claim.

Defendants next argue there is no tortious interference liability because TST can make a new Facebook page.  Defendant should make their own Facebook page.  Diverting administrative access to our page is an interference with the business relationship.  The Court should deny the motion to dismiss the tortious interference claim.

Defendants next argue there is no CPA liability because they did not market the sale of goods or services on the Facebook pages.  Commerce is implicated by Defendants' wrongful conduct because TST derived an economic value from the pages–at least, until Defendants stole them. The Court should deny the motion to dismiss the CPA claim.

Defendants last argue there is no defamation liability because, they wrongly claim, this case will involve judicial consideration of a religious dispute.   TST does not ask for judicial construction of the seven fundamental tenets, we ask for a judicial determination that Defendants lied about us being a bunch of neo-Nazis.  Just because TST is a church does not give people free license to make false and defamatory claims against it.  The Court should find there is a difference

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1    between political extremism and religious dogma and deny the motion to dismiss the defamation

2    claim.

3         Additionally, the Court should find no merit in Defendants' argument that the statements are

4    inadequately pleaded.  The statements are copied verbatim and included in the complaint.  At

5    this stage, TST does need not to adduce evidence to show why the statements are false but need

6
7    only plead that they are false.  The Court should deny the motion to dismiss the defamation claim.

8         Last, the Court should find no merit in the non-Johnson Defendants' efforts to abandon their

9    compatriot.  The Defendants are jointly and severally liable for the fruits of their illicit conspiracy

10   under the doctrine of civil conspiracy.  What Johnson did in furtherance of the conspiracy is

11   attributable to all who aided and abetted him.

12        For the reasons discussed above, TST respectfully requests that this Court deny Defendants'

13   motion to dismiss in its entirety.  In the event that the Court finds any pleading deficiencies, it

14   should give TST leave to amend its Complaint to cure them.

15
16        Respectfully submitted this 22nd day of June, 2020.

17

18                    LYBECK PEDREIRA & JUSTUS, PLLC

19        By: */s/ Benjamin Justus*
          Benjamin Justus (#38855)
20        Attorneys for Plaintiff
          Chase Bank Building
21        7900 SE 28th St., Fifth Floor
          Mercer Island, WA 98040
22        206.687.7805 /phone  206.230.7791 /fax
          ben@lpjustus.com / email Justus
23

24

25

26

PLAINTIFF'S RESPONSE  IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS - 17

No. 2:20-cv-00509-RAJ

1

## **<u>CERTIFICATE OF SERVICE</u>**

2

3

4

5

6

    I hereby certify that on the 22nd day of June, 2020, I electronically filed PLAINTIFF'S
RESPONSE  IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS with the Clerk of
the Court using the CM/ECF system, which will send notification of such filing to all parties of
record.

7

8

    Dated at Seattle, Washington, the 22nd day of June, 2020.

9

10

11

                            By:    _/s/ Benjamin Justus_____
                                    Benjamin Justus

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

PLAINTIFF'S RESPONSE  IN OPPOSITION TO DEFENDANTS' MOTION TO
DISMISS - 18

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791