The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED FEDERATION OF CHURCHES, LLC d/b/a THE SATANIC TEMPLE,<br><br>Plaintiff,<br><br>v.<br>DAVID ALAN JOHNSON, an individual; LEAH FISHBAUGH, an individual; MICKEY MEEHAM, an individual; and NATHAN SULLIVAN, an individual,<br><br>Defendants. | No. 2:20-cv-00509-RAJ<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>NOTED ON MOTION CALENDAR:<br>**June 26, 2020** |

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

## I. INTRODUCTION

Nothing The Satanic Temple argues in response to Defendants' Motion to Dismiss negates Defendants' entitlement to dismissal of The Satanic Temple's implausible claims.

As to the Computer Fraud and Abuse Act ("CFAA") claim, The Satanic Temple's Response makes clear that it is relying upon The Satanic Temple's purported "Code of Conduct" to support its computer hacking claim. But Ninth Circuit law is plain that such alleged violations do not support a CFAA claim. The Satanic Temple's cyberpiracy claim fails because, although The Satanic Temple has pointed to Defendants' alleged "bad faith," it has failed to allege that Defendants acted with intent to "profit" from the alleged cyberpiracy. Even if this were not dispositive of the cyberpiracy claim, The Satanic Temple has not alleged that it owns the domain name at issue, which is fatal to that claim.

The Satanic Temple's tortious interference claim fails because it admits that its relationship with Facebook was not terminated. As to the CPA claim, The Satanic Temple fails to allege the required element that Defendants' conduct occurred in trade or commerce. Finally, The Satanic Temple's attempt to reframe this dispute as not involving religious doctrine (despite making much of the fact that that it is recognized as a church in Complaint) fails, and its defamation claim is barred by the First Amendment.

## II. ARGUMENT

**A. The Satanic Temple Relies upon the Wrong Rule 12(b)(6) Standard**

Despite more than a decade having passed after the Supreme Court's abrogation the "no set of facts" standard set forth in *Conley v. Gibson*, 355 U.S. 41, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957), The Satanic Temple improperly relies upon that standard in arguing that it adequately stated claims against Defendants. *See* Response at 3 (citing *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 248 (9th Cir. 1997)).[1] The Satanic Temple's mis-statement of

---

[1] Multiple courts in the Ninth Circuit have recognized that *Iqbal* and *Twombly* implicitly overruled *Gilligan*. *See, e.g.*, *Burkes v. Nevada H.A.N.D., Inc.*, No. 2:19-cv-02170-KJD-

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 1



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

the applicable standard is understandable, as it has failed to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

**B. The Satanic Temple has Failed to State a Hacking Claim under the CFAA**

    **1. The Satanic Temple has Failed to Plead that Defendants Exceeded Authorized Access**

The Satanic Temple attempts to salvage its CFAA hacking claim by relying upon two district court cases that it contends show that Defendants exceed authorized access by posting content critical of The Satanic Temple on a Facebook page.[2]  Response at 5-7.  The Satanic Temple's descriptions of those two cases—*Craigslist Inc. v. 3Taps Inc.*, 942 F. Supp. 2d 962 (N.D. Cal. 2013), and *Ticketmaster L.L.C. v. Prestige Entertainment West, Inc.*, 315 F. Supp. 3d 1147 (C.D. Cal. 2018)—are misleadingly incomplete as described below.  Nothing in *Craigslist* or *Ticketmaster* change the Ninth Circuit's holding that "the phrase 'exceeds authorized access' in the CFAA does not extend to violations of use restrictions," such as the amorphous restrictions in The Satanic Temple's Code of Conduct—the violation of which it contends would amount to a federal computer crime.[3] *United States v. Nosal*, 676 F.3d 854, 863 (9th Cir. 2012) (en banc).

---

EJY, 2020 WL 1434148, at *3 n.5 (D. Nev., March 24, 2020) (citing cases recognizing that *Gilligan* was overruled by *Iqbal* and *Twombly*).

[2] The Satanic Temple appears to admit that Defendants were authorized to access that Facebook page.  Response at 7.  Accordingly, The Satanic Temple's claim must be based upon alleged "exceeding authorized access."  In its Response, The Satanic Temple asserts that "[w]hen the parties had a falling out, Defendants' authority to access the social media account was revoked."  Response at 7, ln. 24-25.  But that assertion is entirely unsupported by any such allegation in the Complaint.  Not only is the Complaint devoid of such an allegation, but it is contradicted by The Satanic Temple's own allegation that Facebook—the website owner—permitted Defendant Johnson's access.  Complaint ¶¶ 49-50.

[3] Indeed, the reasoning of the *Ticketmaster* Court has been criticized as inconsistent with Ninth Circuit law by a judge in the Western District of Washington in *Domain Name Comm'n Ltd. v. DomainTools, LLC*, No. 2:18-cv-00874-RSL—a case cited by The Satanic Temple. *See* Response at 6.  In *DomainTools*, Judge Lasnik wrote that "[t]he Court respectfully disagrees" with the *Ticketmaster* Court's analysis and that "[p]ermission or authorization to access a computer does not evaporate simply because the user has violated a duty owed to the owner of the computer."  Order Granting in Part Motion to Dismiss (Dkt. No. 73) at 7-8 (citing *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1134-35 (9th Cir. 2009)).  Even if this Court rejects Judge Lasnik's view and accepts the *Ticketmaster*

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 2



In *Craigslist*, users of the "well known and widely used website" for classified advertisements were required to affirmatively accept and agree to Craigslist's terms of use, which included "a number of restrictions on the use of Craigslist's website and content included therein." *Craigslist*, 942 F. Supp. 2d at 966. In violation of those terms of use the defendants aggregated and republished advertisements from Craigslist, including by "cop[ying] (or 'scrap[ing]') all content posted to Craigslist in real time, directly from the Craigslist website." *Id.* After discovering the defendants' violation of its terms of use, Craigslist sent letters to defendants "demanding that they 'cease and desist all . . . craigslist-related activities' and informing them that they were 'no longer authorized to access . . . craigslist's website or services for any reason.'" *Id.* at 967. Craigslist also implemented technological measures intended to block access from IP addresses associated with one of the defendants, but the defendant successfully bypassed the measures. *Id.*

The *Craigslist* Court found that Craigslist's CFAA claim should survive a motion to dismiss for failure to state a claim. But that determination was explicitly based upon the defendants' "continued use of Craigslist after the clear statements regarding authorization in the cease and desist letters and the technological measures to block them." *Id.* Given the cease and desist letters and the technological measures, the defendants' continued use of Craigslist "constitutes unauthorized access under the" CFAA. *Id.*

In *Ticketmaster*, the defendants purchased large quantities of tickets from Ticketmaster to re-sell on other websites. *Ticketmaster*, 315 F. Supp. 3d at 1155. "[T]o gain an unfair advantage in searching for and buying the[] tickets, Defendants . . . employed robots, programs, and other automated devices" which would "inundate Ticketmaster's website and mobile app with page requests and ticket reserve requests at a far higher rate than would be possible for a human alone." *Id.* In addition to requiring password-protected

---

Court's analysis, The Satanic Temple has failed to state a CFAA claim for the reasons described below.

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 3


ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

<pre>accounts to purchase tickets on its website, Ticketmaster used various technological measures to protect against such "bots" from mass-purchasing tickets. *Id.* However, the defendants circumvented these measures. *Id.* Those activities violated numerous of Ticketmaster's terms of use. *Id*. at 1155-56. After tracing mass purchases to defendants, Ticketmaster sent a letter to defendants demanding that they "cease and desist from any further violations of Ticketmaster's rights." *Id.* at 1156.</pre>

Based upon the *Nosal* Court's holding that "'exceeds authorized access' in the CFAA does not extend to violations of use restrictions," the defendants argued that the CFAA claim against them had to be dismissed. *Id.* at 1170. The *Ticketmaster* Court disagreed, finding that the cease and desist letter took the defendants' continued conduct beyond the mere use restrictions *Nosal* held could not constitute CFAA violations. *Id.*

> To be clear, it is the violation of the terms of the *Letter*, not Ticketmaster's Terms of Use, on which the Court bases its finding of a well-pled CFAA claim. The *Facebook* court required something "more" than mere violation of a website owner's terms of use to impose liability under the CFAA, and the Letter satisfies that requirement. . . . Ticketmaster's Letter accuses Defendants of particular unauthorized purchases of particular quantities of tickets on particular dates and times and contains a list of 47 fake email addresses, that Defendants allegedly used to buy tickets. . . . The letter, with its detailed factual allegations, is a "far cry from the permission skirmishes that ordinary Internet users face." . . . Finding an individualized letter to be a basis for unauthorized use under the CFAA is fully consistent with the holding of the *Nosal* court, which was concerned specifically about violations arising from Terms of Use agreements imposed uniformly and adhesively upon a large number of end users.

*Id.* at 1171 (emphasis in original) (citing *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058 (9th Cir. 2016)) (internal citations omitted).

In contrast to *Craigslist* and *Ticketmaster*, in this case there is no "something more" than violation of The Satanic Temple's alleged terms of use, which, by itself, is insufficient to support a hacking claim under the CFAA. Although The Satanic Temple's Response asserts that "[w]hen the parties had a falling out, Defendants' authority to access the social media account was revoked," Response at 6, ln. 24-25, the Complaint is devoid of any such

<pre>REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 4

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250</pre>

allegation. To the contrary, The Satanic Temple alleges that Facebook concluded that Defendant Johnson was a page administrator and therefore there were no "infringements of your [The Satanic Temple's] legal rights." Complaint ¶ 50. Under Ninth Circuit law, alleged use restrictions—such as those in the Code of Conduct The Satanic Temple points to here—simply are insufficient to support a CFAA hacking claim. *Nosal*, 676 F.3d at 862-63; *see also LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1135 (9th Cir. 2009) (a person is "without authorization" under the CFAA "when the person has not received permission to use the computer for any purpose (such as when a hacker accesses someone's computer without any permission), or when the employer has rescinded permission to access the computer and the defendant uses the computer anyway").

### 2. The Satanic Temple's Complaint Admits that The Computer's Owner (Facebook) Authorized Defendants' Access

Even more fundamentally than the analysis set forth in Section II.B.1, *supra*, The Satanic Temple's CFAA claim fails as a matter of law because The Satanic Temple has pled that at the time of the conduct at issue here, Defendant Johnson was authorized by Facebook—the website's owner—to do everything about which The Satanic Temple complains. The Satanic Temple, which dedicates four and a half lines in its brief to this argument, tries to avoid this fatal problem simply by calling it "a red herring [that] merits no further response." Response at 7. To the contrary, the argument is dispositive of the CFAA claim. The Satanic Temple has admitted that Facebook owns the websites at issue. Complaint ¶ 17. The Satanic Temple has not pled that Facebook did not authorize Johnson to access or alter the Chapter Page or that Facebook did not authorize Meehan to access or alter the Allies Page. To the contrary, The Satanic Temple has alleged that at the time of the conduct at issue, Facebook determined that Johnson *was* authorized to access and alter the Chapter Page. Complaint ¶¶ 49-50. Put simply, even with the allegation that Defendants violated The Satanic Temple's Code of Conduct, by pleading that the owner of

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 5

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

the website (Facebook) granted the Defendants access to and use of the Facebook pages, the Defendants' conduct cannot amount to violation of the CFAA as a matter of law.

### 3. The CFAA Claim Against Fishbaugh, Sullivan, and Meehan Fails

Defendants' Motion asserts numerous additional reasons why The Satanic Temple has failed to state a CFAA claim as to Defendants Fishbaugh, Sullivan, and Meehan. *See* Motion at 9-12. The Satanic Temple does not contest those points, but insists that those three Defendants are liable under a civil conspiracy theory. Response at 7-8.

To establish a civil conspiracy, a plaintiff must prove that:

> (1) two or more people combined to accomplish and unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the conspiracy. Mere suspicion or commonality of interests is insufficient to prove a conspiracy. When the facts and circumstances relied upon to establish a conspiracy are as consistent with a lawful or honest purpose as with an unlawful undertaking, they are insufficient.

*Alvarez v. Target Corp.*, No. 13-CV-0150-TOR, 2013 WL 4734123, at *9 (E.D. Wash., July 10, 2013) (quoting *All Star Gas, Inc. of Washington v. Bechard*, 100 Wn. App. 732, 740 (2000)).

The only allegation in the Complaint touching on a civil conspiracy theory is the conclusory statement that "Defendants entered into an unlawful agreement to misappropriate and shut down substantially all the internet presence of TST's Washington Chapter." Complaint ¶ 35. The Complaint provides no factual support for this conclusory allegation, and it is thus insufficient to support a civil conspiracy claim. *Id.* (dismissing civil conspiracy claim); *cf. Allard v. Board of Regents of the Univ. of Wash.*, 25 Wn. App. 243, 247-48, 606 P.2d 280 (1980) (upholding dismissal of conspiracy claim on summary judgment where correspondence discussed disregarding plaintiff's teaching ability in considering request for tenure, but did not evince an agreement to actually do so). Accordingly, even if the Court finds that The Satanic Temple has stated a CFAA claim

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 6

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

against Defendant Johnson, that claim must be dismissed as to Defendants Fishbaugh, Sullivan, and Meehan.

### C. The Satanic Temple has Failed to State a Cyberpiracy Claim

In its Response, The Satanic Temple expounds upon discretionary factors for determining bad faith provided by the Lanham Act's Anticybersquatting Consumer Protection Act ("ACPA"), 15 U.S.C. § 1125(d). In doing so, The Satanic Temple has revealed additional fatal flaws in its claim.

#### 1. The Satanic Temple does not Own the Domain Name at Issue

Discretionary factors set forth in 15 U.S.C. § 1125(d)(1)(B) may be used to assist in determining a bad faith intent to profit. In addressing the first factor (the "trademark or other intellectual property rights of the person, if any, in the domain name"), The Satanic Temple reveals another fatal flaw in its claim. The Satanic Temple states that "[t]he domain in question is facebook.com/TheSatanicTempleWashington." Response at 8-9 (emphasis removed). This statement shows that the domain name at issue in this case belongs to Facebook, not The Satanic Temple.

"The paradigmatic harm that the ACPA was enacted to eradicate" is "the practice of cybersquatters registering several hundred domain names in an effort to sell them to the legitimate owners of the mark." *Lamparello v. Falwell*, 420 F.3d 309, 318-19 (4th Cir. 2005) (quoting *Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 810 (6th Cir. 2004)). "The Act was also intended to stop the registration of multiple marks with the hope of selling them to the highest bidder." *Id.* Thus, to establish liability for "cyberpiracy" under the Act, a plaintiff must prove "(1) the defendant registered, trafficked in, or used a *domain name*; (2) the *domain name* is identical or confusingly similar to a protected mark owned by the plaintiff; and (3) the defendant acted 'with bad faith intent to profit from that mark.'" *Multifab, Inc. v. ArlanaGreen.com*, 122 F. Supp. 3d 1055, 1066 (E.D. Wash. 2015) (emphasis added). For purposes of the ACPA, an Internet domain name encompasses two



parts: "top-level" and "second-level" domains.  Top-level domains typically describe the nature of the enterprise, and include ".com" (commercial), ".edu" (educational), ".org" (non-profit and miscellaneous organizations), and ".gov" (government).  *Id.*  Second-level domains consist of a term or series of terms to the left of the top-level domain.  *Id.*  "[F]or example, in the domain name uscourts.gov, '.gov' is the top level domain name and 'uscourts' is the second level domain name."  *Sallen v. Corinthians Licenciamentos LTDA*, 273 F.3d 14, 19 (1st Cir. 2001).  Only these two levels of domains are protected by the ACPA.  *See, e.g.*, *GoForIt Entm't, LLC v. DigiMedia.com L.P.*, 750 F. Supp. 2d 712, 724-25 (N.D. Tex. 2010) ("The court has found no case, and GEL has cited none, that holds that a portion of a web address other than a second or top level domain constitutes a 'domain name' within the meaning of the ACPA.").

      Here, the protectable domain name under the ACPA is Facebook.com (".com" is the top-level domain and "Facebook" is the second-level domain).  There is no other domain name at issue.  The Satanic Temple does not allege that it owns or has registered the Facebook trademark or domain name.  Nor has The Satanic Temple alleged that the Defendants have registered a domain name with a similar name.[4]  While The Satanic Temple argues that it uses a trademark-protected name on its Facebook page, that has no bearing on a cyberpiracy claim, which addresses only the registration and use of *domain names*.  15 U.S.C. § 1125(d).  Facebook pages (which are social media products) are not domain names.  Absent an allegation that The Satanic Temple owns and has registered a domain name and that the Defendants have used or registered a similar domain name, the cyberpiracy claim fails as a matter of law.  15 U.S.C. § 1125(d)(1)(A).

---

[4] This too is fatal to the claim, as a person shall be liable "only if that person is the domain name registrant or that registrant's authorized licensee."  15 U.S.C. § 1125(d)(1)(D).

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 8



## 2. The Discretionary "Bad Faith" Factors are Both Irrelevant and Mistaken

The factors discussed by The Satanic Temple for determining bad faith intent to profit are irrelevant to the Court's analysis here, given that The Satanic Temple does not own the domain name at issue (Facebook.com). Even setting aside this dispositive point, The Satanic Temple's arguments are flawed.

While The Satanic Temple focuses on factors for determining bad faith in 15 U.S.C. § 1125(d)(1)(B)(i), it fails to point to any allegations in its Complaint that Defendants planned to *profit* from using its Facebook page (which, as discussed above, does not qualify as a domain name). The Satanic Temple's mistaken assumption that bad faith alone is enough is most apparent in its discussion of the fifth factor (Response at 10), in which The Satanic Temple argues, with no authority, that mere intent to tarnish or disparage a mark is sufficient. The Satanic Temple's argument contradicts the express language of the ACPA, which requires a bad faith intent "to profit." 15 U.S.C. § 1125(d)(1)(a)(i). Absent any allegations of intent to profit, the bad faith factors are irrelevant.

As to "the person's prior use, if any, of the domain name in question with the bona fide offering of any goods or services" (Response at 9), The Satanic Temple does not allege or argue that Defendants used either the domain name (Facebook.com) or The Satanic Temple's Facebook page to offer goods or services. Whether The Satanic Temple itself used its Facebook page to offer goods or services is irrelevant.

As to "the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name," The Satanic Temple is mistaken that Defendants would not have had a fair use of their mark. Although the argument is hypothetical given that there is no The Satanic Temple domain name, if there was such a domain name the Defendants would have a fair use right to that domain name for purposes of criticism and commentary about The Satanic Temple. "The paradigmatic harm that the ACPA was enacted to eradicate" is "the practice of cybersquatters registering several hundred domain

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 9

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

names in an effort to sell them to the legitimate owners of the mark." *Lamparello*, 420 F.3d at 318-19. "The Act was not intended to prevent 'noncommercial uses of a mark, such as for comment, criticism, parody, news reporting, etc.,' and thus they 'are beyond the scope' of the ACPA." *Id.* at 319 (quoting S.Rep. No. 106-140, 1999 WL 594571, at *5-*6.) (registration of "www.fallwell.com" domain name for website expressly critical of Reverend Jerry Falwell's views on homosexuality did not violate ACPA absent showing of bad faith intent to profit from use of famous "Falwell" mark).

As to the sixth factor ("the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain . . ."), The Satanic Temple fails to make any allegation that the Defendants offered to transfer, sell, or otherwise assign its Facebook page (which, again, fails to qualify as a domain name). Instead, The Satanic Temple merely points to one comment in a post in which Defendant Johnson offered his criticisms of The Satanic Temple's practices and beliefs and that he looked forward to The Satanic Temple contacting him. Response at 10. This does not suggest or imply that Johnson was intending to offer the Facebook page for sale. Rather, Johnson was anticipating that The Satanic Temple would respond to his criticisms.

The allegedly distinctive nature of The Satanic Temple's mark is irrelevant given that the mark is not used in the domain name at issue (Facebook.com). The Satanic Temple also fails to allege that the Defendants intended to use its mark for a competing organization. While The Satanic Temple makes that conclusory allegation, it offers no actual factual allegations. A plaintiff must allege more than mere conclusory allegations that lack any factual support. *Iqbal*, 556 U.S. at 678-79.

Given that (1) The Satanic Temple does not own the domain name at issue (Facebook.com), (2) The Satanic Temple has not alleged that the Defendants have registered or used a trademark owned by The Satanic Temple in a domain name, and (3) The Satanic Temple has alleged no facts showing that Defendants intended to profit in

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 10

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

bad faith from The Satanic Temple's domain name, The Satanic Temple's cyberpiracy claim fails.

### D. The Satanic Temple Has Failed to State a Tortious Interference Claim Because it has not Alleged that its Relationship with Facebook was Terminated

The Satanic Temple has failed to allege the elements of tortious interference. The Satanic Temple does not dispute that a required element of that claim is "an intentional interference inducing or causing a breach or termination of the relationship or expectancy." *Pac. Nw. Shooting Park Ass'n v. City of Sequim*, 158 Wn. 2d 342, 351, 144 P.3d 276, 280 (2006). The Satanic Temple alleges a business relationship with Facebook and admits that it can continue to work with Facebook. Response at 13. While The Satanic Temple alleges that its use of a product provided by Facebook was interrupted, The Satanic Temple does *not* allege that its *relationship* with Facebook was terminated due to the Defendants' conduct. The tortious interference claim therefore fails as a matter of law. *See, e.g., Woods View II, LLC v. Kitsap Cty.*, 188 Wn. App. 1, 30, 352 P.3d 807, 821 (2015) (tortious interference with a business expectancy claim failed where plaintiff failed to show that the interference by a county by delaying permits resulted in the termination of the plaintiff's relationship with third parties).

### E. The Satanic Temple has Failed to State a CPA Claim Because None of the Alleged Acts Occurred in Trade or Commerce

The Satanic Temple does not dispute that to state a CPA claim, a plaintiff must allege facts establishing: (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) that impacts the public interest, (4) injury to plaintiff's business or property, and (5) which injury is causally related to unfair or deceptive act. *Shields v. Morgan Fin., Inc.*, 130 Wn. App. 750, 755-56, 125 P.3d 164, 167 (2005). Nor does it contest that where the alleged wrongful conduct does not include any sale of assets or services, a CPA claim fails as a matter of law. *See, e.g.*, *Browne v. Avvo Inc.*, 525 F. Supp. 2d 1249, 1254 (W.D. Wash. 2007). However, instead of alleging any facts supporting the trade or commerce

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 11

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

element, The Satanic Temple simply skips to the fourth element (damages) and argues that because it alleges damages, that alone suffices: "That caused an economic harm to the Satanic Temple, which implicates the CPA." Response at 14. Alleging damages does not excuse The Satanic Temple from pleading facts establishing *all* the required elements, including that the Defendants' conduct occurred in trade or commerce. Having failed to do so, The Satanic Temple's CPA claim fails as a matter of law.[5]

### F. The First Amendment Requires Dismissal of the Defamation Claim

The Satanic Temple does not dispute that the First Amendment requires dismissal of a defamation claim if the claim requires the court to inquire into church doctrines or practices. Response at 14-15; *see also Serbian E. Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 709, 723, 96 S. Ct. 2372, 49 L.Ed.2d 151 (1976). Instead, The Satanic Temple argues that Defendant Johnson's opinion that The Satanic Temple's "weird coziness with the alt-right . . . does not conform to [his] impression of Satanism" (Complaint ¶ 40) does not implicate the parties' competing views of The Satanic Temple's seven fundamental tenets and it tries to couch the opinion as political instead of religious. Response at 15. To the contrary, as the Complaint itself makes clear, Johnson was expressing his opinions of The Satanic Temple's beliefs and practices, with the specific view that The Satanic Temple's coziness with the alt-right does not conform to Satanism. Complaint ¶ 40. To resolve whether The Satanic Temple engages in this conduct and whether such conduct violates The Satanic Temple's fundamental tenets requires a direct exploration of The Satanic Temple's practices and beliefs, which the First Amendment prohibits.

### III.   CONCLUSION

For the foregoing reasons, The Satanic Temple's Complaint must be dismissed.

---

[5] The Satanic Temple alludes to a conclusory allegation that the Defendants intended to form their own organization. Response at 14. However, in its Complaint, The Satanic Temple offers no facts at all to support this conclusory allegation. But even if there were such facts pled in the Complaint, they would be insufficient to meet the "trade or commerce" element, as plainly not all organizations operate in "trade or commerce." *Browne*, 525 F. Supp. 2d at 1254.

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 12



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

| | |
|---|---|
| 1 | |
| 2  DATED: June 26, 2020. | **ARETE LAW GROUP PLLC** |
| 3 | |
| 4 | By: */s/ Jeremy E. Roller*<br>Jeremy E. Roller, WSBA No. 32021 |
| 5 | 1218 Third Avenue, Suite 2100<br>Seattle, WA 98101 |
| 6 | Phone: (206) 428-3250<br>Fax: (206) 428-3251 |
| 7 | jroller@aretelaw.com |
| 8 | *Attorneys for Defendants David Alan Johnson,* |
| 9 | *Leah Fishbaugh, Mickey Meehan, and Nathan Sullivan* |

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 13

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

**CERTIFICATE OF SERVICE**

I, Annabel Barnes, certify that on June 26, 2020, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, thereby sending a notification of such filing to the following parties:

> Benjamin Justus, WSBA No. 38855
> LYBECK PEDREIRA & JUSTUS, PLLC
> Chase Bank Building
> 7900 SE 28th Street, Fifth Floor
> Mercer Island, WA 98040
> (206) 687-7805
> ben@lpjustus.com

DATED: June 26, 2020, at Seattle, Washington.

*/s/ Annabel Barnes*
Annabel Barnes, Legal Assistant

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 14

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250