The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| United Federation of Churches, LLC (dba "The Satanic Temple"),<br><br>Plaintiff,<br><br>v.<br><br>David Alan Johnson (aka "ADJ"), Leah Fishbaugh, Mickey Meeham, and Nathan Sullivan,<br><br>Defendants. | No. 2:20-cv-00509-RAJ<br><br>PLAINTIFF'S MOTION FOR RECONSIDERATION<br><br>NOTE FOR MOTION CALENDAR:<br>**March 12, 2021** |

Pursuant to LCR 7(h), Plaintiff United Federation of Churches, LLC (dba "The Satanic Temple") ("TST") moves the Court for reconsideration of its prior Order Granting Motion to Dismiss (Doc. 20) as to Counts 2 and 5 of the Complaint (Doc. 1), for the following reasons.

**I.   Cyberpiracy**

The complaint asserted entitlement to Cyberpiracy relief, which was established by the Anticybersquatting Consumer Protection Act of 1999 ("**ACPA**").  As a matter of first impression, the Court found that prohibited "cyberpiracy" categorically excludes relief where the pirated material is located by navigating to a Facebook page, i.e. by entering a particular Vanity URL. But the Court did not engage in a statutory interpretation analysis.

PLAINTIFF'S MOTION FOR RECONSIDERATION - 1

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

This case involved a novel issue of statutory construction. The cardinal rule of statutory construction is to determine the intent of Congress. *Chickasaw Nation v. United States*, 534 U.S. 84, 94, 122 S. Ct. 528, 535, 151 L. Ed. 2d 474 (2001); *Pit River Tribe v. Bureau of Land Mgmt.*, 939 F.3d 962, 970 (9th Cir. 2019); *Heppner v. Alyeska Pipeline Serv. Co.*, 665 F.2d 868, 870 (9th Cir. 1981).

A statute is "ambiguous" when it is susceptible to more than one reasonable interpretation. *Arizona v. Tohono O'odham Nation*, 818 F.3d 549, 556 (9th Cir. 2016). That can be the result of the reference to the language itself, of the specific context in which the language is used, or of the broader context of the statute as a whole. *Pit River Tribe*, 939 F.3d at 970.

First, we look to the language itself. In defining "domain name," Congress refers to the "alphanumeric designation" which amounts to "part of an electronic address on the Internet." 15 USC § 1127. Such a designation is a "domain name" if it is "registered with or assigned by," importantly, an "other domain name registration authority." *Id.*

Congress defined a "domain name" as something that is registered by a "domain name" registration authority. This definition is little more than a circle. As a result, the definition is not, by itself, particularly helpful to understand what exactly Congress was outlawing when prohibiting the cyberpiracy of a "domain name."

The issue is whether Facebook is a "other domain name registration authority." It is. Users register with Facebook to obtain an account associated with a unique electronic address comprised of an alphanumeric string chosen by the user. Facebook is in a position of authority over these accounts pursuant to its Terms of Use agreement. Third parties interact with the network through specially-designed software applications. And, without getting unnecessarily

PLAINTIFF'S MOTION FOR RECONSIDERATION - 2

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA 98040
206-230-4255  Fax 206-230-7791

technical, Facebook is not a "domain name registry" or a "domain name registrar" in the traditional senses.

Next, we look to the specific context in which the phrase "domain name" is used. The specific context supports a finding that Facebook is an "other domain name registration authority" because Facebook provides an Internet-based instrument which can be abused in bad faith to tarnish a famous mark and defraud the general public.

The statutory phrase "domain name" is used in connection with the prevention of cyberpiracy. 15 USC §§ 1125(d) and 8131. Cyberpiracy involves the bad faith trafficking of a "domain name." 15 USC § 1125(d)(1)(A). Bad faith is the subject of a detailed nine-factor test. See 15 USC § 1125 (d)(1)(B). In three of the "bad faith" factors, Congress considered a "domain name" synonymous with a "site." 15 USC § 1125(d)(1)(B)(i)(IV)-(VI).

A "domain name" is an instrumentality of bad faith, so understanding the bad faith can be helpful to understand the instrumentality. Broadly speaking, the factors paint the picture of a person who obtained an Internet address that will attract people interested in a famous mark, with the goal of tarnishing the mark or ransoming the address to the owner of the mark. 15 USC § 1125 (d)(1)(B).

A Facebook page fits precisely in this statutory context. Just as a person could create a website at the URL "thesatanictemple.com," a person could also create a website at the URL "facebook.com/thesatanictemple". Both the second-level domain (*thesatanictemple*.com) and the Vanity URL (../*thesatanictemple*) are websites at an internet address which is registered with some kind of authority in the business of purveying a website address.

And, just as a person could obtain the second-level domain in bad faith to profit off the mark, so too could a person traffic in the Facebook page with the same bad faith intent. No

PLAINTIFF'S MOTION FOR RECONSIDERATION - 3

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

hypotheticals are needed here: Defendants pirated the Facebook webpage to direct defamatory statements about the mark at the mark's audience, creating confusion as to the source, sponsorship, affiliation, or endorsement of the "site." See 15 USC § 1125(d)(1)(B)(i)(V); compare Complaint ¶ 62 ("I'm confused as to why a TST Facebook page is being used to attack TST.")

It is a distinction without a meaningful difference that this is cyberpiracy in the context of a Facebook page instead of a second-level domain. The harm asserted in the complaint is the same harm sought to be outlawed by the statute.

We last look to the broader context of the statute. The broader context of the Lanham Act is to protect goodwill and avoid consumer confusion. 87 C.J.S. Trademarks, Etc. §§ 2-3. The specific statutory sections at issue are plainly relevant to the cross-section between the Lanham Act's purposes and the Internet.

It is plain from the statutory text alone that these statutes seek to extend the purposes of the Lanham Act into the Internet age. As detailed above, a second-level domain and a Facebook page, both, fall within the cross-section of the Lanham Act's purposes and the Internet. This factor further suggests that a Facebook page can be a "domain name." Given that the Court came to a different conclusion, there are at least two reasonable interpretations to be drawn from this language. As a result, the statutory meaning of "domain name" is ambiguous. We must dig into the legislative history.

The legislative history also supports application of this Act to these facts. The legislative history is provided by Senate Report 106-140. See **Exhibit 1**. Congress considered a "domain name" to be: (1) synonymous with a website; (2) located at an alphanumeric electronic address; (3) provided by a registration authority; (4) a potential instrument of harm to goodwill or

PLAINTIFF'S MOTION FOR RECONSIDERATION - 4

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA 98040
206-230-4255 Fax 206-230-7791

consumer confusion (i.e. not a screenname). Report at pp. 6-10. A Facebook page meets every one of these categories.

The only basis for an alternative finding is the drafters' errant prediction that users who registered with the second-level domains would always be creating sub-sites as third-level domains ("*thesatanictemple*.facebook.com"). Sometimes that pans out. *See Wilens v. Doe Defendant No. 1*, 2015 WL 5542529, at *3 (N.D. Cal. Sept. 18, 2015) ("*jeffreywilens2*.wordpress.com") But not always. Facebook users instead register under vanity URLs. There is no meaningful reason why a Wordpress page should be subject to a Cyberpiracy claim, but Facebook should, solely based on how the two companies structure the Internet addresses for their users. A Facebook page can, as here, cause the exact same harm sought to be prohibited by the Act. Thus, the Court should find that TST stated a Cyberpiracy claim.

**II.     Defamation**

The Court found that the doctrine of ecclesiastical abstention bars TST's defamation claim because it would entail a determination of whether TST's doctrine promotes, e.g., fascism. Application of the authorities provided would either bind the Court to TST's interpretation that its doctrine does not promote fascism or would be addressed by neutral principles of law. Either way, the Court should find that a defamation claim is viable and was properly stated.

As the Court correctly found, there are two approaches to this issue, either of which requires reconsideration. *Puri v. Khalsa*, 844 F.3d 1152, 1164 (9th Cir. 2017). Courts have two principle options to address a dispute without delving into doctrinal matters. *Id.* at 1163.

Where the dispute requires extensive inquiry into religious law or church governance, the court must "accept as a given whatever the entity decides." *Paul v. Watchtower Bible & Tract Soc. of New York, Inc.*, 819 F.2d 875, 878 (9th Cir. 1987). This "deference" option does have

PLAINTIFF'S MOTION FOR RECONSIDERATION - 5

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA 98040
206-230-4255 Fax 206-230-7791

the benefit of simplicity. As the Court found, the defamation claim will require a showing that TST does not promote, e.g., fascism. If that is an unavoidable question of TST's doctrine, then well-settled law binds the Court to TST's position.

Or, if the dispute can be resolved by application of solely secular legal rules, the court may apply those neutral principles of law. *Puri*, 844 F.3d at 1162; *see also Jones*, 443 U.S. at 602-606. Here, that would involve the Court simply treating TST like it would any other organization. This is the preferred approach in the Ninth Circuit. *Puri*, 844 F.3d at 1166-67.

Partly, the Court's Order is based on *Kavanagh v. Zwilling*, 997 F. Supp. 2d 241, 250 (S.D.N.Y.), aff'd, 578 F. App'x 24 (2d Cir. 2014). In *Kavanaugh*, the First Amendment barred a defamation claim against a church which had defrocked the plaintiff following an ecclesiastical trial for the sin of sexual abuse of a minor. The Court was bound to the Church's position. Contrast here. Defendants do not point to any "canon law" at issue and there is no "substantive sin" which requires Court consideration. TST's doctrine is not really at issue.

The Court also relied on *Hyung Jin Moon v. Hak Ja Han Moon*, 431 F. Supp. 3d 394 (S.D.N.Y. 2019), aff'd as modified sub nom. *Moon v. Moon*, 833 F. App'x 876 (2d Cir. 2020). In *Moon*, the dispute was over who had the right to be the successor to the recently-deceased leader of the church. The deference approach was not available because "the deference approach presupposes that the identity of the church's authoritative decision-making body is undisputed." *Id.*, 431 F.Supp. 3d at 407. Contrast here. Defendants do not contest that TST's leaders are the "real" leaders of The Satanic Temple.

**Wherefore,** TST prays this Court grant reconsideration and vacate the Order of dismissal as to Counts 2 and 5.

PLAINTIFF'S MOTION FOR RECONSIDERATION - 6

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1  Respectfully submitted this 12th day of March, 2021.

LYBECK PEDREIRA & JUSTUS, PLLC

By: */s/ Benjamin Justus*
Benjamin Justus (#38855)
Attorneys for Plaintiff
Chase Bank Building
7900 SE 28th St., Fifth Floor
Mercer Island, WA 98040
206.687.7805 /phone  206.230.7791 /fax
ben@lpjustus.com / email Justus

And: */s/ Matthew A. Kezhaya*
Matthew A. Kezhaya (AR#2014161), admitted pro hac vice
Attorney for Plaintiff
Kezhaya Law PLC
1202 NE McClain Rd
Bentonville, AR 72712
479.431.6112 /ph  479.282.2892 /fax
matt@kezhaya.law / email Kezhaya

PLAINTIFF'S MOTION FOR RECONSIDERATION - 7

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

**CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of March, 2021, I electronically filed PLAINTIFF'S MOTION FOR RECONSIDERATION with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

Dated at Seattle, Washington, the 12th day of March, 2021.

By:    */s/ Benjamin Justus*
       Benjamin Justus

**CERTIFICATION OF CONFERENCE**

The undersigned counsel certifies that, per Paragraph 6 of the Standing Order for Civil Cases Assigned to Judge Richard A. Jones (Doc. 7), on March 12, 2021, counsel for Plaintiff conferred with counsel for Defendants regarding the foregoing motion. The parties were unable to reach an accord that would eliminate the need for the motion.

Dated at Seattle, Washington, the 12th day of March, 2021.

By:    */s/ Benjamin Justus*
       Benjamin Justus

PLAINTIFF'S MOTION FOR RECONSIDERATION - 8

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791