Hon. Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| United Federation of Churches, LLC (dba "The Satanic Temple") | ) ) ) | Case No. 2:20-cv-00509-RAJ |
| Plaintiff, | ) ) | FIRST AMENDED COMPLAINT FOR DAMAGES AND |
| v. | ) ) ) | INJUNCTIVE RELIEF |
| David Alan Johnson (AKA "ADJ"), Leah Fishbaugh, Mickey Meeham, and Nathan Sullivan, | ) ) ) ) ) | |
| Defendants. | ) | |

In support of its claims, Plaintiff United Federation of Churches (dba "The Satanic Temple") (abbreviated "**TST**") alleges as follows:

## I.     PREAMBLE

1.     This case is about two hacked social media accounts and failed attempts at hacking a different social media account and an email account.  TST is suing Defendants for misappropriating two of TST's Facebook business pages by replacing all approved administrators with themselves.  Shortly after the misappropriation, Johnson started posting content critical of TST from TST's own webpage while retaining the original branding.  Later, Johnson modified the name of the website, ostensibly to create a competitor organization, while appending the suffix "Archive Temple Chapter."

2.     Since entry of the original complaint, the Court entered an order dismissing parts

FIRST AMENDED COMPLAINT - 1

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

of this case without prejudice and parts with prejudice. Dkt. # 20.  The parts dismissed without prejudice are the subject of the amendments in this complaint.

> (1) As to Count 1 (CFAA), the facts are further developed to state when the revocation occurred, how that revocation was communicated, and what actions Defendants undertook afterwards.  Compare Dkt. # 20 at pp. 7-9.

> (2) As to former Count 3 (tortious interference with business expectancy), the facts are further developed to state the factual underpinnings for how Defendants knew about the Facebook pages' pecuniary value and how the interference was wrongful beyond the interference itself.  Compare Dkt. # 20 at p. 15.  This count is renumbered to Count 2 in light of the order of dismissal with prejudice of former Count 2 (Cyberpiracy).

> (3) As to former Count 4 (Washington Consumer Protection Act), that claim is replaced with a trespass to chattel claim (Count 3) and a conversion claim (Count 4).  Compare Dkt. # 20 at pp. 16-17.

3. The Cyberpiracy and Defamation counts have been removed from this First Amended Complaint in compliance with the orders of dismissal with prejudice.  To the extent the Court may grant Plaintiff's now-pending Motion for Reconsideration, Dkt. # 21, Plaintiff reserves the right to file a second amended complaint to reassert whichever claims the order of reconsideration may revive.

4. Since the filing of the original complaint, the rightful Washington Chapter leadership has reclaimed the Facebook page.  This moots the need of injunctive relief to return the website to its rightful owners, but does not moot the need of injunctive relief to refrain from future unauthorized access, money damages, or attorney's fees and costs.

## II.   JURISDICTION AND VENUE

5. This Court has original jurisdiction over the federal claim arising under the CFAA. 28 U.S.C. § 1331 (federal question); 18 U.S.C. § 1030(g) (CFAA).  The Court has supplemental

1   jurisdiction over the state common law claims arising from the same facts. 28 U.S.C. § 1367.

2       6.     The Court can properly exercise general personal jurisdiction over each Defendant

3   because they live in Seattle, Washington which is in this District.  The Court can properly exercise

4   specific personal jurisdiction over each Defendant because their actions took place in Seattle,

5   Washington which is in this District.

6       7.     Venue properly lies with this Court because the hacking took place in Seattle,

7   Washington.  28 U.S.C. § 1391.

8                   **III.**    **PARTIES**

9       8.     TST is a religious organization.   See generally "About us," available at

10   https://www.thesatanictemple.org/about-us.html

11       9.     TST subscribes and advances seven fundamental tenets:

12          (1) One should strive to act with compassion and empathy toward all creatures
13              in accordance with reason.

14          (2) The struggle for justice is an ongoing and necessary pursuit that should
              prevail over laws and institutions.

15          (3) One's body is inviolable, subject to one's own will alone.

16          (4) The freedoms of others should be respected, including the freedom to
17              offend. To willfully and unjustly encroach upon the freedoms of another is
              to forgo one's own.

18          (5) Beliefs should conform to one's best scientific understanding of the world.
19              One should take care never to distort scientific facts to fit one's beliefs.

20          (6) People are fallible. If one makes a mistake, one should do one's best to
              rectify it and resolve any harm that might have been caused.

21          (7) Every tenet is a guiding principle designed to inspire nobility in action and
22              thought. The spirit of compassion, wisdom, and justice should always
              prevail over the written or spoken word.

23
24   See "Our tenets" available at https://www.thesatanictemple.org/our-tenets.html.

25       10.    TST's mission is to "encourage benevolence and empathy among all people,

26   reject tyrannical authority, advocate practical common sense and justice, and be directed by the

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1   human conscience to undertake noble pursuits guided by the individual will."  See "Our mission"

2   available at https://www.thesatanictemple.org/our-mission.html.

3       11.     TST was the subject of the recent documentary "Hail Satan?" (2019), directed by

4   Penny Lane and distributed by Magnolia Pictures.

5       12.     TST maintains sole title to the trade name "The Satanic Temple" in the context of

6   religious organizations.  See **Exhibit 1** (registration of trademark).

7       13.     TST has adherents in each of the 50 States, importantly to include Washington.

8   At the relevant time, TST was organized at local levels in "Chapters," which are largely

9   autonomous but are subject to centralized control to ensure faithfulness to organizational

10  principles and purposes.

11      14.     TST had a Washington State Chapter which, at the relevant time, was led by two

12  individuals: one serving as Chapterhead and the other serving as Media Liason.

13      15.     The Chapterhead has administrative authority over the Washington Chapter and,

14  until March 12, 2020, was assisted by an advisory council.

15      16.     The Media Liaison promotes the Washington Chapter's activities to the general

16  public.

17      17.     Defendants were councilors on the advisory council to the Chapterhead.   On

18  March 12, 2020, the advisory council consisted of 16 positions, of which Defendants held four.

19  Attendant to their positions on the council, Defendants were entrusted with management of the

20  Chapter's social media presence along with the other councilors.

21      18.     On March 12, 2020, Defendants were removed from their positions on the council

22  because of interpersonal conflicts with Chapter leadership and other councilors.

23      19.     Defendant David Alan Johnson is an individual residing in Seattle, which is within

24  this Court's district.   Johnson is a former associate of TST who misappropriated TST's

25  Washington Chapter Facebook website from within this Court's district and is using it and its

26  audience in an effort to undermine TST and to create a competitor organization.

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

20.     Defendant Nathan Sullivan is an associate of Johnson, and former associate of TST, who aided and abetted the hacking.  Sullivan also lives in Seattle.  TST entrusted Sullivan as the custodian of various documents which constitute trade secrets.  Examples include original signed membership agreements, internal policies and procedures, and a listing of members with contact information.  Sullivan now wrongfully maintains exclusive control over these sensitive documents.  On information and belief, Johnson has wrongfully given Sullivan administrative privileges to TST's Washington Chapter page.

21.     Defendant Leah Fishbaugh is an associate of Johnson, and former associate of TST, who aided and abetted the hacking and who separately attempted to hack the Google account.  Fishbaugh also lives in Seattle.  Fishbaugh changed the account credentials to the Washington Chapter's email account in a failed attempt to usurp control over the email account. On information and belief, Johnson has wrongfully given Fishbaugh administrative privileges to TST's Washington Chapter page.

22.     Defendant Mickey Meeham is an associate of Johnson, and former associate of TST, who aided and abetted the hacking.  Meeham also lives in Seattle.  On information and belief, Johnson has wrongfully given Fishbaugh administrative privileges to TST's Washington Chapter page.  Meeham misappropriated the Affiliate page.

## IV.     FACTUAL BACKGROUND

23.     Facebook is a ubiquitous internet social medium which permits users to create and share content including without limitation links, commentary, and written conversations.  Content can be shared by individuals on personal pages or by organizations on business pages.

24.     Twitter is also a ubiquitous internet social medium which permits users to create and share substantially similar content as Facebook.

25.     Google is a ubiquitous internet-based information platform.  Among its many services, Google provides an email platform ("gmail") and a cloud-based document creation and storage platform ("Google Drive.")

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

26.     At the relevant time, Facebook was the Washington Chapter's primary platform of communicating with its membership.

27.     At the relevant time, Twitter was the Washington Chapter's secondary platform of communicating with its membership.

28.     TST's Washington Chapter has a Google account to generally facilitate its organizational purposes by creating and storing documents.

29.     In October of 2014, the Washington Chapter business page was created exclusively for the benefit of TST in its efforts to disseminate information for what was then the Seattle Chapter. See id., in its current state, available at https://www.facebook.com/thesatanictemplewashington. See also **Exhibit 2** (Chapter page history, updated since original complaint).

30.     Over the next several years, the Washington Chapter has grown the Facebook page to an audience exceeding 17,000 followers.  Ibid.

31.     In January of 2015, the Washington Chapter created a Twitter account for the organization.  See id. available at https://twitter.com/TST_Washington.  Currently, the Twitter account has an audience of about 4,000 followers.  Id.

32.     In September of 2018, the Washington Chapter created a secondary Facebook page, named "TST WA Allies," to facilitate communications with individuals who were interested in TST but did not want to identify as a member.  Since the original complaint, the Allies page appears to have been deleted.     See     id.,     in     its     current     state,     available     at https://www.facebook.com/queersatanicmemes; see also **Exhibit 3** (deleted page).

33.     Until the hacking, both Facebook pages were maintained and controlled exclusively by administrators approved by TST.

34.     Administrators are given a written Code of Conduct, which instruct requirements for permissible activity on behalf of TST.  In relevant part, the instructions pertaining to online conduct follow:

Public statements & interactions with media

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

All public actions and statements must be approved and vetted by the TST National Council and the TST Executive Council. If a member is approached by media or asked for any official statement regarding an action or belief relating to TST all members must refrain from comment and refer the inquiring party to the Chapter Head.

. . .

Confidentiality

Members should respect confidentiality, including documentation. Internal information should not be shared beyond members of the local chapter. Members' names, contact information, and meeting locations are also considered confidential. If you are ever unsure, don't share.

. . .

Copyright

Material produced by The Satanic Temple is the property of the organization. Consent for use of logo, name or other identity materials may be approved for use for certain projects. You may not use any official materials without prior approval. Approval may also be withdrawn at any time.

. . .

Online code of conduct

As a member of TST, your interactions with others, both online and off, will be held to the TST Code of Conduct. As an individual, we support your freedom of speech and freedom to hold your opinions. Members' behavior, however, reflects on the organization as whole and also builds the internal culture of TST. Therefore, we have a code of conduct specifically for the internet.

Respect the diversity of opinions you find online and respond in a courteous manner. All TST members' online conduct must be free of harassment, stalking, threats, abuse, insults, defamation, or humiliation. This includes, but is not limited to, demeaning comments of an

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1   ethnic, religious, sexist, or racist nature; and unwanted sexual advances or intimidation by

2   email or online. Such behavior will result in termination from the organization.

3   As a member of TST, always assume that what you publish on the web is permanent.

4   Anyone can easily print out a comment or save it as a screenshot. Remember, that TST is

5   often engaged in legal suits and exchanges online, or via text have the right to be exposed in

6   the case of a deposition. Think before you hit "send".

7   Using TST in connection with surveys, contests, pyramid schemes, chain letters, junk email,

8   spamming or any duplication or unsolicited messages is prohibited and will result

9   termination from the organization.

10   Any public disagreements between TST members should be taken to a private conversation.

11   If mediation is needed, it will be provided.

12  See form agreement, available as **Exhibit 4**.  Sullivan has the only known copies of the agreement

13  which was signed by Defendants.

14      35.     The above written instructions form the contours of administrators' authorization to

15  access TST's social media accounts.

16      36.     Defendants, each, were entrusted with administrative rights to the above-described

17  social media accounts, subject to the requirements set forth in the written instructions.

18      37.     Until the hacking, Defendant Sullivan had exclusive access of the original copies of

19  each Defendants' signature, acknowledging and agreeing to be bound by the above terms in return

20  for access to the social media accounts.

21      38.     On information and belief, Sullivan still has exclusive access to these documents,

22  among other highly sensitive materials including membership listings, internal policies and

23  procedures, and meeting notes.

24      39.     Defendants were each well aware of the Code of Conduct because it served as a

25  source of friction leading up to the events giving rise to this litigation.  For example, on March 2,

26  2020, Johnson shared the following post on the Allies page outside of his authority:

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791





40.     The ensuing deletion and reiteration of the expectation that Johnson adhere to the Code of Conduct as a condition of continued social media access would serve as foreshadowing for the misappropriation of the Allies page.

41.     Between March 2 and March 12, TST's Washington leadership became increasingly frustrated with Defendants' organizational failures and inflammation of interpersonal conflicts within the advisory council.

42.     "Organizational failures," as used above, particularly included:

(1) Repeatedly operating TST's social media to endorse leftist politics as opposed to Satanism, despite repeated reminders that this was unacceptable;

(2) Failing to attend a particular meeting to address the above issue; and

(3) Failing to initiate, conceive, or execute any publicity for the Washington

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1   Chapter's Prayer for Plurality event, which was a matter of organizational

2   significance.

3   43.   On March 12, 2020, TST's Washington leadership removed Defendants from their

4   advisory positions.

5   44.   Defendants' positions on the advisory council entailed the authorization to manage

6   the Chapter's social media activity.  By removing Defendants from their advisory positions, the

7   Washington Chapter leadership revoked Defendants' authorization to manage the Chapter's social

8   media activity and revoked Defendants' authorization to serve as custodians of records.

9   45.   At some point between March 12 and March 14, 2020, Defendants entered into an

10  unlawful agreement to misappropriate and shut down substantially all the internet presence of TST's

11  Washington Chapter toward the twin goals of forming a competitor organization and harming TST.

12  46.   On March 14, 2020, Meeham exceeded authorization for the Allies page by

13  removing all TST-approved administrators except the other named Defendants, changing the name

14  to "Evergreen Memes for Queer Satanic Friends," and posting the following manifesto:

**Evergreen Memes for Queer Satanic Fiends**
March 14 at 7:59 PM · 🌐

**This page is no longer affiliated with The Satanic Temple.**

Ave Satanas!

I was recently notified that talking about transphobes and ableism was considered not to be relevant to The Satanic Temple's "International Council" in Salem or to the local chapter in Washington State.

So by talking about leftist politics like how "The struggle for justice is an ongoing and necessary pursuit that should prevail over laws and institutions," this page wasn't being Satanic.

Specifically:
"(IC is aware of how badly the allies page is fucking up), isn't worried about being labelled a criminal (and endorses negative and unrelated leftist politics on TST-affiliated social media). TST WA Allies should be about Satanism. On March 4th, this was told to you and ADJ, but just as recently as two days ago, there is a post about ableism. (this as a post from an individual is great - as TST WA not acceptable)."

So to be clear, this page thinks ableism, misogyny, and racism are superstitions, fascists are bad, transphobes can shut the fuck up, and the only good bootlickers do it for a kink and not because they love making excuses for cops killing people.

No gods, no masters.

Be gay, do crime, hail Satan

FIRST AMENDED COMPLAINT - 10

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

47.     Meeham, in conjunction with the other named Defendants, then began posting material in violation of the Code of Conduct and in disregard of the revocation of authority entailed in being removed from the position on the advisory council.

48.     Sullivan explicitly recognized that Defendants had no authorization to access the Allies page.  On March 15, 2020, Sullivan publicly stated that he was no longer affiliated with TST. **Exhibit 5**.  A commentator suggested "Time to found your own," to which Sullivan responded "three steps ahead of you" and "we have a meme page here that we stole from TST: Evergreen Memes for Queer Satanic Friends."  **Id.** at pp. 3-4.

49.     Following Meeham's usurpation of the Allies page, the Washington Chapterhead removed all defendants from administrative access privileges to the remaining social media accounts.  More specifically, the Chapterhead removed all administrative privileges of Johnson, Fishbaugh, Meeham, and Sullivan to the Facebook Chapter account and the Twitter and Google accounts referenced herein.

50.     On or around March 18, 2020, Johnson hacked the TST's Twitter account, removed all of TST's approved administrators, replaced the approved administrators with his co-Defendants, followed a number of extremist groups, and changed the description from "Washington State Chapter of the Satanic Temple" to "Satan stands as the ultimate icon for selfless revolt.  We oppose irrational, unjust hierarchies like white supremacy, patriarchy, ableism, & cishet normality." Johnson took these actions despite having a subjective awareness that he no longer had authorization to use TST's Twitter account.

51.     On March 20, 2020, despite having a subjective awareness that he no longer had authorization to use TST's Facebook Chapter page, Johnson took control of the Chapter page by removing all TST-approved administrators, modifying the cover page without approval, and posting a three-page manifesto.  The manifesto, as it looked as of the original complaint, is attached and incorporated as **Exhibit 6** (the archive reflects Central time).  Originally, the manifesto was posted with the original trade dress of TST.

FIRST AMENDED COMPLAINT - 11

No. 20-cv-509

52.     Broadly, the manifesto levied false claims that TST leadership is cozy with the alt-right, are white supremacists, are generally insufficiently leftist for Johnson's preference, and does not conform to Johnson's impression of Satanism.  Posting the manifesto exceeded Johnson's grant of authority as defined in the Code of Conduct, disregarded the revocation of authority entailed in being removed from the position on the advisory council, and disregarded the explicit revocation of authority entailed in having his administrative access to the Chapter page removed.

53.     On March 20 at 11:29 pm, the Chapter's media liaison emailed Johnson a cease and desist instruction, stating "I'd like you to return the Facebook page back to us please."  **Exhibit 7**

54.     Johnson ignored the email and did not return the Facebook page to TST.

55.     Instead, Johnson spent the next couple of days posting links and commentary from the Chapter page, all with the general, and false, theme that TST leaders are incompetent fascists. See **Exhibit 8** (posts and commentary in excess of authorization).  The links and commentary all exceeded Johnson's grant of authority as defined in the Code of Conduct, disregarded the revocation of authority entailed in being removed from the position on the advisory council, disregarded the explicit revocation of authority entailed in having his administrative access to the Chapter page removed, and disregarded the explicit cease and desist demand referenced in ¶ 54.

56.     On March 20 at 11:36 pm, Fishbaugh attempted to change the password to the Chapter's Google-based email account by changing the recovery email and changing the phone number.  This ignored the revocation of authority entailed in being removed from the position on the advisory council and disregarded the explicit withdrawal of authority entailed in removing her administrative access.

57.     On March 22 at 3:08 pm, Johnson modified the name of the Chapter page from "The Satanic Temple Washington" to "Satanic Washington State – Archived Temple Chapter" and modified the profile picture to replace TST-specific iconography with "antifa" symbolism.  These modifications disregarded the revocation of authority entailed in being removed from the position on the advisory council, disregarded the explicit revocation of authorization entailed in having his

FIRST AMENDED COMPLAINT - 12

No. 20-cv-509

1   social media administrative access revoked, and disregarded the explicit cease and desist demands

2   referenced in ¶¶ 45.

3     58. By operation of his removal as a member of the advisory council, Sullivan's control

4   over original signed copies of membership agreements, cloud-based trade secret documentation,

5   became unauthorized.

6     59. Of importance to this action, Sullivan had, and continues to have, exclusive control

7   over membership enrollment and application documents and background check documents for

8   prospective new members (to exclude felons from membership), both of which are paper

9   documents.  Sullivan also had, and continues to have, an electronic database of the membership, as

10  well as their contact information.

11    60. TST opposes the use or threat of violence as a mechanism for control.

12    61. The Chapter page maintains its original URL:

13  https://www.facebook.com/TheSatanicTempleWashington/.

14    62. As of the original complaint, TST's Washington Chapter lost between 20 and 30

15  members because of Johnson's false claims published to the Chapter page.

16    63. Facebook refused to correct the matter, mislabeling the issue as a "Page admin

17  issue" to the exclusion of "infringements of your legal rights."

18    64. One week prior to the original complaint, this time through counsel, TST

19  reiterated the legal theories at play to Facebook and to Johnson.  More particularly, On March 23,

20  2020, Matthew Kezhaya (TST's outside general counsel) issued a demand letter to Johnson which

21  threatened this very litigation unless he "permanently relinquish[ed] full control" of the Chapter

22  page "by 4:00 PM Central Time on March 24, 2020.  **Exhibit 9**

23    65. Johnson ignored the letter and, together with his co-Defendants, continued to

24  maintain exclusive control over the Chapter page.  In so doing, Johnson and his co-Defendants

25  disregarded the revocation of authority entailed in being removed from their positions on the

26  advisory council, disregarded the explicit revocation of authorization entailed in having their social

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1   media administrative access revoked, and disregarded the explicit cease and desist demands

2   referenced in ¶¶ 45 and 64.

3        66.    Facebook did not respond and did not return control of the Chapter page until after

4   the original complaint.  See Exhibit 2.

5        67.    Defendants simply ignored all communications, from counsel and TST alike.

6        68.    TST was able to recover the Twitter account and the email account through

7   Twitter and Google, respectively.

### III.    CAUSES OF ACTION

### Count 1:

### CFAA violation

11       69.    TST re-alleges and incorporates by reference the foregoing allegations.

12       70.    The CFAA provides a civil cause of action when a Defendant knowingly accesses a

13   "protected computer" by "exceeding authorized access," which causes a cumulative "loss" of at

14   least $5,000.  See 18 U.S.C. § 1030(g), (c)(4)(A)(i)(I).  Or, in the case of an attempted violation, the

15   successful violation would cause at least $5,000 in "loss."  Ibid.

16       71.    A "computer," is broadly defined as any device for processing or storing data.   18

17   U.S.C. § 1030(e)(1).

18       72.    A "protected computer" is a "computer" which is "used in or affecting interstate or

19   foreign commerce or communication."  18 U.S.C. § 1030(e)(2)(B).

20       73.    Websites have been recognized as a "protected computer" within the meaning of the

21   CFAA.  See United States v. Drew, 259 F.R.D. 449, 457-58 (C.D. Cal. 2009).

22       74.    A defendant "exceeds authorized access" by accessing a computer "with

23   authorization and to use such access to obtain or alter information in the computer that the accesser

24   is not entitled so to obtain or alter."  18 U.S.C. § 1030(e)(6).

25       75.    A "loss" is "any reasonable cost to any victim, including the cost of responding to

26   an offense, conducting a damage assessment, and restoring the data, program, system, or

FIRST AMENDED COMPLAINT - 14

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1  information to its condition prior to the offense, and any revenue lost, cost incurred, or other

2  consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

3    76.    As described above, Defendants wrongfully and intentionally by exceeding their

4  authorized access, perpetrated fraud upon TST and its membership, as well as any who happened

5  upon the offending posts, by posting under the misappropriated identity of TST.    Perfectly

6  encapsulating the issue, one commenter expressed confusion on March 21, stating:



13  See https://www.facebook.com/TheSatanicTempleWashington/posts/2908426992513671

14

15    77.    There is a cognizable dollar value to social media accounts.    Preliminary estimates

16  of the "loss" related to the misappropriation of the Chapter page is $33,689.70, plus $1,037.52 for

17  the Allies page.    The Twitter page, if successfully misappropriated, would have lost $8,246.70.    The

18  aggregate sum being $42,973.92—well in excess of the $5,000 jurisdictional requirement.

19    78.    Defendants were aware that the social media accounts had an economic value to

20  TST.    The social media accounts were the primary means for TST to communicate with the general

21  public and TST's supporters, and those communications help to foster the kind of relationship that

22  results in charitable donations to support TST's organizational purposes.    By depriving TST of its

23  social media accounts, Defendants intended to diminish those donations and divert donations to their

24  competitor organization, provisionally named "The Satanic Temple 2: Electric Boogaloo."  Exhibit

25  3 at p. 4.

26    79.    Further compounding the losses are TST's attorney's fees for investigating this

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1   matter, entering futile demands for corrective action: both of Facebook and from Defendants, and

2   drafting this complaint.  TST will continue to incur losses in the costs and fees related to this lawsuit.

3   TST's costs and attorney's fees well exceed the $6,000 incurred in researching and drafting the

4   original complaint.

5        80.     TST  has  incurred,  and  continues  to  incur,  reputation  losses  from  the

6   misappropriation of its Facebook pages.  These reputation losses are irreparable by money damages.

7        81.     Based on the foregoing, TST is entitled to injunctive relief in the form of a permanent

8   injunction enjoining Defendants from accessing any of TST's "protected computers" (i.e. any

9   internet-based media) under threat of contempt, economic damages of at least $48,973.92, and costs

10  and attorney's fees to be computed after entry of the decree.

11                              **Count 2:**

12                         **Tortious interference**

13       82.     TST re-alleges and incorporates by reference the foregoing allegations.

14       83.     TST  maintains  ongoing  business  relationships  with  Facebook,  importantly  to

15  include the Chapter page and Allies page.

16       84.     There is an economic benefit for TST in having a ubiquitous platform to interact

17  with members and prospective members in the convenience of their homes and wherever they carry

18  their smartphones.  Namely, with increased awareness comes increased membership and donations

19  which create a positive feedback loop.

20       85.     At  the  relevant  time,  Defendants  had  subjective  knowledge  of  the  business

21  relationship between Facebook and TST.  Facebook is well-known as a separate company from the

22  organizations that have profiles on its proprietary network.

23       86.     Defendants intentionally and with an improper motive acted to sever the Washington

24  Chapter's relationships with Facebook by misappropriating the two websites for the twin goals of

25  harming the Washington Chapter, and TST at large, and creating a competitor organization.

26       87.     Defendants were aware that the social media accounts had an economic value to

FIRST AMENDED COMPLAINT - 16

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1   TST.  The social media accounts were the primary means for TST to communicate with the general

2   public and TST's supporters, and those communications help to foster the kind of relationship that

3   results in charitable donations to support TST's organizational purposes.  By depriving TST of its

4   social media accounts, Defendants intended to diminish those donations and divert donations to their

5   competitor organization, provisionally named "The Satanic Temple 2: Electric Boogaloo."  Exhibit

6   3 at p. 4.

7          88.     Defendants' interference with TST's social media presence was wrongful beyond

8   the interference itself.  Defendants abused TST's social media presence as a channel to publish

9   derogatory messages directly to TST's intended audience.  The contemplated and intentional

10  purpose of so doing was to diminish TST's membership and donation base.

11         89.     As a direct and proximate result of Defendants' wrongful conduct, TST has suffered

12  substantial economic injury and loss of business opportunity and has incurred attorney's fees and

13  other costs in attempting to remedy the situation.

14         90.     Based on the foregoing, TST is entitled to injunctive relief in the form of a permanent

15  injunction enjoining Defendants from accessing any of TST's "protected computers" under threat

16  of contempt, punitive damages, and costs and attorney's fees to be computed after entry of the

17  decree.

18                                  **Count 4:**

19                            **Trespass to chattels**

20         91.     TST re-alleges and incorporates by reference the foregoing allegations.

21         92.     Trespass to chattels is the intentional interference with a party's personal property

22  without justification that deprives the owner of possession or use.  G&G Closed Cir. Events, LLC

23  v. Single, LLC, No. C18-1295JLR, 2020 WL 5815050, at *4 (W.D. Wash. Sept. 30, 2020) (citing

24  Restatement (Second) of Torts § 217).

25         93.     The first chattel at issue is TST's possessory interest in Facebook's computer

26  network which manifested through the internet as the Chapter page and the Allies page.

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

94.     Defendants intentionally dispossessed TST of the Chapter page and the Allies page by logging in to Facebook's computer network and replacing Defendants for TST's authorized administrators of the pages.

95.     Defendants had no justification to remove all of TST's approved administrators or to usurp the pages at issue.  Their authorization to use the pages were revoked by virtue of the removal of their positions on the advisory council and was explicitly revoked as to the Chapter page by the revocation of their administrative access.

96.     Although Washington has not squarely addressed the question, California courts have resolved that dispossession of access to a computer system is an actionable trespass to chattels. See Synopsys, Inc. v. Ubiquiti Networks, Inc., 313 F. Supp. 3d 1056, 1080 (N.D. Cal. 2018) and Intel Corp. v. Hamidi, 30 Cal. 4th 1342, 1351, 71 P.3d 296, 303 (2003); see also JLM Couture, Inc. v. Gutman, No. 20 CV 10575-LTS-SLC, 2021 WL 827749 (S.D.N.Y. Mar. 4, 2021) (granting a preliminary injunction to restrain a former employee's use of an employer's social media accounts post-termination–albeit while explicitly declining to address the ultimate trespass to chattel and conversion claims, id. at *19).

97.     The second chattel at issue is TST's membership-related documents, whether in physical or electronic format.

98.     Defendants, particularly Sullivan, intentionally dispossessed TST of these membership-related documents by maintaining exclusive control over the documents despite the termination of Sullivan's role as custodian of records.

99.     Based on the foregoing, TST is entitled to injunctive relief in the form of a permanent injunction enjoining Defendants from accessing any of TST's "protected computers" under threat of contempt, an order to return TST's membership related documents and destroy any copies thereof, an order for punitive damages, and costs and attorney's fees to be computed after entry of the decree.

**Count 5:**

FIRST AMENDED COMPLAINT - 18

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

**Conversion**

100.    TST re-alleges and incorporates by reference the foregoing allegations.

101.    Conversion is the act of "willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it.  In re Mastro, No. 09-16841-MLB, 2017 WL 2889659, at *13 (Bankr. W.D. Wash. July 6, 2017) (citing Public Util. Dist. No. 1 v. Wash. Public Power Supply Sys., 104 Wn.2d 353, 378 (Wash. 1985)).

102.    "Willful" means "intentional" but not necessarily "malicious." Id. (citing Schilling v. Radio Holdings, Inc., 136 Wn.2d 152, 159–60 (Wash. 1998)) (citations omitted).

103.    Malicious intent is not an element of conversion and good faith is not a defense. Id. (citing Brown v. Brown, 157 Wn. App. 803, 818, (2010)).

104.    Trespass to chattels differs from conversion as a matter of degree.  See Intel Corp. v. Hamidi, 30 Cal. 4th 1342, 1350, 71 P.3d 296, 302 (2003) ("Dubbed by Prosser the 'little brother of conversion,' the tort of trespass to chattels allows recovery for interferences with possession of personal property 'not sufficiently important to be classed as conversion, and so to compel the defendant to pay the full value of the thing with which he has interfered'); see also Damiano v. Lind, 163 Wash. App. 1017 at *5 (2011) ("Trespass to chattels is something less than a conversion.") (unpublished opinion, but the Court "may consider unpublished state decisions, even though such opinions have no precedential value." Emps. Ins. of Wausau v. Granite State Ins. Co., 330 F.3d 1214, 1220 (9th Cir. 2003)).

105.    The same chattels are at issue in this Conversion claim as the Trespass to Chattels claim.  Both are included because Washington courts tend to discuss both in tandem. E.g. Damiano, above; see also Sexton v. Brown, 147 Wash. App. 1005 (2008).

## IV.   PRAYER FOR RELIEF

WHEREFORE, in addition to all other relief to which the Court finds TST entitled, TST prays for orders as follows:

(1)    Defendants shall, jointly and severally, immediately return full control to counsel for

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1    Plaintiff under threat of contempt: all TST materials, whether in paper or electronic format,

2    including without limitation: all signed agreements, all membership listings, all internal policies and

3    procedures, all governance documentation, any branding materials, and any other document created

4    by or for the benefit of TST.

5         (2) Defendants shall, jointly and severally, permanently refrain from accessing any

6             administrative function of any internet-based medium, including without limitation any

7             social media accounts, email accounts, or document storage accounts, created by or for

8             the benefit of TST.

9         (3)    Defendants shall, jointly and severally, pay economic to Plaintiff in the amount of

10   $42,973.92.

11        (4)    Defendants shall, jointly and severally, pay statutory damages to Plaintiff in the

12   amount of $100,000.

13        (5)    Defendants shall, jointly and severally, pay punitive damages to Plaintiff in an

14   amount to be determined at trial.

15        (6)    Defendants shall, jointly and severally, pay costs and attorney's fees to Plaintiff in

16   an amount to be determined after trial.

17        (7)    Defendants shall, jointly and severally, pay prejudgment and postjudgment interest

18   until paid in full.

19

20        Respectfully submitted this 29th day of March, 2021.

21                              LYBECK PEDREIRA & JUSTUS, PLLC

22                              By: */s/ Benjamin Justus*
23                              Benjamin Justus (#38855)
                                Attorneys for Plaintiff
24                              Chase Bank Building
                                7900 SE 28th St., Fifth Floor
25                              Mercer Island, WA 98040
                                206.230.4255 /ph  206.230.7791 /fax
26                              ben@lpjustus.com / email Justus

FIRST AMENDED COMPLAINT - 20

No. 20-cv-509

1

2

3

4

5

6

And: */s/ Matthew A. Kezhaya*
Matthew A. Kezhaya (AR#2014161), admitted pro hac vice
Attorney for Plaintiff
Kezhaya Law PLC
1202 NE McClain Rd
Bentonville, AR 72712
479.431.6112 /ph  479.282.2892 /fax
matt@kezhaya.law / email Kezhaya

7

## **CERTIFICATE OF SERVICE**

8

9

10

11

12

I hereby certify that on the 29th day of March, 2021, I electronically filed the foregoing

FIRST AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF with the

Clerk of the Court using the CM/ECF system, which will send notification of such filing to all

parties of record.

13

Dated at Seattle, Washington, the 29th day of March, 2021.

14

15

By:   */s/ Benjamin Justus*
Benjamin Justus

16

17

18

19

20

21

22

23

24

25

26

FIRST AMENDED COMPLAINT - 21

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791