Hon. Richard A. Jones

1

2

3

4

5

6

7  UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

8

9  United Federation of Churches, LLC (dba           )
"The Satanic Temple")                              )      Case No. 2:20-cv-00509-RAJ
                                                   )
10                         Plaintiff,              )      FIRST AMENDED COMPLAINT
                                                   )      FOR DAMAGES AND
11         v.                                      )      INJUNCTIVE RELIEF
                                                   )
12  David Alan Johnson (AKA "ADJ"),                )
    Leah Fishbaugh, Mickey Meeham, and             )
13  Nathan Sullivan,                               )
                                                   )
14                         Defendants.             )

15

16         In support of its claims, Plaintiff United Federation of Churches (dba "The Satanic Temple")

17  (abbreviated "**TST**") alleges as follows:

18                              I.      <u>PREAMBLE</u>

19         1.      This case is about two hacked social media accounts and failed attempts at

20  hacking a different social media account and an email account.  TST is suing Defendants for

21  misappropriating two of TST's Facebook business pages by replacing all approved

22  administrators with themselves.  Shortly after the misappropriation, Johnson started posting

23  content critical of TST from TST's own webpage while retaining the original branding.  Later,

24  Johnson modified the name of the website, ostensibly to create a competitor organization, while

25  appending the suffix "Archive Temple Chapter."

26         2.      Since entry of the original complaint, the Court entered an order dismissing parts

~~FIRST~~ SECOND AMENDED COMPLAINT - 1

No. 20-cv-509

of this case without prejudice and parts with prejudice. Dkt. # 20.  The parts dismissed without prejudice are the subject of the amendments in this complaint.

        (1) As to Count 1 (CFAA), the facts are further developed to state when the revocation occurred, how that revocation was communicated, and what actions Defendants undertook afterwards.  Compare Dkt. # 20 at pp. 7-9.

        (2) As to former Count 3 (tortious interference with business expectancy), the facts are further developed to state the factual underpinnings for how Defendants knew about the Facebook pages' pecuniary value and how the interference was wrongful beyond the interference itself.  Compare Dkt. # 20 at p. 15.  This count is renumbered to Count 2 in light of the order of dismissal with prejudice of former Count 2 (Cyberpiracy).

        (3) As to former Count 4 (Washington Consumer Protection Act), that claim is replaced with a trespass to chattel claim (Count 3) and a conversion claim (Count 4).  Compare Dkt. # 20 at pp. 16-17.

    3.    The Cyberpiracy and Defamation counts have been removed from this First Amended Complaint in compliance with the orders of dismissal with prejudice.  To the extent the Court may grant Plaintiff's now-pending Motion for Reconsideration, Dkt. # 21, Plaintiff reserves the right to file a second amended complaint to reassert whichever claims the order of reconsideration may revive.

    ~~3.~~4.    Since the filing of the original complaint, the rightful Washington Chapter leadership has reclaimed the Chapter page through Facebook.  This moots the need of injunctive relief to return the Chapter website to its rightful owners.  This controversy is still live, however, because TST still needs: injunctive relief for Defendants to return the Allies page, to preclude Defendants from future unauthorized access of TST's electronic materials, to return TST's wrongfully detained membership documents, and as otherwise appropriate to prevent the creation of other counterfeit materials; money damages; and attorney's fees and costs of this action.

~~FIRST~~ SECOND AMENDED COMPLAINT - 2

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1   ~~4.      Since  the  filing  of  the  original  complaint,  the  rightful  Washington  Chapter~~

2   ~~leadership has reclaimed the Facebook page.  This moots the need of injunctive relief to return~~

3   ~~the website to its rightful owners, but does not moot the need of injunctive relief to refrain from~~

4   ~~future unauthorized access or as otherwise appropriate to prevent the creation of other counterfeit~~

5   ~~marks, money damages, or attorney's fees and costs.~~

6   **II.    JURISDICTION AND VENUE**

7       5.      This Court has original jurisdiction over the federal claim arising under the CFAA.

8   28 U.S.C. § 1331 (federal question); 18 U.S.C. § 1030(g) (CFAA).  The Court has supplemental

9   jurisdiction over the state common law claims arising from the same facts. 28 U.S.C. § 1367.

10      6.      The Court can properly exercise general personal jurisdiction over each Defendant

11  because they live in Seattle, Washington which is in this District.  The Court can properly exercise

12  specific personal jurisdiction over each Defendant because their actions took place in Seattle,

13  Washington which is in this District.

14      7.      Venue properly lies with this Court because the hacking took place in Seattle,

15  Washington.  28 U.S.C. § 1391.

16  **III.    PARTIES**

17      8.      TST is a religious organization.   See generally "About us," available at

18  https://www.thesatanictemple.org/about-us.html

19      9.      TST subscribes and advances seven fundamental tenets:

20  (1) One should strive to act with compassion and empathy toward all creatures in accordance with reason.

21

22  (2) The struggle for justice is an ongoing and necessary pursuit that should prevail over laws and institutions.

23  (3) One's body is inviolable, subject to one's own will alone.

24  (4) The freedoms of others should be respected, including the freedom to
25  offend. To willfully and unjustly encroach upon the freedoms of another is to forgo one's own.

26

~~FIRST~~ SECOND AMENDED COMPLAINT - 3

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

(5) Beliefs should conform to one's best scientific understanding of the world. One should take care never to distort scientific facts to fit one's beliefs.

(6) People are fallible. If one makes a mistake, one should do one's best to rectify it and resolve any harm that might have been caused.

(7) Every tenet is a guiding principle designed to inspire nobility in action and thought. The spirit of compassion, wisdom, and justice should always prevail over the written or spoken word.

See "Our tenets" available at https://www.thesatanictemple.org/our-tenets.html.

10.     TST's mission is to "encourage benevolence and empathy among all people, reject tyrannical authority, advocate practical common sense and justice, and be directed by the human conscience to undertake noble pursuits guided by the individual will." See "Our mission" available at https://www.thesatanictemple.org/our-mission.html.

11.     TST was the subject of the recent documentary "Hail Satan?" (2019), directed by Penny Lane and distributed by Magnolia Pictures.

12.     TST maintains sole title to the trade name "The Satanic Temple" in the context of religious organizations.  See **Exhibit 1** (registration of trademark).

13.     TST has adherents in each of the 50 States, importantly to include Washington. At the relevant time, TST was organized at local levels in "Chapters," which are largely autonomous but are subject to centralized control to ensure faithfulness to organizational principles and purposes.

14.     TST had a Washington State Chapter which, at the relevant time, was led by two individuals: one serving as Chapterhead and the other serving as Media Liason.

15.     The Chapterhead has administrative authority over the Washington Chapter and, until March 12, 2020, was assisted by an advisory council.

16.     The Media Liaison promotes the Washington Chapter's activities to the general public.

17.     Defendants were councilors on the advisory council to the Chapterhead.  On March 12, 2020, the advisory council consisted of 16 positions, of which Defendants held four.

~~FIRST~~ SECOND AMENDED COMPLAINT - 4

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1    Attendant to their positions on the council, Defendants were entrusted with management of the

2    Chapter's social media presence along with the other councilors.

3          18.    On March 12, 2020, Defendants were removed from their positions on the council

4    because of interpersonal conflicts with Chapter leadership and other councilors.

5          19.    Defendant David Alan Johnson is an individual residing in Seattle, which is within

6    this Court's district.   Johnson is a former associate of TST who misappropriated TST's

7    Washington Chapter Facebook website from within this Court's district and is using it and its

8    audience in an effort to undermine TST and to create a competitor organization.

9          20.    Defendant Nathan Sullivan is an associate of Johnson, and former associate of

10    TST, who aided and abetted the hacking.  Sullivan also lives in Seattle.  TST entrusted Sullivan

11    as the custodian of various documents which constitute trade secrets.  Examples include original

12    signed membership agreements, internal policies and procedures, and a listing of members with

13    contact information.  Sullivan now wrongfully maintains exclusive control over these sensitive

14    documents.  On information and belief, Johnson has wrongfully given Sullivan administrative

15    privileges to TST's Washington Chapter page.

16          21.    Defendant Leah Fishbaugh is an associate of Johnson, and former associate of

17    TST, who aided and abetted the hacking and who separately attempted to hack the Google

18    account.  Fishbaugh also lives in Seattle.  Fishbaugh changed the account credentials to the

19    Washington Chapter's email account in a failed attempt to usurp control over the email account.

20    On information and belief, Johnson has wrongfully given Fishbaugh administrative privileges to

21    TST's Washington Chapter page.

22          22.    Defendant Mickey Meeham is an associate of Johnson, and former associate of

23    TST, who aided and abetted the hacking.  Meeham also lives in Seattle.  On information and

24    belief, Johnson has wrongfully given Fishbaugh administrative privileges to TST's Washington

25    Chapter page.  Meeham misappropriated the Affiliate page.

26                **IV.**    **FACTUAL BACKGROUND**

~~FIRST~~ SECOND AMENDED COMPLAINT - 5

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

23.     Facebook is a ubiquitous internet social medium which permits users to create and share content including without limitation links, commentary, and written conversations.  Content can be shared by individuals on personal pages or by organizations on business pages.

24.     Twitter is also a ubiquitous internet social medium which permits users to create and share substantially similar content as Facebook.

25.     Google is a ubiquitous internet-based information platform.  Among its many services, Google provides an email platform ("gmail") and a cloud-based document creation and storage platform ("Google Drive.")

26.     At the relevant time, Facebook was the Washington Chapter's primary platform of communicating with its membership.

27.     At the relevant time, Twitter was the Washington Chapter's secondary platform of communicating with its membership.

28.     TST's Washington Chapter has a Google account to generally facilitate its organizational purposes by creating and storing documents.

29.     In October of 2014, the Washington Chapter business page was created exclusively for the benefit of TST in its efforts to disseminate information for what was then the Seattle Chapter.  See id., in its current state, available at https://www.facebook.com/thesatanictemplewashington.  See also **Exhibit 2** (Chapter page history, updated since original complaint).

30.     Over the next several years, the Washington Chapter has grown the Facebook page to an audience exceeding 17,000 followers.  Ibid.

31.     In January of 2015, the Washington Chapter created a Twitter account for the organization.  See id. available at https://twitter.com/TST_Washington.  Currently, the Twitter account has an audience of about 4,000 followers.  Id.

32.     In September of 2018, the Washington Chapter created a secondary Facebook page, named "TST WA Allies," to facilitate communications with individuals who were interested in TST but did not want to identify as a member.  Since the original complaint, Defendants renamed the

1  Allies  page ~~appears to have been deleted.   See id., in its current state, available at~~

2  ~~https://www.facebook.com/queersatanicmemes; see also~~ **Exhibit 3** ~~(deleted page)~~ to "Evergreen

3  Memes for Queer Satanic Fiends." ~~.~~  **Exhibit 3**; see also https://www.facebook.com/queersatanic

4  (Last visited April 26, 2021).

5      33.    Until the hacking, both Facebook pages were maintained and controlled exclusively

6  by administrators approved by TST.

7      34.    Administrators are given a written Code of Conduct, which instruct requirements for

8  permissible activity on behalf of TST.  In relevant part, the instructions pertaining to online conduct

9  follow:

10     Public statements & interactions with media

11     All public actions and statements must be approved and vetted by the TST National Council

12        and the TST Executive Council. If a member is approached by media or asked for any

13        official statement regarding an action or belief relating to TST all members must refrain

14        from comment and refer the inquiring party to the Chapter Head.

15     . . .

16     Confidentiality

17     Members should respect confidentiality, including documentation. Internal information

18        should not be shared beyond members of the local chapter. Members' names, contact

19        information, and meeting locations are also considered confidential. If you are ever unsure,

20        don't share.

21     . . .

22     Copyright

23     Material produced by The Satanic Temple is the property of the organization. Consent for

24        use of logo, name or other identity materials may be approved for use for certain projects.

25        You may not use any official materials without prior approval. Approval may also be

26        withdrawn at any time.

~~FIRST~~ SECOND AMENDED COMPLAINT - 7

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1   . . .

2   Online code of conduct

3   As a member of TST, your interactions with others, both online and off, will be held to the

4   TST Code of Conduct. As an individual, we support your freedom of speech and freedom

5   to hold your opinions. Members' behavior, however, reflects on the organization as whole

6   and also builds the internal culture of TST. Therefore, we have a code of conduct specifically

7   for the internet.

8   Respect the diversity of opinions you find online and respond in a courteous manner. All

9   TST members' online conduct must be free of harassment, stalking, threats, abuse, insults,

10   defamation, or humiliation. This includes, but is not limited to, demeaning comments of an

11   ethnic, religious, sexist, or racist nature; and unwanted sexual advances or intimidation by

12   email or online. Such behavior will result in termination from the organization.

13   As a member of TST, always assume that what you publish on the web is permanent.

14   Anyone can easily print out a comment or save it as a screenshot. Remember, that TST is

15   often engaged in legal suits and exchanges online, or via text have the right to be exposed in

16   the case of a deposition. Think before you hit "send".

17   Using TST in connection with surveys, contests, pyramid schemes, chain letters, junk email,

18   spamming or any duplication or unsolicited messages is prohibited and will result

19   termination from the organization.

20   Any public disagreements between TST members should be taken to a private conversation.

21   If mediation is needed, it will be provided.

22   See form agreement, available as **Exhibit 4**.  Sullivan has the only known copies of the agreement

23   which was signed by Defendants.

24   35.      The above written instructions form the contours of administrators' authorization to

25   access TST's social media accounts.

26   36.      Defendants, each, were entrusted with administrative rights to the above-described

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1  social media accounts, subject to the requirements set forth in the written instructions.

2       37.     Until the hacking, Defendant Sullivan had exclusive access of the original copies of

3  each Defendants' signature, acknowledging and agreeing to be bound by the above terms in return

4  for access to the social media accounts.

5       38.     On information and belief, Sullivan still has exclusive access to these documents,

6  among other highly sensitive materials including membership listings, internal policies and

7  procedures, and meeting notes.

8       39.     Defendants were each well aware of the Code of Conduct because it served as a

9  source of friction leading up to the events giving rise to this litigation.  For example, on March 2,

10  2020, Johnson shared the following post on the Allies page outside of his authority:



11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26       40.     The ensuing deletion and reiteration of the expectation that Johnson adhere to the

~~FIRST~~ SECOND AMENDED COMPLAINT - 9

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1    Code of Conduct as a condition of continued social media access would serve as foreshadowing for

2    the misappropriation of the Allies page.

3         41.      Between March 2 and March 12, TST's Washington leadership became increasingly

4    frustrated with Defendants' organizational failures and inflammation of interpersonal conflicts

5    within the advisory council.

6         42.      "Organizational failures," as used above, particularly included:

7              (1) Repeatedly operating TST's social media to endorse leftist politics as opposed

8                  to Satanism, despite repeated reminders that this was unacceptable;

9              (2) Failing to attend a particular meeting to address the above issue; and

10             (3) Failing to initiate, conceive, or execute any publicity for the Washington

11                 Chapter's Prayer for Plurality event, which was a matter of organizational

12                 significance.

13        43.      On March 12, 2020, TST's Washington leadership removed Defendants from their

14    advisory positions.

15        44.      Defendants' positions on the advisory council entailed the authorization to manage

16    the Chapter's social media activity.  By removing Defendants from their advisory positions, the

17    Washington Chapter leadership revoked Defendants' authorization to manage the Chapter's social

18    media activity and revoked Defendants' authorization to serve as custodians of records.

19        45.      At some point between March 12 and March 14, 2020, Defendants entered into an

20    unlawful agreement to misappropriate and shut down substantially all the internet presence of TST's

21    Washington Chapter toward the twin goals of forming a competitor organization and harming TST.

22        45.

23

24

25

26

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1      46.     On March 14, 2020, Meeham exceeded authorization for the Allies page by

2  removing all TST-approved administrators except the other named Defendants, changing the name

3  to "Evergreen Memes for Queer Satanic Friends," and posting the following manifesto:



> **Evergreen Memes for Queer Satanic Fiends**
> March 14 at 7:59 PM · 🌐
>
> \*\*This page is no longer affiliated with The Satanic Temple.\*\*
>
> Ave Satanas!
>
> I was recently notified that talking about transphobes and ableism was considered not to be relevant to The Satanic Temple's "International Council" in Salem or to the local chapter in Washington State.
>
> So by talking about leftist politics like how "The struggle for justice is an ongoing and necessary pursuit that should prevail over laws and institutions," this page wasn't being Satanic.
>
> Specifically:
> "(IC is aware of how badly the allies page is fucking up), isn't worried about being labelled a criminal (and endorses negative and unrelated leftist politics on TST-affiliated social media). TST WA Allies should be about Satanism. On March 4th, this was told to you and ADJ, but just as recently as two days ago, there is a post about ableism. (this as a post from an individual is great - as TST WA not acceptable)."
>
> So to be clear, this page thinks ableism, misogyny, and racism are superstitions, fascists are bad, transphobes can shut the fuck up, and the only good bootlickers do it for a kink and not because they love making excuses for cops killing people.
>
> No gods, no masters.
>
> Be gay, do crime, hail Satan

16      47.     Meeham, in conjunction with the other named Defendants, then began posting

17  material in violation of the Code of Conduct and in disregard of the revocation of authority entailed

18  in being removed from the position on the advisory council.

19      48.     Sullivan explicitly recognized that Defendants had no authorization to access the

20  Allies page.  On March 15, 2020, Sullivan publicly stated that he was no longer affiliated with TST.

21  **Exhibit 5**.  A commentator suggested "Time to found your own," to which Sullivan responded

22  "three steps ahead of you" and "we have a meme page here that we stole from TST: Evergreen

23  Memes for Queer Satanic Friends."  **Id.** at pp. 3-4.

24      49.     Following Meeham's usurpation of the Allies page, the Washington Chapterhead

25  removed all defendants from administrative access privileges to the remaining social media

26  accounts.  More specifically, the Chapterhead removed all administrative privileges of Johnson,

~~FIRST~~ SECOND AMENDED COMPLAINT - 11

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1    Fishbaugh, Meeham, and Sullivan to the Facebook Chapter account and the Twitter and Google

2    accounts referenced herein.

3        50.    On or around March 18, 2020, Johnson hacked the TST's Twitter account, removed

4    all of TST's approved administrators, replaced the approved administrators with his co-Defendants,

5    followed a number of extremist groups, and changed the description from "Washington State

6    Chapter of the Satanic Temple" to "Satan stands as the ultimate icon for selfless revolt.  We oppose

7    irrational, unjust hierarchies like white supremacy, patriarchy, ableism, & cishet normality."

8    Johnson took these actions despite having a subjective awareness that he no longer had authorization

9    to use TST's Twitter account.

10       51.    On March 20, 2020, despite having a subjective awareness that he no longer had

11   authorization to use TST's Facebook Chapter page, Johnson took control of the Chapter page by

12   removing all TST-approved administrators, modifying the cover page without approval, and posting

13   a three-page manifesto.  The manifesto, as it looked as of the original complaint, is attached and

14   incorporated as **Exhibit 6** (the archive reflects Central time).  Originally, the manifesto was posted

15   with the original trade dress of TST.

16       52.    Broadly, the manifesto levied false claims that TST leadership is cozy with the alt-

17   right, are white supremacists, are generally insufficiently leftist for Johnson's preference, and does

18   not conform to Johnson's impression of Satanism.  Posting the manifesto exceeded Johnson's grant

19   of authority as defined in the Code of Conduct, disregarded the revocation of authority entailed in

20   being removed from the position on the advisory council, and disregarded the explicit revocation of

21   authority entailed in having his administrative access to the Chapter page removed.

22       53.    On March 20 at 11:29 pm, the Chapter's media liaison emailed Johnson a cease and

23   desist instruction, stating "I'd like you to return the Facebook page back to us please."  **Exhibit 7**

24       54.    Johnson ignored the email and did not return the Facebook page to TST.

25       55.    Instead, Johnson spent the next couple of days posting links and commentary from

26   the Chapter page, all with the general, and false, theme that TST leaders are incompetent fascists.

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1   See **Exhibit 8** (posts and commentary in excess of authorization).  The links and commentary all

2   exceeded Johnson's grant of authority as defined in the Code of Conduct, disregarded the revocation

3   of authority entailed in being removed from the position on the advisory council, disregarded the

4   explicit revocation of authority entailed in having his administrative access to the Chapter page

5   removed, and disregarded the explicit cease and desist demand referenced in ¶ 53

6   56.   On March 20 at 11:36 pm, Fishbaugh attempted to change the password to the

7   Chapter's Google-based email account by changing the recovery email and changing the phone

8   number.  This ignored the revocation of authority entailed in being removed from the position on

9   the advisory council and disregarded the explicit withdrawal of authority entailed in removing her

10  administrative access.

11  57.   On March 22 at 3:08 pm, Johnson modified the name of the Chapter page from "The

12  Satanic Temple Washington" to "Satanic Washington State – Archived Temple Chapter" and

13  modified the profile picture to replace TST-specific iconography with "antifa" symbolism.  These

14  modifications disregarded the revocation of authority entailed in being removed from the position

15  on the advisory council, disregarded the explicit revocation of authorization entailed in having his

16  social media administrative access revoked, and disregarded the explicit cease and desist demands

17  referenced in ¶ 53.

18  58.   By operation of his removal as a member of the advisory council, Sullivan's control

19  over original signed copies of membership agreements, cloud-based trade secret documentation,

20  became unauthorized.

21  59.   Of importance to this action, Sullivan had, and continues to have, exclusive control

22  over membership enrollment and application documents and background check documents for

23  prospective new members (to exclude felons from membership), both of which are paper

24  documents.  Sullivan also had, and continues to have, an electronic database of the membership, as

25  well as their contact information.

26  60.   TST opposes the use or threat of violence as a mechanism for control.

~~FIRST~~ SECOND AMENDED COMPLAINT - 13

No. 20-cv-509

1    61.    The    Chapter    page    maintains    its    original    URL:

2    https://www.facebook.com/TheSatanicTempleWashington/.

3    62.    As of the original complaint, TST's Washington Chapter lost between 20 and 30

4    members because of Johnson's false claims published to the Chapter page.  The precise number

5    since then is currently unknown to TST.

6    63.    Facebook refused to correct the matter, mislabeling the issue as a "Page admin

7    issue" to the exclusion of "infringements of your legal rights."

8    64.    One week prior to the original complaint, this time through counsel, TST

9    reiterated the legal theories at play to Facebook and to Johnson.  More particularly, On March 23,

10    2020, Matthew Kezhaya (TST's outside general counsel) issued a demand letter to Johnson which

11    threatened this very litigation unless he "permanently relinquish[ed] full control" of the Chapter

12    page "by 4:00 PM Central Time on March 24, 2020."  **Exhibit 9**

13    65.    Johnson ignored the letter and, together with his co-Defendants, continued to

14    maintain exclusive control over the Chapter page.  In so doing, Johnson and his co-Defendants

15    disregarded the revocation of authority entailed in being removed from their positions on the

16    advisory council, disregarded the explicit revocation of authorization entailed in having their social

17    media administrative access revoked, and disregarded the explicit cease and desist demands

18    referenced in ¶¶ 53 and 64.

19    66.    Facebook did not respond and did not return control of the Chapter page until after

20    the original complaint.  See Exhibit 2.

21    67.    Defendants simply ignored all communications, from counsel and TST alike.

22    68.    TST was able to recover the Twitter account and the email account through

23    Twitter and Google, respectively.

24    **III.    CAUSES OF ACTION**

25    **Count 1:**

26    **CFAA violation**

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1       69.     TST re-alleges and incorporates by reference the foregoing allegations.

2       70.     The CFAA provides a civil cause of action when a Defendant knowingly accesses a

3 "protected computer" by "exceeding authorized access," which causes a cumulative "loss" of at

4 least $5,000.  See 18 U.S.C. § 1030(g), (c)(4)(A)(i)(I).  Or, in the case of an attempted violation, the

5 successful violation would cause at least $5,000 in "loss."  Ibid.

6       71.     A "computer," is broadly defined as any device for processing or storing data.   18

7 U.S.C. § 1030(e)(1).

8       72.     A "protected computer" is a "computer" which is "used in or affecting interstate or

9 foreign commerce or communication."  18 U.S.C. § 1030(e)(2)(B).

10      73.     Websites have been recognized as a "protected computer" within the meaning of the

11 CFAA.  See United States v. Drew, 259 F.R.D. 449, 457-58 (C.D. Cal. 2009).

12      74.     A defendant "exceeds authorized access" by accessing a computer "with

13 authorization and to use such access to obtain or alter information in the computer that the accesser

14 is not entitled so to obtain or alter."  18 U.S.C. § 1030(e)(6).

15      75.     A "loss" is "any reasonable cost to any victim, including the cost of responding to

16 an offense, conducting a damage assessment, and restoring the data, program, system, or

17 information to its condition prior to the offense, and any revenue lost, cost incurred, or other

18 consequential damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).

19      76.     As described above, Defendants wrongfully and intentionally by exceeding their

20

21      **Pete Reeves** I'm confused as to why a TST Facebook page is being

22      used to attack TST... Shouldn't that be left to the Evangelical Christians?

23      Like · Reply · 1w    👍 2

24

25      **Pete Reeves** I'm confused as to why a TST Facebook page is being used to attack TST... Shouldn't that be left to the Evangelical Christians?

26      Saturday, March 21, 2020 at 1:59 PM

Like · Reply · 1w    👍 2

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1  authorized access, perpetrated fraud upon TST and its membership, as well as any who happened

2  upon the offending posts, by posting under the misappropriated identity of TST.   Perfectly

3  encapsulating the issue, one commenter expressed confusion on March 21, stating:

4  See https://www.facebook.com/TheSatanicTempleWashington/posts/2908426992513671

5         77.     There is a cognizable dollar value to social media accounts.  Preliminary estimates

6  of the "loss" related to the misappropriation of the Chapter page is $33,689.70, plus $1,037.52 for

7  the Allies page.  The Twitter page, if successfully misappropriated, would have lost $8,246.70.  The

8  aggregate sum being $42,973.92—well in excess of the $5,000 jurisdictional requirement.

9         78.     Defendants were aware that the social media accounts had an economic value to

10  TST.  The social media accounts were the primary means for TST to communicate with the general

11  public and TST's supporters, and that those communications help to foster the kind of relationship

12  that which results in charitable donations to support TST's organizational purposes.  By depriving

13  TST of its social media accounts, Defendants intended to diminish those donations and divert

14  donations to their competitor organization, provisionally named "The Satanic Temple 2: Electric

15  Boogaloo."  Exhibit 53 at p. 4.

16         79.     Further compounding the losses are TST's attorney's fees for investigating this

17  matter, entering futile demands for corrective action: both of Facebook and from Defendants, and

18  drafting this complaint.  TST will continue to incur losses in the costs and fees related to this lawsuit.

19  TST's costs and attorney's fees well exceed the $6,000 incurred in researching and drafting the

20  original complaint.

21         80.     TST has incurred, and continues to incur, reputation losses from the

22  misappropriation of its Facebook pages.  These reputation losses are quantifiable in monetary terms,

23  but are irreparable by money damages alone.

24         81.     Based on the foregoing, TST is entitled to injunctive relief in the form of a permanent

25  injunction enjoining Defendants from accessing any of TST's "protected computers" (i.e. any

26  internet-based media) under threat of contempt, economic damages of at least $48,973.92, and costs

FIRST SECOND AMENDED COMPLAINT - 16

No. 20-cv-509

1    and attorney's fees to be computed after entry of the decree.

2                                    **Count 2:**

3                              **Tortious interference**

4         82.    TST re-alleges and incorporates by reference the foregoing allegations.

5         83.    TST maintains ongoing business relationships with Facebook, importantly to

6    include the Chapter page and Allies page.

7         84.    There is an economic benefit for TST in having a ubiquitous platform to interact

8    with members and prospective members in the convenience of their homes and wherever they carry

9    their smartphones.  Namely, with increased awareness comes increased membership and donations

10   which create a positive feedback loop.

11        85.    At the relevant time, Defendants had subjective knowledge of the business

12   relationship between Facebook and TST.  Facebook is well-known as a separate company from the

13   organizations that have profiles on its proprietary network.

14        86.    Defendants intentionally and with an improper motive acted to sever the Washington

15   Chapter's relationships with Facebook by misappropriating the two websites for the twin goals of

16   harming the Washington Chapter, and TST at large, and creating a competitor organization.

17        87.    Defendants were aware that the social media accounts had an economic value to

18   TST.  The social media accounts were the primary means for TST to communicate with the general

19   public and TST's supporters, and Defendants personally used those social media accounts for the

20   purpose of assisting TST in creating the and those kind of communications that help to foster the

21   kind of relationship that which results in charitable donations to support TST's organizational

22   purposes.  By depriving TST of its social media accounts, Defendants intended to diminish those

23   donations and divert donations to their competitor organization, provisionally named "The Satanic

24   Temple 2: Electric Boogaloo."  Exhibit 35 at p. 4.

25        88.    Defendants' interference with TST's social media presence was wrongful beyond

26   the interference itself.  Defendants abused TST's social media presence as a channel to publish

1  derogatory messages directly to TST's intended audience and to falsely suggest that the Washington

2  Chapter was replaced by Defendants' competitor organization.  The contemplated and intentional

3  purpose of so doing was to diminish TST's membership and donation base.

4       89.    As a direct and proximate result of Defendants' wrongful conduct, TST has suffered

5  substantial economic injury and loss of business opportunity and has incurred attorney's fees and

6  other costs in attempting to remedy the situation.

7       90.    Based on the foregoing, TST is entitled to injunctive relief in the form of a permanent

8  injunction enjoining Defendants from accessing any of TST's "protected computers" under threat

9  of contempt, ~~punitive damages,~~ and costs and attorney's fees to be computed after entry of the

10  decree.

11  **Count 3~~4~~:**

12  **Trespass to chattels**

13       91.    TST re-alleges and incorporates by reference the foregoing allegations.

14       92.    Trespass to chattels is the intentional interference with a party's personal property

15  without justification that deprives the owner of possession or use.  G&G Closed Cir. Events, LLC

16  v. Single, LLC, No. C18-1295JLR, 2020 WL 5815050, at *4 (W.D. Wash. Sept. 30, 2020) (citing

17  Restatement (Second) of Torts § 217).

18       93.    The first chattel at issue is TST's possessory interest in Facebook's computer

19  network which manifested through the internet as the Chapter page and the Allies page.

20       94.    Defendants intentionally dispossessed TST of the Chapter page and the Allies page

21  by logging in to Facebook's computer network and replacing Defendants for TST's authorized

22  administrators of the pages.

23       95.    Defendants had no justification to remove all of TST's approved administrators or

24  to usurp the pages at issue.  Their authorization to use the pages were revoked by virtue of the

25  removal of their positions on the advisory council and was explicitly revoked as to the Chapter page

26  by the revocation of their administrative access.

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

96.     Although Washington has not squarely addressed the question, California courts have resolved that dispossession of access to a computer system is an actionable trespass to chattels. See Synopsys, Inc. v. Ubiquiti Networks, Inc., 313 F. Supp. 3d 1056, 1080 (N.D. Cal. 2018) and Intel Corp. v. Hamidi, 30 Cal. 4th 1342, 1351, 71 P.3d 296, 303 (2003); see also JLM Couture, Inc. v. Gutman, No. 20 CV 10575-LTS-SLC, 2021 WL 827749 (S.D.N.Y. Mar. 4, 2021) (granting a preliminary injunction to restrain a former employee's use of an employer's social media accounts post-termination–albeit while explicitly declining to address the ultimate trespass to chattel and conversion claims, id. at *19).

97.     The second chattel at issue is TST's membership-related documents, whether in physical or electronic format.

98.     Defendants, particularly Sullivan, intentionally dispossessed TST of these membership-related documents by maintaining exclusive control over the documents despite the termination of Sullivan's role as custodian of records.

98.

99.     Based on the foregoing, TST is entitled to injunctive relief in the form of a permanent injunction enjoining Defendants from accessing any of TST's "protected computers" under threat of contempt, an order to return TST's membership related documents and destroy any copies thereof, an order for punitive damages, and costs and attorney's fees to be computed after entry of the decree.

## Count 45:

## Conversion

100.     TST re-alleges and incorporates by reference the foregoing allegations.

101.     Conversion is the act of "willfully interfering with any chattel, without lawful justification, whereby any person entitled thereto is deprived of the possession of it. In re Mastro, No. 09-16841-MLB, 2017 WL 2889659, at *13 (Bankr. W.D. Wash. July 6, 2017) (citing Public Util. Dist. No. 1 v. Wash. Public Power Supply Sys., 104 Wn.2d 353, 378 (Wash. 1985)).

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1       102.    "Willful" means "intentional" but not necessarily "malicious."  <u>Id.</u> (citing <u>Schilling</u>

2  <u>v. Radio Holdings, Inc.</u>, 136 Wn.2d 152, 159–60 (Wash. 1998)) (citations omitted).

3       103.    Malicious intent is not an element of conversion and good faith is not a defense.  <u>Id.</u>

4  (citing <u>Brown v. Brown</u>, 157 Wn. App. 803, 818, (2010)).

5       104.    Trespass to chattels differs from conversion as a matter of degree.  See <u>Intel Corp.</u>

6  <u>v. Hamidi</u>, 30 Cal. 4th 1342, 1350, 71 P.3d 296, 302 (2003) ("Dubbed by Prosser the 'little brother

7  of conversion,' the tort of trespass to chattels allows recovery for interferences with possession of

8  personal property 'not sufficiently important to be classed as conversion, and so to compel the

9  defendant to pay the full value of the thing with which he has interfered'); see also <u>Damiano v. Lind</u>,

10  163 Wash. App. 1017 at *5 (2011) ("Trespass to chattels is something less than a conversion.")

11  (unpublished opinion, but the Court "may consider unpublished state decisions, even though such

12  opinions have no precedential value." <u>Emps. Ins. of Wausau v. Granite State Ins. Co.</u>, 330 F.3d

13  1214, 1220 (9th Cir. 2003)).

14      <u>105.</u>    The same chattels are at issue in this Conversion claim as the Trespass to Chattels

15  claim.  Both <u>claims</u> are included because Washington courts tend to discuss ~~both~~ <u>the two claims</u> in

16  tandem.  E.g. <u>Damiano</u>, above; see also <u>Sexton v. Brown</u>, 147 Wash. App. 1005 (2008).

17                                               **<u>Count 5:</u>**

18                        **<u>Dilution under 15 USC § 1125(c)</u>**

19      106.    TST re-alleges and incorporates by reference the foregoing allegations.

20      107.    15 USC § 1125(c) provides for trademark remedies when one or more defendants

21  uses a famous or distinctive mark or trade name in commerce which is likely to cause dilution by

22  blurring or dilution by tarnishment of the famous mark.  See 15 USC § 1125(c)(1) and (5).

23      108.    A mark is "famous" if it is widely recognized by the general consuming public.  15

24  USC § 1125(c)(2)(A).

25      109.    "The Satanic Temple" is a famous mark because it is commonly referenced in the

26  general media.  For recent references, see e.g. Penny Lane, *Magnolia Films*, "Hail Satan?" (2019);

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1    Cameron Sheppard, *WNPA News Service*, "Amid Pious Protesters, Satanists Conduct a Ritual on

2    the Capitol Steps" (March 6, 2020) (reposted by *The Chronicle*, available at

3    https://www.chronline.com/stories/amid-pious-protesters-satanists-conduct-a-ritual-on-the-capitol-

4    steps,4905) (last visited April 23, 2021); David S. Cohen, Rolling Stone, "How the Satanic Temple

5    Could Bring Abortion Rights to the Supreme Court" (August 24, 2020) (available at

6    https://www.rollingstone.com/culture/culture-features/satanic-temple-abortion-rights-supreme-

7    court-1048833/) (last visited April 23, 2021); Erik Larson, *Bloomberg News*, "Satanic Temple's

8    lawyers try Christian-right tactics" (March 22, 2021) (reposted by the Seattle Times, available at

9    https://www.seattletimes.com/nation-world/satanic-temples-lawyers-try-christian-right-tactics/)

10   (last visited April 23, 2021).

11       110.    Dilution by blurring is an association arising from the similarity between a mark or

12   trade name and a famous mark which impairs the distinctiveness of the famous mark.  15 USC §

13   1125(c)(2)(B).

14       111.    Defendants' competitor organization, which ~~was~~ was provisionally entitled "The

15   Satanic Temple 2: Electric Boogaloo" and ~~which was ultimately named~~ "Satanic Washington –

16   Archived Temple Chapter" had a likelihood of impairing the distinctiveness of TST as a famous

17   mark.  To-wit:

18           (1) "The Satanic Temple 2: Electric Boogaloo" directly copies "The Satanic

19               Temple;" and "Satanic Washington – **Archived Temple Chapter**" (emphasis

20               added) directly ~~references~~suggests that ~~T~~the ~~Satanic Temple's~~ Washington

21               Chapter has been replaced by Defendants' competitor organization.

22           (2) TST has an inherently distinctive mark because ~~–~~there is only one "The Satanic

23               Temple," ~~and~~Plaintiff, which ~~through years of effort,~~ has acquired

24               distinctiveness as a mark through years of effort.

25           (3) There is only one "The Satanic Temple" because TST jealously guards its

26               intellectual property rights ~~— as it must, to avoid a laches defense for any~~

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1    ~~particular copycat.~~.

2    (4) As addressed in ¶ 109, above, there is wide public recognition of The Satanic

3    Temple.

4    (5) Defendants intended to create an association between their competitor

5    organization with TST by stealing TST's ~~Facebook~~Facebook pages, falsely

6    suggesting that TST's Washington Chapter was no more ("Archived"), and

7    redirecting all internet traffic away from TST's Washington Chapter and toward

8    Defendants' competitor organization.

9    (6) There is an actual association between Defendants' mark and TST because

10   Defendants were former TST associates, who intended to create a competitor

11   organization by using TST's own intellectual property (both the name and the

12   ~~website~~Facebook pages), and advertising their competitor organization ~~.~~through

13   the Facebook pages.

14   Compare 15 USC § 1125(c)(2)(B)(i)-(vi).

15       112.    Alternatively, dilution by tarnishment is an association arising from the similarity

16   between a mark and a famous mark that harms the reputation of the famous mark.  15 USC §

17   1125(c)(2)(C).

18       113.    TST's membership base tends to be repelled by organizations which promote

19   ableism, misogyny, racism, fascism, transphobia, and the endorsement of police brutality.

20       114.    Defendants' competitor organization broadcasted statements, directly to current and

21   potential members of TST through TST's Facebook pages, that TST promotes ableism, misogyny,

22   racism, fascism, transphobia, and the endorsement of police brutality.  Defendants broadcasted these

23   statements for the purpose of diverting away from TST both current members and interested

24   potential members of the public ~~away from TST~~.

25       115.    Defendants' competitor organization ~~.~~also publicly affiliated itself (and TST, to an

26   uninformed public) with politically extremist organizations by having the Twitter page follow

---

| ~~FIRST~~ SECOND AMENDED COMPLAINT - 22 | Lybeck Pedreira & Justus PLLC |
| No. 20-cv-509 | Chase Bank Building |
| | 7900 SE 28th Street, Fifth Floor |
| | Mercer Island, WA  98040 |
| | 206-230-4255   Fax 206-230-7791 |

1    various politically extremist organizations (¶ 50, above) and by modifying the Chapter page's profile

2    picture to suggest that TST is associated with a~~Antifa~~ (¶ 57 above).

3            116.    These actions harmed ~~the reputation of~~ TST–which is a~~ religious organization–by

4    suggesting that TST is not a religious organization, but is instead an extremist political organization~~;~~

5    ~~and an *extremist* political organization, at that~~.  This jeopardizes TST's tax exempt status as a

6    "church;" jeopardizes the tax exempt status of donations to TST; jeopardizes the civil rights of

7    TST's membership base ("religion" is a protected class under Title VII, but "politics" is not); and

8    diverts ~~away~~ TST's membership base, which is interested in joining a religion and not an extremist

9    political group.

10           117.  Defendants' competitor group is also selling merchandise which features

11   Defendants' derivative marks and which Defendants are advertising on TST's Allies page.  See

12   generally https://www.redbubble.com/people/QueerSatanic/shop (last visited April 26, 2012).

13           ~~105.~~    Based upon the foregoing, TST is entitled to recover monetary damages up to three

14   times the sum of: (1) Defendants' profits; (2) TST's reputational damages; and (3) the costs of this~~e~~

15   action (15 USC § 1125(c)(5), referencing 15 USC § 1117(a) and (b)); an order to destroy all means

16   of making Defendants' counterfeit ~~marks~~materials (id., referencing 15 USC § 1118); and orders to

17   seize ~~of~~ any goods bearing Defendants' counterfeit marks, any records related to the sale thereof,

18   and other such appropriate orders to prevent the violation of TST's rights as a registered mark holder.

19   (id., referencing 15 USC § 1116).

20           118.

21                        IV.   **PRAYER FOR RELIEF**

22           WHEREFORE, in addition to all other relief to which the Court finds TST entitled,

23   TST prays for orders as follows:

24           (1)    Defendants shall, jointly and severally, immediately return full control to counsel for

25   Plaintiff under threat of contempt: control of the Allies page, all TST materials, whether in paper or

26   electronic format, including without limitation: all signed agreements, all membership listings, all

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1    internal policies and procedures, all governance documentation, any branding materials, and any

2    other document created by or for the benefit of TST.

3          (2)     Defendants shall, jointly and severally, permanently refrain from accessing any

4    administrative function of any internet-based medium, including without limitation any social media

5    accounts, email accounts, or document storage accounts, created by or for the benefit of TST.

6          (3)     Defendants shall, jointly and severally, pay economic to Plaintiff in the amount of

7    $42,973.92 (the sum value of the social media accounts), or such other sum of the numbers identified

8    in ¶ 118, above.

9          (4)     Defendants shall, jointly and severally, pay statutory damages to Plaintiff in the

10   amount of $100,000, or such other amount to be determined at trial.

11         (5)     Defendants shall, jointly and severally, pay punitive damages to Plaintiff in an

12   amount to be determined at trial.

13         (6)(5)   Defendants shall, jointly and severally, pay costs and attorney's fees to Plaintiff in

14   an amount to be determined after trial.

15         (7)(6)   Defendants shall, jointly and severally, pay prejudgment and postjudgment interest

16   until paid in full.

17

18             Respectfully submitted this ——26th day of April, 2021.

19                               LYBECK PEDREIRA & JUSTUS, PLLC

20
                                 By: /s/ Benjamin Justus
21                               Benjamin Justus (#38855)
                                 Attorneys for Plaintiff
22                               Chase Bank Building
                                 7900 SE 28th St., Fifth Floor
23                               Mercer Island, WA 98040
                                 206.230.4255 /ph  206.230.7791 /fax
24                               ben@lpjustus.com / email Justus

25
                                 And: /s/ Matthew A. Kezhaya
26                               Matthew A. Kezhaya (AR#2014161), admitted pro hac vice

FIRST SECOND AMENDED COMPLAINT - 24                    Lybeck Pedreira & Justus PLLC
                                                          Chase Bank Building
No. 20-cv-509                                          7900 SE 28th Street, Fifth Floor
                                                          Mercer Island, WA  98040
                                                       206-230-4255   Fax 206-230-7791

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Attorney for Plaintiff
Kezhaya Law PLC
1202 NE McClain Rd
Bentonville, AR 72712
479.431.6112 /ph  479.282.2892 /fax
matt@kezhaya.law / email Kezhaya

~~FIRST~~ SECOND AMENDED COMPLAINT - 25

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791