Hon. Richard A. Jones

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

United Federation of Churches, LLC (dba
"The Satanic Temple")

     Plaintiff,

  v.

David Alan Johnson (AKA "ADJ"),
Leah Fishbaugh, Mickey Meeham, and
Nathan Sullivan,

     Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No. 2:20-cv-00509-RAJ

SECOND AMENDED
COMPLAINT FOR DAMAGES
AND INJUNCTIVE RELIEF

In support of its claims, Plaintiff United Federation of Churches (dba "The Satanic Temple") (abbreviated "**TST**") alleges as follows:

## I.  **PREAMBLE**

1.  This case is about two hacked social media accounts and failed attempts at hacking a different social media account and an email account.  TST is suing Defendants for misappropriating two of TST's Facebook business pages by replacing all approved administrators with themselves.  Shortly after the misappropriation, Johnson started posting content critical of TST from TST's own webpage while retaining the original branding.  Later, Johnson modified the name of the website, ostensibly to create a competitor organization, while appending the suffix "Archive Temple Chapter."

2.  Since entry of the original complaint, the Court entered an order dismissing parts

SECOND AMENDED COMPLAINT - 1

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1   of this case without prejudice and parts with prejudice. Dkt. # 20.  The parts dismissed without

2   prejudice are the subject of the amendments in this complaint.

3             (1) As to Count 1 (CFAA), the facts are further developed to state when the

4                 revocation occurred, how that revocation was communicated, and what

5                 actions Defendants undertook afterwards.  Compare Dkt. # 20 at pp. 7-9.

6             (2) As to former Count 3 (tortious interference with business expectancy), the

7                 facts are further developed to state the factual underpinnings for how

8                 Defendants knew about the Facebook pages' pecuniary value and how the

9                 interference was wrongful beyond the interference itself.  Compare Dkt. # 20

10                at p. 15.  This count is renumbered to Count 2 in light of the order of dismissal

11                with prejudice of former Count 2 (Cyberpiracy).

12            (3) As to former Count 4 (Washington Consumer Protection Act), that claim is

13                replaced with a trespass to chattel claim (Count 3) and a conversion claim

14                (Count 4).  Compare Dkt. # 20 at pp. 16-17.

15      3.    The Cyberpiracy and Defamation counts have been removed from this First

16  Amended Complaint in compliance with the orders of dismissal with prejudice.  To the extent

17  the Court may grant Plaintiff's now-pending Motion for Reconsideration, Dkt. # 21, Plaintiff

18  reserves the right to file a second amended complaint to reassert whichever claims the order of

19  reconsideration may revive.

20      4.    Since the filing of the original complaint, the rightful Washington Chapter

21  leadership has reclaimed the Chapter page through Facebook.  This moots the need of injunctive

22  relief to return the Chapter website to its rightful owners.  This controversy is still live, however,

23  because TST still needs: injunctive relief for Defendants to return the Allies page, to preclude

24  Defendants from future unauthorized access of TST's electronic materials, to return TST's

25  wrongfully detained membership documents, and as otherwise appropriate to prevent the creation

26  of other counterfeit materials; money damages; and attorney's fees and costs of this action.

SECOND AMENDED COMPLAINT - 2

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1  ## II.      JURISDICTION AND VENUE

2      5.      This Court has original jurisdiction over the federal claim arising under the CFAA.

3  28 U.S.C. § 1331 (federal question); 18 U.S.C. § 1030(g) (CFAA).  The Court has supplemental

4  jurisdiction over the state common law claims arising from the same facts. 28 U.S.C. § 1367.

5      6.      The Court can properly exercise general personal jurisdiction over each Defendant

6  because they live in Seattle, Washington which is in this District.  The Court can properly exercise

7  specific personal jurisdiction over each Defendant because their actions took place in Seattle,

8  Washington which is in this District.

9      7.      Venue properly lies with this Court because the hacking took place in Seattle,

10 Washington.  28 U.S.C. § 1391.

11  ## III.      PARTIES

12     8.      TST is a religious organization.   See generally "About us," available at

13 https://www.thesatanictemple.org/about-us.html

14     9.      TST subscribes and advances seven fundamental tenets:

15         (1) One should strive to act with compassion and empathy toward all creatures
            in accordance with reason.

16
17         (2) The struggle for justice is an ongoing and necessary pursuit that should
            prevail over laws and institutions.

18         (3) One's body is inviolable, subject to one's own will alone.

19         (4) The freedoms of others should be respected, including the freedom to
            offend. To willfully and unjustly encroach upon the freedoms of another is
20          to forgo one's own.

21         (5) Beliefs should conform to one's best scientific understanding of the world.
            One should take care never to distort scientific facts to fit one's beliefs.
22
23         (6) People are fallible. If one makes a mistake, one should do one's best to
            rectify it and resolve any harm that might have been caused.

24         (7) Every tenet is a guiding principle designed to inspire nobility in action and
            thought. The spirit of compassion, wisdom, and justice should always
25          prevail over the written or spoken word.

26

SECOND AMENDED COMPLAINT - 3

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1 See "Our tenets" available at https://www.thesatanictemple.org/our-tenets.html.

2  10. TST's mission is to "encourage benevolence and empathy among all people, reject tyrannical authority, advocate practical common sense and justice, and be directed by the human conscience to undertake noble pursuits guided by the individual will."  See "Our mission" available at https://www.thesatanictemple.org/our-mission.html.

6  11. TST was the subject of the recent documentary "Hail Satan?" (2019), directed by Penny Lane and distributed by Magnolia Pictures.

8  12. TST maintains sole title to the trade name "The Satanic Temple" in the context of religious organizations.  See **Exhibit 1** (registration of trademark).

10  13. TST has adherents in each of the 50 States, importantly to include Washington. At the relevant time, TST was organized at local levels in "Chapters," which are largely autonomous but are subject to centralized control to ensure faithfulness to organizational principles and purposes.

14  14. TST had a Washington State Chapter which, at the relevant time, was led by two individuals: one serving as Chapterhead and the other serving as Media Liason.

16  15. The Chapterhead has administrative authority over the Washington Chapter and, until March 12, 2020, was assisted by an advisory council.

18  16. The Media Liaison promotes the Washington Chapter's activities to the general public.

20  17. Defendants were councilors on the advisory council to the Chapterhead.  On March 12, 2020, the advisory council consisted of 16 positions, of which Defendants held four. Attendant to their positions on the council, Defendants were entrusted with management of the Chapter's social media presence along with the other councilors.

24  18. On March 12, 2020, Defendants were removed from their positions on the council because of interpersonal conflicts with Chapter leadership and other councilors.

26  19. Defendant David Alan Johnson is an individual residing in Seattle, which is within

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1   this Court's district.  Johnson is a former associate of TST who misappropriated TST's

2   Washington Chapter Facebook website from within this Court's district and is using it and its

3   audience in an effort to undermine TST and to create a competitor organization.

4         20.    Defendant Nathan Sullivan is an associate of Johnson, and former associate of

5   TST, who aided and abetted the hacking.  Sullivan also lives in Seattle.  TST entrusted Sullivan

6   as the custodian of various documents which constitute trade secrets.  Examples include original

7   signed membership agreements, internal policies and procedures, and a listing of members with

8   contact information.  Sullivan now wrongfully maintains exclusive control over these sensitive

9   documents.  On information and belief, Johnson has wrongfully given Sullivan administrative

10   privileges to TST's Washington Chapter page.

11         21.    Defendant Leah Fishbaugh is an associate of Johnson, and former associate of

12   TST, who aided and abetted the hacking and who separately attempted to hack the Google

13   account.  Fishbaugh also lives in Seattle.  Fishbaugh changed the account credentials to the

14   Washington Chapter's email account in a failed attempt to usurp control over the email account.

15   On information and belief, Johnson has wrongfully given Fishbaugh administrative privileges to

16   TST's Washington Chapter page.

17         22.    Defendant Mickey Meeham is an associate of Johnson, and former associate of

18   TST, who aided and abetted the hacking.  Meeham also lives in Seattle.  On information and

19   belief, Johnson has wrongfully given Fishbaugh administrative privileges to TST's Washington

20   Chapter page.  Meeham misappropriated the Affiliate page.

21                  **IV.**    **FACTUAL BACKGROUND**

22         23.    Facebook is a ubiquitous internet social medium which permits users to create and

23   share content including without limitation links, commentary, and written conversations.  Content

24   can be shared by individuals on personal pages or by organizations on business pages.

25         24.    Twitter is also a ubiquitous internet social medium which permits users to create and

26   share substantially similar content as Facebook.

SECOND AMENDED COMPLAINT - 5

No. 20-cv-509

25.     Google is a ubiquitous internet-based information platform.  Among its many services, Google provides an email platform ("gmail") and a cloud-based document creation and storage platform ("Google Drive.")

26.     At the relevant time, Facebook was the Washington Chapter's primary platform of communicating with its membership.

27.     At the relevant time, Twitter was the Washington Chapter's secondary platform of communicating with its membership.

28.     TST's Washington Chapter has a Google account to generally facilitate its organizational purposes by creating and storing documents.

29.     In October of 2014, the Washington Chapter business page was created exclusively for the benefit of TST in its efforts to disseminate information for what was then the Seattle Chapter. See id., in its current state, available at https://www.facebook.com/thesatanictemplewashington. See also **Exhibit 2** (Chapter page history, updated since original complaint).

30.     Over the next several years, the Washington Chapter has grown the Facebook page to an audience exceeding 17,000 followers.  Ibid.

31.     In January of 2015, the Washington Chapter created a Twitter account for the organization.  See id. available at https://twitter.com/TST_Washington.  Currently, the Twitter account has an audience of about 4,000 followers.  Id.

32.     In September of 2018, the Washington Chapter created a secondary Facebook page, named "TST WA Allies," to facilitate communications with individuals who were interested in TST but did not want to identify as a member.  Since the original complaint, Defendants renamed the Allies page to "Evergreen Memes for Queer Satanic Fiends."  **Exhibit 3**; see also https://www.facebook.com/queersatanic (Last visited April 26, 2021).

33.     Until the hacking, both Facebook pages were maintained and controlled exclusively by administrators approved by TST.

34.     Administrators are given a written Code of Conduct, which instruct requirements for

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1    permissible activity on behalf of TST.  In relevant part, the instructions pertaining to online conduct

2    follow:

3         Public statements & interactions with media

4         All public actions and statements must be approved and vetted by the TST National Council

5         and the TST Executive Council. If a member is approached by media or asked for any

6         official statement regarding an action or belief relating to TST all members must refrain

7         from comment and refer the inquiring party to the Chapter Head.

8         . . .

9         Confidentiality

10        Members should respect confidentiality, including documentation. Internal information

11        should not be shared beyond members of the local chapter. Members' names, contact

12        information, and meeting locations are also considered confidential. If you are ever unsure,

13        don't share.

14        . . .

15        Copyright

16        Material produced by The Satanic Temple is the property of the organization. Consent for

17        use of logo, name or other identity materials may be approved for use for certain projects.

18        You may not use any official materials without prior approval. Approval may also be

19        withdrawn at any time.

20        . . .

21        Online code of conduct

22        As a member of TST, your interactions with others, both online and off, will be held to the

23        TST Code of Conduct. As an individual, we support your freedom of speech and freedom

24        to hold your opinions. Members' behavior, however, reflects on the organization as whole

25        and also builds the internal culture of TST. Therefore, we have a code of conduct specifically

26        for the internet.

SECOND AMENDED COMPLAINT - 7

No. 20-cv-509

1      Respect the diversity of opinions you find online and respond in a courteous manner. All

2      TST members' online conduct must be free of harassment, stalking, threats, abuse, insults,

3      defamation, or humiliation. This includes, but is not limited to, demeaning comments of an

4      ethnic, religious, sexist, or racist nature; and unwanted sexual advances or intimidation by

5      email or online. Such behavior will result in termination from the organization.

6      As a member of TST, always assume that what you publish on the web is permanent.

7      Anyone can easily print out a comment or save it as a screenshot. Remember, that TST is

8      often engaged in legal suits and exchanges online, or via text have the right to be exposed in

9      the case of a deposition. Think before you hit "send".

10      Using TST in connection with surveys, contests, pyramid schemes, chain letters, junk email,

11      spamming or any duplication or unsolicited messages is prohibited and will result

12      termination from the organization.

13      Any public disagreements between TST members should be taken to a private conversation.

14      If mediation is needed, it will be provided.

15  See form agreement, available as **Exhibit 4**.  Sullivan has the only known copies of the agreement

16  which was signed by Defendants.

17      35.     The above written instructions form the contours of administrators' authorization to

18  access TST's social media accounts.

19      36.     Defendants, each, were entrusted with administrative rights to the above-described

20  social media accounts, subject to the requirements set forth in the written instructions.

21      37.     Until the hacking, Defendant Sullivan had exclusive access of the original copies of

22  each Defendants' signature, acknowledging and agreeing to be bound by the above terms in return

23  for access to the social media accounts.

24      38.     On information and belief, Sullivan still has exclusive access to these documents,

25  among other highly sensitive materials including membership listings, internal policies and

26  procedures, and meeting notes.

SECOND AMENDED COMPLAINT - 8

No. 20-cv-509

39.     Defendants were each well aware of the Code of Conduct because it served as a source of friction leading up to the events giving rise to this litigation.  For example, on March 2, 2020, Johnson shared the following post on the Allies page outside of his authority:



40.     The ensuing deletion and reiteration of the expectation that Johnson adhere to the Code of Conduct as a condition of continued social media access would serve as foreshadowing for the misappropriation of the Allies page.

41.     Between March 2 and March 12, TST's Washington leadership became increasingly frustrated with Defendants' organizational failures and inflammation of interpersonal conflicts within the advisory council.

42.     "Organizational failures," as used above, particularly included:

(1) Repeatedly operating TST's social media to endorse leftist politics as opposed

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1    to Satanism, despite repeated reminders that this was unacceptable;

2    (2) Failing to attend a particular meeting to address the above issue; and

3    (3) Failing to initiate, conceive, or execute any publicity for the Washington

4    Chapter's Prayer for Plurality event, which was a matter of organizational

5    significance.

6    43.    On March 12, 2020, TST's Washington leadership removed Defendants from their

7    advisory positions.

8    44.    Defendants' positions on the advisory council entailed the authorization to manage

9    the Chapter's social media activity.  By removing Defendants from their advisory positions, the

10   Washington Chapter leadership revoked Defendants' authorization to manage the Chapter's social

11   media activity and revoked Defendants' authorization to serve as custodians of records.

12   45.    At some point between March 12 and March 14, 2020, Defendants entered into an

13   unlawful agreement to misappropriate and shut down substantially all the internet presence of TST's

14   Washington Chapter toward the twin goals of forming a competitor organization and harming TST.

15

16

17

18

19

20

21

22

23

24

25

26

SECOND AMENDED COMPLAINT - 10

No. 20-cv-509

46.     On March 14, 2020, Meeham exceeded authorization for the Allies page by removing all TST-approved administrators except the other named Defendants, changing the name to "Evergreen Memes for Queer Satanic Friends," and posting the following manifesto:

**Evergreen Memes for Queer Satanic Fiends**
March 14 at 7:59 PM · 🌐

**This page is no longer affiliated with The Satanic Temple.**

Ave Satanas!

I was recently notified that talking about transphobes and ableism was considered not to be relevant to The Satanic Temple's "International Council" in Salem or to the local chapter in Washington State.

So by talking about leftist politics like how "The struggle for justice is an ongoing and necessary pursuit that should prevail over laws and institutions," this page wasn't being Satanic.

Specifically:
"(IC is aware of how badly the allies page is fucking up), isn't worried about being labelled a criminal (and endorses negative and unrelated leftist politics on TST-affiliated social media). TST WA Allies should be about Satanism. On March 4th, this was told to you and ADJ, but just as recently as two days ago, there is a post about ableism. (this as a post from an individual is great - as TST WA not acceptable)."

So to be clear, this page thinks ableism, misogyny, and racism are superstitions, fascists are bad, transphobes can shut the fuck up, and the only good bootlickers do it for a kink and not because they love making excuses for cops killing people.

No gods, no masters.

Be gay, do crime, hail Satan

47.     Meeham, in conjunction with the other named Defendants, then began posting material in violation of the Code of Conduct and in disregard of the revocation of authority entailed in being removed from the position on the advisory council.

48.     Sullivan explicitly recognized that Defendants had no authorization to access the Allies page.  On March 15, 2020, Sullivan publicly stated that he was no longer affiliated with TST. **Exhibit 5**.  A commentator suggested "Time to found your own," to which Sullivan responded "three steps ahead of you" and "we have a meme page here that we stole from TST: Evergreen Memes for Queer Satanic Friends."  **Id.** at pp. 3-4.

49.     Following Meeham's usurpation of the Allies page, the Washington Chapterhead removed all defendants from administrative access privileges to the remaining social media accounts.  More specifically, the Chapterhead removed all administrative privileges of Johnson,

SECOND AMENDED COMPLAINT - 11

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1   Fishbaugh, Meeham, and Sullivan to the Facebook Chapter account and the Twitter and Google

2   accounts referenced herein.

3       50.     On or around March 18, 2020, Johnson hacked the TST's Twitter account, removed

4   all of TST's approved administrators, replaced the approved administrators with his co-Defendants,

5   followed a number of extremist groups, and changed the description from "Washington State

6   Chapter of the Satanic Temple" to "Satan stands as the ultimate icon for selfless revolt.  We oppose

7   irrational, unjust hierarchies like white supremacy, patriarchy, ableism, & cishet normality."

8   Johnson took these actions despite having a subjective awareness that he no longer had authorization

9   to use TST's Twitter account.

10      51.     On March 20, 2020, despite having a subjective awareness that he no longer had

11  authorization to use TST's Facebook Chapter page, Johnson took control of the Chapter page by

12  removing all TST-approved administrators, modifying the cover page without approval, and posting

13  a three-page manifesto.  The manifesto, as it looked as of the original complaint, is attached and

14  incorporated as **Exhibit 6** (the archive reflects Central time).  Originally, the manifesto was posted

15  with the original trade dress of TST.

16      52.     Broadly, the manifesto levied false claims that TST leadership is cozy with the alt-

17  right, are white supremacists, are generally insufficiently leftist for Johnson's preference, and does

18  not conform to Johnson's impression of Satanism.  Posting the manifesto exceeded Johnson's grant

19  of authority as defined in the Code of Conduct, disregarded the revocation of authority entailed in

20  being removed from the position on the advisory council, and disregarded the explicit revocation of

21  authority entailed in having his administrative access to the Chapter page removed.

22      53.     On March 20 at 11:29 pm, the Chapter's media liaison emailed Johnson a cease and

23  desist instruction, stating "I'd like you to return the Facebook page back to us please."  **Exhibit 7**

24      54.     Johnson ignored the email and did not return the Facebook page to TST.

25      55.     Instead, Johnson spent the next couple of days posting links and commentary from

26  the Chapter page, all with the general, and false, theme that TST leaders are incompetent fascists.

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1    See **Exhibit 8** (posts and commentary in excess of authorization).  The links and commentary all

2    exceeded Johnson's grant of authority as defined in the Code of Conduct, disregarded the revocation

3    of authority entailed in being removed from the position on the advisory council, disregarded the

4    explicit revocation of authority entailed in having his administrative access to the Chapter page

5    removed, and disregarded the explicit cease and desist demand referenced in ¶ 53

6         56.    On March 20 at 11:36 pm, Fishbaugh attempted to change the password to the

7    Chapter's Google-based email account by changing the recovery email and changing the phone

8    number.  This ignored the revocation of authority entailed in being removed from the position on

9    the advisory council and disregarded the explicit withdrawal of authority entailed in removing her

10   administrative access.

11        57.    On March 22 at 3:08 pm, Johnson modified the name of the Chapter page from "The

12   Satanic Temple Washington" to "Satanic Washington State – Archived Temple Chapter" and

13   modified the profile picture to replace TST-specific iconography with "antifa" symbolism.  These

14   modifications disregarded the revocation of authority entailed in being removed from the position

15   on the advisory council, disregarded the explicit revocation of authorization entailed in having his

16   social media administrative access revoked, and disregarded the explicit cease and desist demands

17   referenced in ¶ 53.

18        58.    By operation of his removal as a member of the advisory council, Sullivan's control

19   over original signed copies of membership agreements, cloud-based trade secret documentation,

20   became unauthorized.

21        59.    Of importance to this action, Sullivan had, and continues to have, exclusive control

22   over membership enrollment and application documents and background check documents for

23   prospective new members (to exclude felons from membership), both of which are paper

24   documents.  Sullivan also had, and continues to have, an electronic database of the membership, as

25   well as their contact information.

26        60.    TST opposes the use or threat of violence as a mechanism for control.

SECOND AMENDED COMPLAINT - 13

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1    61.    The    Chapter    page    maintains    its    original    URL:

2    https://www.facebook.com/TheSatanicTempleWashington/.

3    62.    As of the original complaint, TST's Washington Chapter lost between 20 and 30

4    members because of Johnson's false claims published to the Chapter page.  The precise number

5    since then is currently unknown to TST.

6    63.    Facebook refused to correct the matter, mislabeling the issue as a "Page admin

7    issue" to the exclusion of "infringements of your legal rights."

8    64.    One week prior to the original complaint, this time through counsel, TST

9    reiterated the legal theories at play to Facebook and to Johnson.  More particularly, On March 23,

10    2020, Matthew Kezhaya (TST's outside general counsel) issued a demand letter to Johnson which

11    threatened this very litigation unless he "permanently relinquish[ed] full control" of the Chapter

12    page "by 4:00 PM Central Time on March 24, 2020."  **Exhibit 9**

13    65.    Johnson ignored the letter and, together with his co-Defendants, continued to

14    maintain exclusive control over the Chapter page.  In so doing, Johnson and his co-Defendants

15    disregarded the revocation of authority entailed in being removed from their positions on the

16    advisory council, disregarded the explicit revocation of authorization entailed in having their social

17    media administrative access revoked, and disregarded the explicit cease and desist demands

18    referenced in ¶¶ 53 and 64.

19    66.    Facebook did not respond and did not return control of the Chapter page until after

20    the original complaint.  See Exhibit 2.

21    67.    Defendants simply ignored all communications, from counsel and TST alike.

22    68.    TST was able to recover the Twitter account and the email account through

23    Twitter and Google, respectively.

24    III.    **CAUSES OF ACTION**

25    **Count 1:**

26    **CFAA violation**

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1      69.     TST re-alleges and incorporates by reference the foregoing allegations.

2      70.     The CFAA provides a civil cause of action when a Defendant knowingly accesses a

3   "protected computer" by "exceeding authorized access," which causes a cumulative "loss" of at

4   least $5,000.  See 18 U.S.C. § 1030(g), (c)(4)(A)(i)(I).  Or, in the case of an attempted violation, the

5   successful violation would cause at least $5,000 in "loss."  Ibid.

6      71.     A "computer," is broadly defined as any device for processing or storing data.   18

7   U.S.C. § 1030(e)(1).

8      72.     A "protected computer" is a "computer" which is "used in or affecting interstate or

9   foreign commerce or communication."  18 U.S.C. § 1030(e)(2)(B).

10      73.     Websites have been recognized as a "protected computer" within the meaning of the

11   CFAA.  See United States v. Drew, 259 F.R.D. 449, 457-58 (C.D. Cal. 2009).

12      74.     A defendant "exceeds authorized access" by accessing a computer "with

13   authorization and to use such access to obtain or alter information in the computer that the accesser

14   is not entitled so to obtain or alter."  18 U.S.C. § 1030(e)(6).

15      75.     A "loss" is "any reasonable cost to any victim, including the cost of responding to

16   an offense, conducting a damage assessment, and restoring the data, program, system, or

17   information to its condition prior to the offense, and any revenue lost, cost incurred, or other

18   consequential damages incurred because of interruption of service."  18 U.S.C. § 1030(e)(11).

19      76.     As described above, Defendants wrongfully and intentionally by exceeding their

20

21   Pete Reeves I'm confused as to why a TST Facebook page is being
22   used to attack TST... Shouldn't that be left to the Evangelical
     Christians?
23   Like · Reply · 1w                                                          👍 2

24
25   Pete Reeves I'm confused as to why a TST Facebook page is being
     used to attack TST... Shouldn't that be left to the Evangelical
     Christians?      Saturday, March 21, 2020 at 1:59 PM
26   Like · Reply · 1w                                                          👍 2

SECOND AMENDED COMPLAINT - 15

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1   authorized access, perpetrated fraud upon TST and its membership, as well as any who happened

2   upon the offending posts, by posting under the misappropriated identity of TST.   Perfectly

3   encapsulating the issue, one commenter expressed confusion on March 21, stating:

4   See https://www.facebook.com/TheSatanicTempleWashington/posts/2908426992513671

5   77.   There is a cognizable dollar value to social media accounts.   Preliminary estimates

6   of the "loss" related to the misappropriation of the Chapter page is $33,689.70, plus $1,037.52 for

7   the Allies page.   The Twitter page, if successfully misappropriated, would have lost $8,246.70.   The

8   aggregate sum being $42,973.92—well in excess of the $5,000 jurisdictional requirement.

9   78.   Defendants were aware that the social media accounts had an economic value to

10   TST.   The social media accounts were the primary means for TST to communicate with the general

11   public and TST's supporters, and that those communications help to foster the kind of relationship

12   which results in charitable donations to support TST's organizational purposes.   By depriving TST

13   of its social media accounts, Defendants intended to diminish those donations and divert donations

14   to their competitor organization, provisionally named "The Satanic Temple 2: Electric Boogaloo."

15   Exhibit 5 at p. 4.

16   79.   Further compounding the losses are TST's attorney's fees for investigating this

17   matter, entering futile demands for corrective action: both of Facebook and from Defendants, and

18   drafting this complaint.   TST will continue to incur losses in the costs and fees related to this lawsuit.

19   TST's costs and attorney's fees well exceed the $6,000 incurred in researching and drafting the

20   original complaint.

21   80.   TST has incurred, and continues to incur, reputation losses from the

22   misappropriation of its Facebook pages.   These reputation losses are quantifiable in monetary terms,

23   but are irreparable by money damages alone.

24   81.   Based on the foregoing, TST is entitled to injunctive relief in the form of a permanent

25   injunction enjoining Defendants from accessing any of TST's "protected computers" (i.e. any

26   internet-based media) under threat of contempt, economic damages of at least $48,973.92, and costs

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1    and attorney's fees to be computed after entry of the decree.

2                                    **Count 2:**

3                            **Tortious interference**

4        82.    TST re-alleges and incorporates by reference the foregoing allegations.

5        83.    TST maintains ongoing business relationships with Facebook, importantly to

6    include the Chapter page and Allies page.

7        84.    There is an economic benefit for TST in having a ubiquitous platform to interact

8    with members and prospective members in the convenience of their homes and wherever they carry

9    their smartphones.  Namely, with increased awareness comes increased membership and donations

10   which create a positive feedback loop.

11       85.    At the relevant time, Defendants had subjective knowledge of the business

12   relationship between Facebook and TST.  Facebook is well-known as a separate company from the

13   organizations that have profiles on its proprietary network.

14       86.    Defendants intentionally and with an improper motive acted to sever the Washington

15   Chapter's relationships with Facebook by misappropriating the two websites for the twin goals of

16   harming the Washington Chapter, and TST at large, and creating a competitor organization.

17       87.    Defendants were aware that the social media accounts had an economic value to

18   TST.  The social media accounts were the primary means for TST to communicate with the general

19   public and TST's supporters and Defendants personally used those social media accounts for the

20   purpose of assisting TST in creating the kind of communications that help to foster the kind of

21   relationship which results in charitable donations to support TST's organizational purposes.  By

22   depriving TST of its social media accounts, Defendants intended to diminish those donations and

23   divert donations to their competitor organization, provisionally named "The Satanic Temple 2:

24   Electric Boogaloo."  Exhibit 5 at p. 4.

25       88.    Defendants' interference with TST's social media presence was wrongful beyond

26   the interference itself.  Defendants abused TST's social media presence as a channel to publish

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

derogatory messages directly to TST's intended audience and to falsely suggest that the Washington Chapter was replaced by Defendants' competitor organization.  The contemplated and intentional purpose of so doing was to diminish TST's membership and donation base.

89.     As a direct and proximate result of Defendants' wrongful conduct, TST has suffered substantial economic injury and loss of business opportunity and has incurred attorney's fees and other costs in attempting to remedy the situation.

90.     Based on the foregoing, TST is entitled to injunctive relief in the form of a permanent injunction enjoining Defendants from accessing any of TST's "protected computers" under threat of contempt, and costs and attorney's fees to be computed after entry of the decree.

## **Count 3:**

### **Trespass to chattels**

91.     TST re-alleges and incorporates by reference the foregoing allegations.

92.     Trespass to chattels is the intentional interference with a party's personal property without justification that deprives the owner of possession or use.  G&G Closed Cir. Events, LLC v. Single, LLC, No. C18-1295JLR, 2020 WL 5815050, at *4 (W.D. Wash. Sept. 30, 2020) (citing Restatement (Second) of Torts § 217).

93.     The first chattel at issue is TST's possessory interest in Facebook's computer network which manifested through the internet as the Chapter page and the Allies page.

94.     Defendants intentionally dispossessed TST of the Chapter page and the Allies page by logging in to Facebook's computer network and replacing Defendants for TST's authorized administrators of the pages.

95.     Defendants had no justification to remove all of TST's approved administrators or to usurp the pages at issue.  Their authorization to use the pages were revoked by virtue of the removal of their positions on the advisory council and was explicitly revoked as to the Chapter page by the revocation of their administrative access.

96.     Although Washington has not squarely addressed the question, California courts

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1  have resolved that dispossession of access to a computer system is an actionable trespass to chattels.

2  See Synopsys, Inc. v. Ubiquiti Networks, Inc., 313 F. Supp. 3d 1056, 1080 (N.D. Cal. 2018) and

3  Intel Corp. v. Hamidi, 30 Cal. 4th 1342, 1351, 71 P.3d 296, 303 (2003); see also JLM Couture, Inc.

4  v. Gutman, No. 20 CV 10575-LTS-SLC, 2021 WL 827749 (S.D.N.Y. Mar. 4, 2021) (granting a

5  preliminary injunction to restrain a former employee's use of an employer's social media accounts

6  post-termination–albeit while explicitly declining to address the ultimate trespass to chattel and

7  conversion claims, id. at *19).

8  97.    The second chattel at issue is TST's membership-related documents, whether in

9  physical or electronic format.

10  98.    Defendants, particularly Sullivan, intentionally dispossessed TST of these

11  membership-related documents by maintaining exclusive control over the documents despite the

12  termination of Sullivan's role as custodian of records.

13  99.    Based on the foregoing, TST is entitled to injunctive relief in the form of a permanent

14  injunction enjoining Defendants from accessing any of TST's "protected computers" under threat

15  of contempt, an order to return TST's membership related documents and destroy any copies

16  thereof, and costs and attorney's fees to be computed after entry of the decree.

17  **Count 4:**

18  **Conversion**

19  100.    TST re-alleges and incorporates by reference the foregoing allegations.

20  101.    Conversion is the act of "willfully interfering with any chattel, without lawful

21  justification, whereby any person entitled thereto is deprived of the possession of it.  In re Mastro,

22  No. 09-16841-MLB, 2017 WL 2889659, at *13 (Bankr. W.D. Wash. July 6, 2017) (citing Public

23  Util. Dist. No. 1 v. Wash. Public Power Supply Sys., 104 Wn.2d 353, 378 (Wash. 1985)).

24  102.    "Willful" means "intentional" but not necessarily "malicious."  Id. (citing Schilling

25  v. Radio Holdings, Inc., 136 Wn.2d 152, 159–60 (Wash. 1998)) (citations omitted).

26  103.    Malicious intent is not an element of conversion and good faith is not a defense.  Id.

1   (citing <u>Brown v. Brown</u>, 157 Wn. App. 803, 818, (2010)).

2      104.   Trespass to chattels differs from conversion as a matter of degree.  See <u>Intel Corp.</u>

3   <u>v. Hamidi</u>, 30 Cal. 4th 1342, 1350, 71 P.3d 296, 302 (2003) ("Dubbed by Prosser the 'little brother

4   of conversion,' the tort of trespass to chattels allows recovery for interferences with possession of

5   personal property 'not sufficiently important to be classed as conversion, and so to compel the

6   defendant to pay the full value of the thing with which he has interfered'); see also <u>Damiano v. Lind</u>,

7   163 Wash. App. 1017 at *5 (2011) ("Trespass to chattels is something less than a conversion.")

8   (unpublished opinion, but the Court "may consider unpublished state decisions, even though such

9   opinions have no precedential value." <u>Emps. Ins. of Wausau v. Granite State Ins. Co.</u>, 330 F.3d

10   1214, 1220 (9th Cir. 2003)).

11      105.   The same chattels are at issue in this Conversion claim as the Trespass to Chattels

12   claim.  Both claims are included because Washington courts tend to discuss the two claims in

13   tandem.  E.g. <u>Damiano</u>, above; see also <u>Sexton v. Brown</u>, 147 Wash. App. 1005 (2008).

14                              **<u>Count 5:</u>**

15                     **Dilution under 15 USC § 1125(c)**

16      106.   TST re-alleges and incorporates by reference the foregoing allegations.

17      107.   15 USC § 1125(c) provides for trademark remedies when one or more defendants

18   uses a famous or distinctive mark or trade name in commerce which is likely to cause dilution by

19   blurring or dilution by tarnishment of the famous mark.  See 15 USC § 1125(c)(1) and (5).

20      108.   A mark is "famous" if it is widely recognized by the general consuming public.  15

21   USC § 1125(c)(2)(A).

22      109.    "The Satanic Temple" is a famous mark because it is commonly referenced in the

23   general media.  For recent references, see e.g. Penny Lane, *Magnolia Films*, "Hail Satan?" (2019);

24   Cameron Sheppard, *WNPA News Service*, "Amid Pious Protesters, Satanists Conduct a Ritual on

25   the   Capitol   Steps"   (March   6,   2020)   (reposted   by   *The   Chronicle*,   available   at

26   <u>https://www.chronline.com/stories/amid-pious-protesters-satanists-conduct-a-ritual-on-the-capitol-</u>

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1   steps,4905) (last visited April 23, 2021); David S. Cohen, Rolling Stone, "How the Satanic Temple

2   Could Bring Abortion Rights to the Supreme Court" (August 24, 2020) (available at

3   https://www.rollingstone.com/culture/culture-features/satanic-temple-abortion-rights-supreme-

4   court-1048833/) (last visited April 23, 2021); Erik Larson, *Bloomberg News*, "Satanic Temple's

5   lawyers try Christian-right tactics" (March 22, 2021) (reposted by the Seattle Times, available at

6   https://www.seattletimes.com/nation-world/satanic-temples-lawyers-try-christian-right-tactics/)

7   (last visited April 23, 2021).

8         110.    Dilution by blurring is an association arising from the similarity between a mark or

9   trade name and a famous mark which impairs the distinctiveness of the famous mark.  15 USC §

10   1125(c)(2)(B).

11         111.    Defendants' competitor organization, which was provisionally entitled "The Satanic

12   Temple 2: Electric Boogaloo" and "Satanic Washington – Archived Temple Chapter" had a

13   likelihood of impairing the distinctiveness of TST as a famous mark.  To-wit:

14         (1) "The Satanic Temple 2: Electric Boogaloo" directly copies "The Satanic

15             Temple;" and "Satanic Washington – **Archived Temple Chapter**" (emphasis

16             added) directly suggests that the Washington Chapter has been replaced by

17             Defendants' competitor organization.

18         (2) TST has an inherently distinctive mark because there is only one "The Satanic

19             Temple," Plaintiff, which has acquired distinctiveness as a mark through years

20             of effort.

21         (3) There is only one "The Satanic Temple" because TST jealously guards its

22             intellectual property rights.

23         (4) As addressed in ¶ 109, above, there is wide public recognition of The Satanic

24             Temple.

25         (5) Defendants intended to create an association between their competitor

26             organization with TST by stealing TST's Facebook pages, falsely suggesting

SECOND AMENDED COMPLAINT - 21

No. 20-cv-509

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1             that TST's Washington Chapter was no more ("Archived"), and redirecting all

2             internet traffic away from TST's Washington Chapter and toward Defendants'

3             competitor organization.

4          (6) There is an actual association between Defendants' mark and TST because

5             Defendants were former TST associates, who intended to create a competitor

6             organization by using TST's own intellectual property (both the name and the

7             Facebook pages), and advertising their competitor organization through the

8             Facebook pages.

9    Compare 15 USC § 1125(c)(2)(B)(i)-(vi).

10       112.    Alternatively, dilution by tarnishment is an association arising from the similarity

11  between a mark and a famous mark that harms the reputation of the famous mark.  15 USC §

12  1125(c)(2)(C).

13       113.    TST's membership base tends to be repelled by organizations which promote

14  ableism, misogyny, racism, fascism, transphobia, and the endorsement of police brutality.

15       114.    Defendants' competitor organization broadcasted statements, directly to current and

16  potential members of TST through TST's Facebook pages, that TST promotes ableism, misogyny,

17  racism, fascism, transphobia, and the endorsement of police brutality.  Defendants broadcasted these

18  statements for the purpose of diverting away from TST both current members and interested

19  potential members of the public.

20       115.    Defendants' competitor organization also publicly affiliated itself (and TST, to an

21  uninformed public) with politically extremist organizations by having the Twitter page follow

22  various politically extremist organizations (¶ 50, above) and by modifying the Chapter page's profile

23  picture to suggest that TST is associated with Antifa (¶ 57 above).

24       116.    These actions harmed TST–which is a religious organization–by suggesting that

25  TST is not a religious organization, but is instead an extremist political organization.   This

26  jeopardizes TST's tax exempt status as a "church;" jeopardizes the tax exempt status of donations

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1   to TST; jeopardizes the civil rights of TST's membership base ("religion" is a protected class under

2   Title VII, but "politics" is not); and diverts TST's membership base, which is interested in joining a

3   religion and not an extremist political group.

4       117.    Defendants' competitor group is also selling merchandise which features

5   Defendants' derivative marks and which Defendants are advertising on TST's Allies page.  See

6   generally https://www.redbubble.com/people/QueerSatanic/shop (last visited April 26, 2012).

7       118.    Based upon the foregoing, TST is entitled to recover monetary damages up to three

8   times the sum of: (1) Defendants' profits; (2) TST's reputational damages; and (3) the costs of this

9   action (15 USC § 1125(c)(5), referencing 15 USC § 1117(a) and (b)); an order to destroy all means

10  of making Defendants' counterfeit materials (id., referencing 15 USC § 1118); and orders to seize

11  any goods bearing Defendants' counterfeit marks, any records related to the sale thereof, and other

12  such appropriate orders to prevent the violation of TST's rights as a registered mark holder.  (id.,

13  referencing 15 USC § 1116).

14  ### IV.    __PRAYER FOR RELIEF__

15      WHEREFORE, in addition to all other relief to which the Court finds TST entitled,

16  TST prays for orders as follows:

17      (1)    Defendants shall, jointly and severally, immediately return full control to counsel for

18  Plaintiff under threat of contempt: control of the Allies page, all TST materials, whether in paper or

19  electronic format, including without limitation: all signed agreements, all membership listings, all

20  internal policies and procedures, all governance documentation, any branding materials, and any

21  other document created by or for the benefit of TST.

22      (2)    Defendants shall, jointly and severally, permanently refrain from accessing any

23  administrative function of any internet-based medium, including without limitation any social media

24  accounts, email accounts, or document storage accounts, created by or for the benefit of TST.

25      (3)    Defendants shall, jointly and severally, pay economic to Plaintiff in the amount of

26  $42,973.92 (the sum value of the social media accounts), or such other sum of the numbers identified

SECOND AMENDED COMPLAINT - 23

No. 20-cv-509

1   in ¶ 118, above.

2       (4)    Defendants shall, jointly and severally, pay statutory damages to Plaintiff in the

3   amount of $100,000, or such other amount to be determined at trial.

4       (5)    Defendants shall, jointly and severally, pay costs and attorney's fees to Plaintiff in

5   an amount to be determined after trial.

6       (6)    Defendants shall, jointly and severally, pay prejudgment and postjudgment interest

7   until paid in full.

8

9       Respectfully submitted this 24th day of May, 2021.

10                  LYBECK PEDREIRA & JUSTUS, PLLC

11

12                  By: */s/ Benjamin Justus*
                Benjamin Justus (#38855)

13                  Attorneys for Plaintiff
                Chase Bank Building

14                  7900 SE 28th St., Fifth Floor
                Mercer Island, WA 98040

15                  206.230.4255 /ph  206.230.7791 /fax
                ben@lpjustus.com / email Justus

16

17                  And: */s/ Matthew A. Kezhaya*
                Matthew A. Kezhaya (AR#2014161), admitted pro hac

18                  vice Attorney for Plaintiff
                Kezhaya Law PLC

19                  1202 NE McClain Rd
                Bentonville, AR 72712

20                  479.431.6112 /ph  479.282.2892 /fax
                matt@kezhaya.law / email Kezhaya

21

22

23

24

25

26

SECOND AMENDED COMPLAINT - 24

No. 20-cv-509

## CERTIFICATE OF SERVICE

I hereby certify that on the 24th day of May, 2021, I electronically filed the SECOND AMENDED COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

Dated at Seattle, Washington, the 24th day of May, 2021.


By:   */s/ Benjamin Justus*
　　　　Benjamin Justus