UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| United Federation of Churches, LLC (dba "The Satanic Temple"),<br><br>Plaintiff,<br><br>v.<br><br>David Alan Johnson (aka "ADJ"), Leah Fishbaugh, Mickey Meeham, and Nathan Sullivan,<br><br>Defendants. | No. 2:20-cv-00509-RAJ<br><br>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT |

## I. Introduction

United Federation of Churches, LLC (dba "The Satanic Temple") ("TST"), by and through counsel of record, files this response in objection to Defendants' Motion to Dismiss Second Amended Complaint ("Motion") (Dkt. # 27). This case is predicated on a simple moral proposition: you can't hack someone else's social media accounts to advertise competing goods and services and you can't retain membership records for an organization to which you no longer belong. Defendants did precisely that, which caused TST to lose members and public goodwill.

Defendants incurred liability under the CFAA. As clarified by the Second Amended Complaint for Damages and Injunctive Relief ("SAC"), the Chapterhead removed Defendants' administrative access to the Chapter page *before* they hacked the Chapter page. That corrected

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 1

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

the defect of the original complaint, so Defendants' Motion should be denied.

Defendants also incurred liability for tortious interference. The flaw of the original complaint was that it did not address that the interference was wrongful beyond the interference, itself. The SAC corrects this by clarifying that Defendants hacked TST's social media presence, had malicious intent, and engaged in unfair competition, all to diminish TST's donation base and divert it to Defendants' competitor organization.

Defendants also incurred liability for trespass to chattels and conversion. TST had a superior possessory interest to the computer systems, and has a superior ownership interest in TST's membership records. Defendants' Motion is predicated on a non-existent requirement that a plaintiff demand the return of his property before the retention is actionable.

Last, Defendants incurred liability for trademark dilution. TST has a protectible interest in having its mark not to be used to advertise a competitor's goods and services. Defendants incurred dilution by blurring liability when they stole TST's Allies page and used it to advertise Defendants' competitor goods and services. This diminished "TST" as a unique identifier of TST's goods and services. Defendants incurred dilution by tarnishment liability when they used TST's name, Facebook pages and social media accounts to post statements which harmed its reputation and standing.

## II. Argument

### A. Standards for Motion to Dismiss.

When considering a motion to dismiss under FRCP 12(b)(6), the court construes the complaint in the light most favorable to the nonmoving party. *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff. *See*

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 2

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA 98040
206-230-4255  Fax 206-230-7791

*Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

Where the Court dismisses for failure to state a claim, "leave to amend should be granted unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).

**B.  Response to Defendants' Selective "Facts".**

Defendants' Motion is predicated on a self-serving statement of "facts" in which "*the following allegations* are taken as true… ." Dkt. # 27, at 3 (emphasis added).  From there, Defendants go on to include citations to some, but not all, of the allegations of the SAC. Predictably,  Defendants' version of the "facts" tends to emphasize certain allegations (which are later derided as "conclusory") while selectively ignoring many more detailed allegations.  This pattern is repeated throughout the Motion in connection with Defendants' various arguments.

Given the standards applicable to this Motion summarized above, this approach is simply untenable. *All* of the factual allegation of the SAC are to be afforded a presumption of accuracy and truth, not just those that Defendants wish to be "taken as true."

//

PLAINTIFF'S RESPONSE  IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 3

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

**C. TST Has Properly Pleaded a CFAA Claim.**

Defendants first contest the CFAA claim. The CFAA creates criminal and civil liability for "acts of computer trespass by those who are not authorized users or who exceed authorized use." *Facebook, Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1065 (9th Cir. 2016); *see also Van Buren v. United States*, 2021 U.S. LEXIS 2843, 141 S. Ct. 1648, ___ U.S. ___ (June 3, 2021). The Court dismissed the CFAA claim, with leave to amend, because TST had not alleged that Defendants' actions were done "without authorization." Order, Dkt. # 20, at p. 6.

Following the order of dismissal, undersigned counsel further investigated whether Defendants abused existing administrative access (which is not actionable under the CFAA), or whether they had been removed from access (which is). Counsel's investigation led to the clarified sequence of events in the SAC: (1) on March 12, Defendants were removed from their positions (¶ 43); (2) on March 14, Defendants stole the Allies page (¶ 46); (3) shortly later, i.e. before March 18, the Chapterhead removed Defendants from their administrative access to the Chapter Facebook page, Twitter, and Google accounts (¶ 49); (4) between March 18 and March 20, Defendants attempted to hack the Twitter and Google accounts (¶¶ 50 and 56); and (5) on March 20, Johnson hacked the Chapter Facebook page and removed all approved administrators (¶ 51).

Because Defendants made efforts to access administrative functions of the websites after the Chapterhead had removed their administrative access, Defendants intentionally accessed the Chapter page and attempted to access the Twitter and Google accounts, all "without authorization." 18 U.S.C. § 1030(a)(2); compare SAC, ¶¶ 49-53.

Upon accessing the administrative functions, Defendants obtained information about the approved administrators, removed TST's approved administrators, replaced TST's approved

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 4

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

administrators with themselves, and began using the administrative functions to create statements under the false guise that TST's Washington Chapter had been replaced by Defendants. *See* SAC at ¶¶ 51-57. All of this entails the obtaining of information from any protected computer. 18 U.S.C. § 1030(a)(2)(C). Defendants' failed attempts to do the same to the Twitter and Google accounts are just as actionable as is their successful attempt on the Chapter page. *See* 18 U.S.C. § 1030(b).

Defendants complain about the addition of the factual detail that the Chapterhead removed their administrative access before they stole TST's Chapter page and attempted to steal the Twitter and Google accounts. Motion, Dkt. # 27, at p. 8. This was no reversal of position; it was the product of further investigation. Prior to the Order of dismissal, counsel errantly thought it sufficient that Defendants lost the organizational authority to use the administrative functions. After the Order was entered, Counsel learned that Defendants had more than lost the organizational authority; they were stripped of their administrative access. By dismissing the CFAA claim "with leave to amend" (Order, Dkt. # 20, at p. 19), the Court afforded Counsel the opportunity to investigate whether Defendants had the necessary access credentials to steal the Chapter page. Had the investigation revealed that Defendants did have administrative access at the relevant time, the CFAA claim would not have been renewed.

Defendants next contest whether TST "explicitly" revoked their access. Motion, Dkt. # 27, at pp. 9-12. This simply ignores the allegations of the complaint. TST "explicitly" revoked Defendants' access by removing their technological credentials to access the administrative functions. SAC at ¶ 49.

To fuel their argument, Defendants rely on authority which is materially different from this case. In each of Defendants' cases, the ability to access the computer was still intact. The

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 5

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA 98040
206-230-4255  Fax 206-230-7791

CFAA requires that the Defendant *not* have the ability to access the particular computer function. Compare Order, Dkt. # 20, at pp. 5-9 with *Van Buren v. United States*, *supra*, 2021 U.S. LEXIS, at *12-13 (June 3, 2021) ("without authorization" means the defendant had no access; "exceeds authorization" means the defendant had some access, but not to the function at issue). Here, the SAC clarifies that Defendants did not have the ability to access the particular computer functions. SAC at ¶ 49.

Defendants also contest that TST did not "explicitly revoke" Defendants' authorization. Motion, Dkt. # 27, at pp. 12-13. This is flatly wrong. *See* SAC at ¶¶ 49-68 and Exhibits 5, 7, and 9 (Dkt. # 26-5, 26-7, 26-9). Defendants offer neither authority nor convincing argument to suggest that, in addition to stripping their technological credentials, TST must also send a separate notice that informs Defendants that they have lost their technological credentials. Even if such authority existed, TST met that requirement by demanding the return of the Facebook page (Exhibits 7 and 9) and threatening litigation if Defendants do not return the page (Exhibit 9). Defendants did not return the Facebook page by the deadline offered. The complaint thus dispels any doubt about whether Defendants had organizational authority or administrative access to control the Facebook page.

Defendants also take issue with whether the complaint pleads at least $5,000 in "loss." Motion, Dkt. # 27, at pp. 13-15. But this is irrelevant at the pleading stage. *See* 18 U.S.C. § 1030(g) ("Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator.") The $5,000 jurisdictional threshold only matters under 18 U.S.C. § 1030(a)(4) (fraud involving losses of at least $5,000). But, as the Court pointed out, TST relies on 18 U.S.C. § 1030(a)(2)(C) (intentionally accessing a computer without

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 6

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA 98040
206-230-4255  Fax 206-230-7791

authorization or exceeds authorized access, and thereby obtains information from any protected computer). Order, Dkt. # 20, at p. 5.

Alternatively, the complaint adequately pleads a sufficient "loss." A "loss" is statutorily defined as "any reasonable cost to any victim, including the cost of responding to an offense, conducting a damage assessment, and restoring the data, program, system, or information to its condition prior to the offense, and any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." 18 U.S.C. § 1030(e)(11).

Here, the "loss" is (1) the lost ability to communicate to an audience which TST had built through years of effort (SAC, ¶¶ 51-68); and (2) the 20-30 lost members, as of the original complaint (¶ 62). As explained in the complaint, there is a dollar value associated with having an internet audience. SAC at ¶ 77 (the aggregate sum of the social media accounts is $42,973.92). Defendants attack that number as "merely conclusory," but this is a factual proposition which must be treated as true under the legal standard.

As for the lost members, Defendants cite a Pennsylvania District Court case for the proposition that loss of business relations are outside the purview of the CFAA. Motion, Dkt. # 27, at p. 15 (citing *Eagle v. Morgan*, No. 11-4303, 2011 WL 6739448, at *9 (E.D. Pa., Dec. 22, 2011)). But *Eagle* says just the opposite. The *Eagle* Court found that, "lost revenue incurred because of an interruption of service" is a "loss." *Eagle*, 2011 WL 6739448 at *8. TST lost the 20-30 members because Defendants stole TST's website. SAC at ¶¶ 62 and 78. Because TST lost the members, TST lost money. That fits precisely within the statutory definition of "loss."

Defendants also take issue with including attorney's fees in the "loss" analysis. Motion, Dkt. # 27, at pp. 13-14. The attorney's fees are included as "consequential damages" within the text of the statute, 18 U.S.C. § 1030(g); i.e., "Losses that do not flow directly and immediately

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 7

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

from an injurious act but that result indirectly from the act." DAMAGES, Black's Law Dictionary (11th ed. 2019) (particularly defining "consequential damages").

The Fourth, Sixth, and Eleventh Circuits take the view that the statute provides for two categories of "loss:" "(1) reasonable costs incurred in connection with such activities as responding to a violation, assessing the damage done, and restoring the affected data, program system, or information to its condition prior to the violation; and (2) any revenue lost, cost incurred, or other consequential damages incurred because of interruption of service." *Brown Jordan Int'l, Inc. v. Carmicle*, 846 F.3d 1167, 1174 (11th Cir. 2017). This is because the language of the statute is disjunctive. *See* 18 U.S.C. § 1030(e)(11) ("loss" means "any reasonable cost to any victim . . ., *or* other consequential damages.") (emphasis added).

Defendants' argument speaks to the "any reasonable cost" category of damages, but not the "consequential damages" category. The attorney's fees incurred to pursue this litigation fits within the statutory language "because of interruption of service" because the loss of the Allies page is an ongoing issue and TST must take corrective action against Defendants to dissuade other hackers from like conduct. This is a cost incurred in responding to the offense, which is a "loss." *See Brown*, 846 F.3d at 1175 n. 2 (11th Cir. 2017) ("The reasonable cost of responding to the offense—in this case, the unauthorized email access—is not limited to damage to a computer or network.")

Additionally, and not addressed by Defendants' Motion, is the "damage" they did to the website. Defendants accrued liability to TST when they caused "any impairment to the integrity or availability of data, a program, a system, or information." 18 U.S.C. § 1030(e)(8) and (g). Here, Defendants caused impairments to the integrity of the Chapter page by deleting the name of the website, replacing the correct name with the name of Defendants' competitor organization

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 8

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

and the suffix "Archived Temple Chapter," modifying the profile picture, and creating various posts under the false guise that TST's Washington Chapter had been replaced by Defendants' competitor organization. SAC at ¶¶ 51-68; Exhibits 2, 6, and 8 (Dkt. # 26-2, 26-6, 26-8).

**D. TST Has Properly Pleaded a Tortious Interference Claim.**

Next, Defendants challenge the tortious interference claim. The Motion challenges three elements of TST's tortious interference claim, namely: defendants' knowledge of a business relationship; "improper purpose/means;" and damages. *See* Dkt. # 27, at 16; *Woods View II, LLC v. Kitsap Cty.*, 188 Wn. App. 1, 29-30, 352 P.3d 807, 821 (2015). Defendants repeatedly cite only a few select paragraphs of the SAC which they claim to be "conclusory," while ignoring many other allegations.

"The knowledge element is satisfied when the defendant knows of 'facts giving rise to the existence of the relationship.' " *Woods View II*, 188 Wn. App. at 30 (citing *Calbom v. Knudtzon*, 65 Wn.2d 157, 165, 396 P.2d 148 (1964)). This element does not require specific knowledge, only awareness of "some kind of business arrangement." *Topline Equip., Inc. v. Stan Witty Land, Inc.*, 31 Wn. App. 86, 93, 639 P.2d 825, *review denied*, 97 Wn.2d 1015 (1982). While Defendants cite a single paragraph of the SAC which alleges that they had "subjective knowledge of the business relationship between Facebook and TST," (Dkt. #27, at 16 (citing SAC, ¶85)), they fail to acknowledge several other allegations immediately preceding and following this paragraph. These additional allegations state: that TST's business relationships with Facebook specifically include the Chapter and Allies pages; the nature of economic benefit to TST of having continuous interactions with current and prospective members via these platforms; and, most notably, that:

> *Defendants were aware that the social media accounts had an economic value to TST.*

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 9

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

> The social media accounts were the primary means for TST to communicate with the general public and TST's supporters and *Defendants personally used those social media accounts for the purpose of assisting TST in creating the kind of communications that help to foster the kind of relationship* which results in charitable donations to support TST's organizational purposes. By depriving TST of its social media accounts, Defendants intended to diminish those donations and divert donations to their competitor organization, provisionally named "The Satanic Temple 2: Electric Boogaloo." Exhibit 5 at p. 4.

*See* SAC, ¶¶ 83, 84, 87 (emphasis added). Especially since no "specific knowledge" of the business relationship is required to state a claim, these factual allegations – which include that Defendants knew the economic value to TST of the same Facebook pages they later misappropriated – more than adequately meet the knowledge element.

Defendants continue their "gloss-it-over" approach as they challenge the "improper purpose/means" element. Having an "improper purpose" is not the exclusive means of satisfying this element; a "wrongful means" would also satisfy the test. *Pleas v. City of Seattle*, 112 Wn.2d 794, 803-804, 774 P.2d 1158 (1989). This additional wrongfulness does not turn exclusively on subjective intent, although intent would suffice. "Interference can be 'wrongful' by reason of a statute or other regulation, or a recognized rule of common law, or an established standard of trade or profession." *Pleas*, 112 Wn.2d, at 804 (citation omitted).

Similarly, Defendants hand-wave by claiming TST "*merely* alleges that 'Defendants abused TST's social media presence as a channel to publish derogatory messages directly to TST's intended audience and to falsely suggest that the Washington Chapter was replaced by Defendants' competitor organization.'" Dkt. #27, at 17 (citing SAC ¶ 88; emphasis added). Defendants selectively omitted the following sentence of this same paragraph: "The contemplated and intentional purpose of so doing was to diminish TST's membership and donation base." SAC, ¶ 88. Defendants fail to mention that TST also alleged that "Defendants

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 10

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

intentionally and with an improper motive acted to sever the Washington Chapter's relationships with Facebook by misappropriating the two websites for the twin goals of harming the Washington Chapter, and TST at large, and creating a competitor organization." *Id.*, ¶86. Moreover, TST alleged that Defendants knew of and breached the TST Code of Conduct in connection with their unauthorized and harmful activities on TST's social media pages. *Id.*, ¶¶34, 39, 40, 47, 52, 55. Together, these allegations establish both improper purpose and wrongful means.

Finally, Defendants argue that "as to the Allies page, TST fails to allege any damages," while acknowledging that TST alleged lost membership due to Defendants' conduct. Dkt. # 27, at 17. TST also alleged that "[a]s a direct and proximate result of Defendants' wrongful conduct, TST has suffered substantial economic injury and loss of business opportunity and has incurred attorney's fees and other costs in attempting to remedy the situation." SAC, ¶89. These are all damages.

Washington courts have established that the damages available for tortious interference include: "(a) the pecuniary loss of the benefits of the contract or the prospective relation; (b) consequential losses for which the interference is a legal cause; and (c) emotional distress or actual harm to reputation, if they are reasonably to be expected to result from the interference." *Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 178 Wn. App. 702, 714, 315 P.3d 1143 (2013) (citing Restatement (Second) of Torts § 774A (1965)).

In addition to the economic injuries cited above, TST also alleges reputational damages: "TST has incurred, and continues to incur, reputation losses from the misappropriation of its Facebook pages. These reputation losses are quantifiable in monetary terms, but are irreparable by money damages alone." SAC, ¶80. Such damages are clearly recoverable on a tortious

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 11

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

interference claim. *See Gregg Roofing*, 178 Wn. App., at 714-715 (citing *Island Air, Inc. v. LaBar*, 18 Wn. App. 129, 145, 566 P.2d 972 (1977)).

Finally, Defendants cite no legal authority which would require – at the pleadings stage – that TST segregate or itemize its claimed damages by source, or to provide a specific accounting in the operative complaint. To the contrary, this Court has denied motions to dismiss similar claims which alleged damages categorically rather than in precise monetary terms. *See, e.g., Kische USA, LLC v. Simsek*, 2016 U.S. Dist. LEXIS 191172, *27 (W.D. Wash. June 29, 2016) ("[] Defendants direct the court to no authority for their position that a plaintiff must plead specifically how and to what extent it was damaged by the interference, and again, the court rejects [] Defendants' argument. …Kische has plausibly pleaded that loss of its business relationships with suppliers and major retail clients. At this stage of proceedings, the court can reasonably infer that Kische has sustained damages from the alleged interference.") (alteration supplied); *Putz v. Golden*, 2010 U.S. Dist. LEXIS 129411, *49-50 (W.D. Wash. Dec. 7, 2010) ("Plaintiffs have alleged that the Goldens' 'intentional interference with Plaintiffs' rental business expectations,' has resulted in 'lost rental profits, . . . emotional damages,' and diminution in the value of property value."). *See also United Energy Workers Healthcare Corp. v. Atl. Home Health Care, LLC*, 2020 U.S. Dist. LEXIS 251287, *27-28 (E.D. Wash. Oct. 8, 2020) ("At the time UEW Healthcare filed its Complaint, six patients had transferred their care to Haven. As noted above, the loss of patients logically results in the loss of income. Thus, it is plausible that UEW Healthcare suffered resulting damage from the alleged tortious interference with a business expectancy. Accordingly, UEW Healthcare has stated a plausible claim against Haven for tortious interference with a business expectancy with respect to UEW Healthcare's former patients.") (citation omitted).

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 12

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

### E.  TST Has Properly Pleaded Claims for Trespass to Chattels and Conversion.

Defendants next contest the trespass to chattels and conversion claims.  Defendants argue in error that TST's "trespass and conversion claims relating to the Chapter Facebook page must be dismissed as moot," because TST has regained access to the Chapter page. Dkt. # 27, at 18-20.  While Defendants set forth a rather grandiose recitation of Article III standards (*see ibid.*), they offer no legal support for the notion that the eventual restoration of the Chapter page operates as a bar to either (1) recovery of damages for the past deprivation of this page; or (2) prospective injunctive relief to prevent Defendants from engaging in future similar conduct, both of which are sought by TST. *See* SAC, ¶¶ 4, 89, 91, 99, 100, 105.

This Court has recently described the tort of trespass to chattels as follows:

> Trespass to chattels "is the intentional interference with a party's personal property without justification that deprives the owner of possession or use." *Sexton v. Brown*, 147 Wash. App. 1005, 2008 WL 4616705, at *5 (Wash. Ct. App. Oct. 20, 2008) (unpublished) (citing Restatement (Second) of Torts § 217 (1965)).5   In order to sustain an action for trespass to chattel, however, there must be "some actual damage to the chattel." *See* W. Keeton, D. Dobbs, R. Keeton, & D. Owen, Prosser & Keeton on Law of Torts 87 (5th ed. 1984); *see also* Restatement (Second) of Torts § 218, cmt. e (1965) ("[O]ne who intentionally intermeddles with another's chattel is subject to liability only if his intermeddling is harmful to the possessor's materially valuable interest in the physical condition, quality, or value of the chattel . . . ."); D. Dobbs, P. Hayden, & E. Bublick, The Law of Torts § 60 (2d ed. 2015) ("To establish liability for trespass to chattels, the possessor must show legally cognizable harm."). Generally, there are three types of cognizable harms for a trespass to chattels claim: "(1) actual dispossession, which implies that the plaintiff's access to the chattel is barred or substantially limited for something more than a few moments; (2) physical harm to the chattel; or (3) physical harm to the plaintiff or to someone or something in which the plaintiff had a legal interest." D. Dobbs, P. Hayden, & E. Bublick, The Law of Torts § 60 (2d ed. 2015) (citations omitted).

*G&G Closed Circuit Events, LLC v. Single, LLC*, 2020 U.S. Dist. LEXIS 181079, *12-13 (W.D. Wash. Sept. 30, 2020).  This Court in *Single, LLC* went on to hold that a one-time unauthorized broadcast of a televised program on a single day gave rise to liability for trespass to chattels. *See*

PLAINTIFF'S RESPONSE  IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 13

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

*id.*, at *13-14. Thus, the fact here that Defendants' interference with the Chapter page has not continued unabated to date provides no reason to dismiss TST's related claims.

In attempting to challenge TST's claims as to the Allies pages and other confidential business documents[1], Defendants try to recast these claims as "conversion *or trespass* claims based on a bailee's retention of personal property," Dkt. # 27, at 19 (emphasis added), and seek to impose an additional requirement that "plaintiff must plead that it demanded the return of the property and the defendant wrongfully refused." *Ibid.*

Contrary to Defendants' argument, if the taking of a chattel is wrongful, no demand for return of the chattel is necessary to maintain a conversion claim. *City Loan Co. v. State Credit Ass'n*, 5 Wn. App. 560, 563, 490 P.2d 118 (1971).[2] Here, TST has clearly alleged that Defendants' interference with the Allies page and TST's confidential and sensitive documents was "wrongful." *See* SAC at ¶¶ 4, 20, 22, 38, 59, 88, 89, 91, 94, 95, 100, 105.

Further, none of the cases cited by Defendants (which cases are no more recent than 1962) actually state that this "demand" requirement applies to a trespass to chattels claims claim (as opposed to a conversion claim). *See Judkins v. Sadler-Mac Neil*, 61 Wn. 2d 1, 5, 376 P.2d 837 (1962); *Shaffer v. Walther*, 38 Wn. 2d 786, 792-93, 232 P.2d 94 (1951). If this were the case, there would have been no basis for trespass liability as determined by this Court in *Single, LLC*, *supra*, nor many other modern cases which involve interference with electronic or other intangible personal property. *See* SAC at ¶ 96 and cases cited therein. For these reasons, TST has properly stated claims for trespass to chattels and/or conversion.

---

[1] The nature of these documents is described in detail in the SAC at ¶¶20, 28, 38 and 59.

[2] It is even doubtful that a demand-and-refusal remains a required element for *any* conversion claim, as opposed to just another way of describing an antiquated legal doctrine. *See, e.g., Burton v. City of Spokane*, 16 Wn. App. 2d 769, 773,| 482 P.3d 968 (2021) ("Conversion involves three elements: (1) willful interference with chattel belonging to the plaintiff (2) by either taking or unlawful retention and (3) thereby depriving the owner of possession.") (citing *Judkins*, 61 Wn.2d, at 3)

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 14

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

**F. TST Has Properly Alleged Claims for Trademark Dilution.**

To prevail on a trademark dilution claim under the Trademark Dilution Revision Act ("TDRA") of 2006, 15 U.S.C. § 1125(c), "a plaintiff must show that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment." *Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 634 (9th Cir. 2008).[3]

In their Motion, Defendants profess to have no understanding about the alleged factual basis for their alleged use of TST's mark, but this is only because they again selectively ignore numerous allegations of the SAC. In essence, TST alleges that Defendants misappropriated its name and its Facebook pages in order to form, market and support a competing religious organization, which was initially planned to be named "The Satanic Temple 2: Electric Boogaloo" and/or "Satanic Washington – Archived Temple Chapter". SAC, ¶¶1, 19, 45, 78, 88, 106, 111. Even today, Defendants continue to use TST's Allies page to promote their competing organization. *Id.*, ¶32; Exhibit 3 (Dkt. # 26-3). As discussed in more detail below, this conduct amounts to dilution by blurring and by tarnishment.

Defendants argue that " '[a]ny noncommercial use of a mark' is not actionable as trademark dilution." Dkt. # 27, at 21 (citing *Sporting Times, LLC v. Orion Pictures, Corp.*, 271 F.Supp. 3d 817, 826-27 (W.D. Ky. 2017) (quoting 5 U.S.C. § 1125(c)(3)(C)). Continuing a now-familiar pattern, Defendants simply ignore the inconvenient allegation of the SAC which states: "Defendants' competitor group is also selling merchandise which features Defendants' derivative marks and which Defendants are advertising on TST's Allies page. See generally

---

[3] Defendants do not challenge that TST's mark is famous and distinctive.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 15

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

https://www.redbubble.com/people/QueerSatanic/shop (last visited April 26, 2012[sic]).” SAC, ¶117.

In the cases cited by Defendants, the plaintiffs and defendants were operating in totally different markets and/or forms of media. *See, e.g., Sporting Times, LLC*, supra (plaintiff's mark was for a youth sports publication; defendants produced a movie); *Mattel, Inc. v. MCA Records*, 296 F.3d 894, 898-899 (9th Cir. 2002) (plaintiff's mark was for a toy doll; defendants produced and marketed a song); *Mossack Fonseca & Co., S.A. v. Netflix Inc.*, No. CV 19-9330-CBM-AS(X), 2020 U.S. Dist. LEXIS 250102, at *1-3 (C.D. Cal. Dec. 23, 2020) (plaintiffs' mark was for a law firm logo; defendant made a documentary film)  Here, however, Defendants' newly formed religious organization competes directly with TST – for attention, for followers, for memberships, and ultimately, for monetary donations and merchandise sales. This alleged conduct is purely commercial and is not subject to First Amendment protection.

**1. Blurring.**

Defendants' use of the mark is likely to cause dilution by blurring.  Blurring occurs when a defendant uses a plaintiff's trademark to identify the defendant's goods or services, creating the possibility that the mark will lose its ability to serve as a unique identifier of the plaintiff's product. *Horphag Rsch. Ltd. v. Garcia*, 475 F.3d 1029, 1037 (9th Cir. 2007).  This typically involves a fact-intensive inquiry. *Id.* at 1036.

The point of dilution law is to protect the owner's investment in his mark. *Nissan Motor Co. v. Nissan Computer Corp.*, 378 F.3d 1002, 1012 (9th Cir. 2004).  This is why it is actionable for a store to call itself KODAK Pianos, as well as  KODAK. *Id.*  Both uses have a tendency to blur the distinctiveness of the mark. *Id.*

PLAINTIFF'S RESPONSE  IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 16

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

Here, Defendants are using TST's trademark (the website formerly named "TST WA Allies," Exhibit 3 (Dkt. # 26-3)) to advertise the sale of its competitor merchandise. SAC at ¶ 117; *see also* https://www.redbubble.com/people/QueerSatanic/shop (last visited June 28, 2021). Defendants respond with an argument that the SAC inadequately details how their competitor merchandise is derivative of TST's trademarks. Motion, Dkt. # 27, at p. 24.  This misses the issue.  The issue is that Defendants are using a website which bears TST's trademark to advertise the sale of competing goods and services.  Defendants are free to sell competing merchandise and services, they just cannot misappropriate TST's goodwill to do so.  TST has adequately pleaded a claim for dilution by blurring.

**2. Tarnishment.**

"The TDRA defines dilution by tarnishment as an 'association arising from the similarity between a mark or trade name and a famous mark that harms the reputation of the famous mark.'" *Nordstrom, Inc. v. Nomorerack Retail Group, Inc.*, 2013 U.S. Dist. LEXIS 41810, *29 (W.D. Wash. March 25, 2013) (quoting 15 U.S.C. § 1125(c)(2)(C)). "Thus the inquiry is twofold, whether there is similarity between the marks at issue, and whether there is harm to the famous mark's reputation." *Ibid.*

When Congress enacted the TDRA, it replaced the FTDA with a more detailed statute, notably providing relief for "likely" and not "actual" dilution, as well as explicitly defining "blurring" and "tarnishment." *Levi Strauss & Co. v. Abercrombie & Fitch Trading Co.*, 633 F.3d 1158, 1165-66 (9th Cir. 2011).  Under the new "likelihood of dilution" standard, the Ninth Circuit ruled that in the blurring context, the plain meaning of the TDRA no longer requires a plaintiff to "establish that the junior mark is identical, nearly identical or substantially similar to the senior mark." *Id.* at 1172.  This Court has held that the same standard applies to tarnishment. *Nordstrom,*

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 17

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

*Inc.*, 2013 U.S. Dist. LEXIS 41810 *29-32.

Here, whatever degree of similarity is required, the standard is met since Defendants have continued to utilize TST's Allies page for their own purposes. The website URL remains the same as ever; presumably any Facebook user seeking to locate TST's page will be directed to the misappropriated site unless and until Defendants relinquish administrative control over it.

As to the likelihood of harm prong, this Court has explained as follows:

> This last prong focuses on whether the use of the junior mark "harms the reputation of the famous mark." 15 U.S.C. § 1125(c)(2)(C). Courts have found that harm "generally arises when the plaintiff's trademark is linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context likely to evoke unflattering thoughts about the owner's product." *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93, 111 (2d Cir. 2010) (quoting *Deere & Co. v. MTD Prods., Inc.*, 41 F.3d 39, 43 (2d Cir. 1994)). For example, there is some consensus among courts across jurisdictions that a famous mark is tarnished when it is semantically associated with a new mark used to sell sex-related products. *See V Secret Catalogue, Inc. v. Moseley*, 605 F.3d 382, 388 (6th Cir. 2010). A trademark may also be diluted by tarnishment if the mark loses its ability to serve as a "wholesome identifier" of the plaintiff's product. *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 110 (2d Cir. 2009) (citing *Hormel Foods Corp. v. Jim Henson Prods., Inc.*, 73 F.3d 497, 507 (2d Cir. 1996)). The Second Circuit found that the relevant inquiry is how the junior mark's product affects the positive impressions about the famous mark's product, and not whether a consumer simply associates a negative-sounding junior mark with the famous mark. *Starbucks*, 588 F.3d at 110.

*Nordstrom, Inc.*, 2013 U.S. Dist. LEXIS 41810 *34-35.

In this connection, TST has alleged in detail how Defendants have harmed TST's reputation in the eyes of its membership and the general public by using TST's own web pages and social media accounts to falsely associate TST with " ableism, misogyny, racism, fascism, transphobia, and the endorsement of police brutality," as well as political extremist organizations. SAC, ¶¶112-116. As such, TST has amply alleged dilution by tarnishment.

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 18

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

### III. Conclusion

For the reasons discussed above, TST respectfully requests that this Court deny Defendants' Motion in its entirety. In the event that the Court finds any pleading deficiencies, it should give TST leave to amend its SAC to cure them.

Respectfully submitted this 28th day of June, 2021.

LYBECK PEDREIRA & JUSTUS, PLLC

By: /s/ Benjamin Justus
Benjamin Justus (#38855)
Attorneys for Plaintiff
Chase Bank Building
7900 SE 28th St., Fifth Floor
Mercer Island, WA 98040
206.687.7805 /phone  206.230.7791 /fax
ben@lpjustus.com / email Justus


And: /s/ Matthew A. Kezhaya
Matthew A. Kezhaya (AR#2014161), admitted pro hac vice
Attorney for Plaintiff
Kezhaya Law PLC
1202 NE McClain Rd
Bentonville, AR 72712
479.431.6112 /ph 479.282.2892 /fax
matt@kezhaya.law / email Kezhaya

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 19

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA 98040
206-230-4255  Fax 206-230-7791

**CERTIFICATE OF SERVICE**

I hereby certify that on the 28th day of June, 2020, I electronically filed PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record.

Dated at Seattle, Washington, the 28th day of June, 2020.

By: <u>/s/ Benjamin Justus</u>
Benjamin Justus

PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS - 20

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791