The Honorable Richard A. Jones

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT
9           FOR THE WESTERN DISTRICT OF WASHINGTON

10   UNITED FEDERATION OF
     CHURCHES, LLC d/b/a THE SATANIC
11   TEMPLE,                                      No. 2:20-cv-00509-RAJ

12                      Plaintiff,                **DEFENDANTS' REPLY IN SUPPORT
                                                  OF MOTION TO DISMISS SECOND
13          v.                                    AMENDED COMPLAINT**

14   DAVID ALAN JOHNSON, an individual;           NOTED ON MOTION CALENDAR:
     LEAH FISHBAUGH, an individual;               **July 2, 2021**
15   MICKEY MEEHAM, an individual; and
     NATHAN SULLIVAN, an individual,

16                      Defendants.

17

18

19

20

21

22

23

24

25

26

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ

ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

1

# I.     INTRODUCTION

2      The Satanic Temple's ("TST") Response to Defendants' Motion to Dismiss ("Response")

3   fails to show that TST has adequately pled any of its claims.  TST's Second Amended Complaint

4   ("SAC") must be dismissed.

5

# II.     ARGUMENT

6   **A.  The Satanic Temple Fails to State a Hacking Claim under the CFAA**

7          **1.   TST Fails to Allege Access was not Authorized by the Computer Owners**

8          TST devotes not one word to a fundamental flaw in its CFAA hacking claim—that it fails

9   to allege that any of the owners of the computers at issue here (Facebook, Twitter, or Google)

10   revoked Defendants' authorization to access those computers.  Indeed, as to the Chapter Page, TST

11   affirmatively alleges that at the time of the conduct at issue Facebook *explicitly determined that*

12   *Johnson's access and alteration were authorized. See* SAC ¶ 63.  Because TST has failed to allege

13   that the computer owners did not permit Defendants to access those computers, the CFAA claim

14   must be dismissed. *Courser v. Allard*, 969 F.3d 604, 619 (6th Cir. 2020).

15          **2.   TST Fails to Plead that it Revoked Defendants' Authority to Access Computers**

16          Applicable caselaw is abundantly clear that to assert a CFAA claim based upon "access[]

17   . . . without authorization" against a defendant who had authority to access a protected computer,

18   a plaintiff must plead that it entirely and *explicitly* revoked the defendant's authority. *Facebook,*

19   *Inc. v. Power Ventures, Inc.*, 844 F.3d 1058, 1067 (9th Cir. 2016) ("a defendant can run afoul of

20   the CFAA when he or she has no permission to access a computer or when such permission has

21   been revoked *explicitly*") (emphasis added); *Ticketmaster L.L.C. v. Prestige Entm't, Inc.*, 306 F.

22   Supp. 3d 1164, 1175-76 (C.D. Cal. 2018); *Domain Name Comm'n v. DomainTools, LLC*, 449 F.

23   Supp. 3d 1024, 1027 (W.D. Wash. 2020).

24          *123 Los Robles LLC v. Metzler*, No. 2:17-CV-00392-RGK-SK, 2017 WL 10311210 (C.D.

25   Cal., Aug. 14, 2017), is instructive. In that case, after discovering that Metzler, the limited liability

26   company's managing member and bookkeeper, had embezzled over $100,000 from the company,

the other members of the company removed Metzler as managing member. 2017 WL 10311210, at *1. They further instructed that the company's bank disable Metzler's ability to access the company's banking records, which the bank failed to do. *Id.* Almost three years later, the company discovered that Metzler had been accessing its banking records "continuously and systematically" and asserted a CFAA hacking claim against him. The *123 Los Robles* Court found that despite Metzler's removal as managing member and bookkeeper, the purported revocation of his authority to access the company's banking records from a protected computer was insufficiently explicit to support a CFAA claim. *Id.* at *3.

TST's revocation allegations are limited to the following:

On March 12, 2020, TST's Washington leadership removed Defendants from their advisory positions.

Defendants' positions on the advisory council entailed the authorization to manage the Chapter's social media activity. By removing Defendants from their advisory positions, the Washington Chapter leadership revoked Defendants' authorization to manage the Chapter's social media activity and revoked Defendants' authorization to serve as custodians of records.

. . .

Following Meeham's [sic, Meehan's] usurpation of the Allies page, the Washington Chapterhead removed all defendants from administrative access privileges to the remaining social media accounts. More specifically, the Chapterhead removed all administrative privileges of Johnson, Fishbaugh, Meeham [sic, Meehan], and Sullivan to the Facebook Chapter account and the Twitter and Google accounts referenced herein.

SAC ¶¶ 43-44, 49. These allegations fall well short of explicit revocation of authority as required in the Ninth Circuit. Removal of Defendants from their "advisory positions," which TST suggests implicitly caused removal of "administrative privileges" to the social media accounts, is as insufficiently explicit as the LLC's removal of Metzler as managing member and bookkeeper. *123 Los Robles*, 2017 WL 10311210, at *3. Further, even if the allegation of "remov[al] of all administrative privileges" were explicit, such purported removal is not the same as a complete and explicit revocation of authority to access the social media accounts. Accordingly, TST has failed adequately to plead that authority to access those accounts was explicitly revoked.

### 3.  TST Fails to Plead that it Informed Defendants of any Revocation of Authority

"In cases in which the employer rescinded authorization, the Ninth Circuit has required that revocation be 'unequivocally conveyed' to the defendant." *123 Los Robles*, 2017 WL 10311210, at *2 (quoting *United States v. Nosal (Nosal II)*, 844 F.3d 1024, 1028 (9th Cir. 2016)). Even if this Court finds that TST explicitly revoked Defendants' authority to access the social media accounts, TST's demand for return of the Chapter page and threatening litigation are insufficient to show that the purported revocation was "unequivocally conveyed" to Defendants. *Id.*; *see also DomainTools*, 449 F. Supp. 3d at 1027; *Power Ventures*, 844 F.3d at 1068; Dismissal Order at 8 (rejecting TST's contention that "it demanded return of the Facebook pages" as insufficient revocation of authority, in part, because it failed to describe "how that revocation was communicated").

### 4.  TST Fails Adequately to Plead it Meets the $5,000 "Loss" Threshold

In a striking mis-statement of the law, TST asserts that the $5,000 "loss" threshold "is irrelevant at the pleading stage. . . . The $5,000 jurisdictional threshold only matters under 18 U.S.C. § 1030(a)(4) . . . But, as the Court pointed out, TST relies on 18 U.S.C. § 1030(a)(2)(C)." Response at 6. Before addressing this incorrect statement of law, now that TST explicitly has disavowed a claim under 18 U.S.C. § 1030(a)(4) in favor of 18 U.S.C. § 1030(a)(2)(C), yet another ground for dismissal is apparent. Subparagraph 1030(a)(2)(C) prohibits access without authorization or in excess of authorized access to obtain "information from any protected computer." 18 U.S.C. § 1030(a)(2)(C). Although TST contends that "Defendants obtained information about the approved administrators," Response at 4, the SAC is *devoid* of any allegation that Defendants' alleged improper access to the protected computers allowed them to obtain "information" in violation of 18 U.S.C. § 1030(a)(2)(C). Rather, the obvious gravamen of the SAC is that Defendants' alleged improper access allowed them to *add* information to those computers that TST did not like. Accordingly, TST's CFAA claim must be dismissed for failure to allege Defendants improperly accessed the computers to obtain information.

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

1    Turning to TST's assertion that the $5,000 threshold is not relevant here, while TST

2    correctly observes that the $5,000 threshold is an element for a CFAA claim under 18 U.S.C. §

3    1030(a)(4), TST completely ignores 18 U.S.C. § 1030(g), which provides in relevant part that "[a]

4    civil action for a violation of this section may be brought only if the conduct involves 1 of the

5    factors set forth in subclauses (I), (II), (III), (IV), or (V) of subsection (c)(4)(A)(i)."[1] The only

6    subclause of subsection (c)(4)(A)(i) that conceivably could apply here is (I)—"loss to 1 or more

7    persons during any 1-year period . . . aggregating at least $5,000 in value."[2] Accordingly, to

8    withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss, a CFAA civil plaintiff must plausibly allege

9    "loss" exceeding $5,000. *DomainTools*, 449 F. Supp. 3d at 1030.

10    TST "alternatively" argues that it has pled a sufficient loss, pointing to two categories: "(1)

11    the lost ability to communicate to an audience which TST had built through years of effort (SAC,

12    ¶¶ 51-68); and (2) the 20-30 lost members."[3] Response at 7. In the SAC the only specifics TST

13    offers as to the amount of its loss are:

> There is a cognizable dollar value to social media accounts. Preliminary estimates
> of the "loss" related to the misappropriation of the Chapter page is $33,689.70, plus
> $1,037.52 for the Allies page. The Twitter page, if successfully misappropriated,
> would have lost $8,246.70.[4]

16    SAC ¶ 77. As to the first category of loss, TST has alleged nothing to quantify the conclusory

17    value of the alleged lost ability to communicate with its audience. The number appears to have

18    been pulled out of thin air. The second category of loss fares no better. TST alleges no facts

19    indicating the value of the alleged lost 20-30 members. Does TST estimate its damages based on

20    the amount of donations per member? On membership fees? Something else? Did TST

---

[1] In contrast to TST's false contention that no $5,000 threshold need be established in its Response, its SAC recognizes that to assert a civil claim under the CFAA a $5,000 loss is required. *See* SAC ¶ 70.

[2] The remaining subclauses of subsection (c)(4)(A)(i) listed in 18 U.S.C. § 1030(g) are "(II) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals; (III) physical injury to any person; (IV) a threat to public health or safety; [and] (V) damage affecting a computer used by or for an entity of the United States Government in furtherance of the administration of justice, national defense, or national security." Not one of those subclauses is supported by the SAC's allegations.

[3] TST also asserts in its brief that it suffered "damage . . . to the website." Response at 8. But the SAC lacks any quantification of the "loss" value of that purported damage.

[4] TST offers no "loss" figure relating to the alleged hacking of the Google account.

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 4



ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

commission a marketing expert to determine the value of the purportedly temporarily lost website? We have no idea. Such conclusory loss allegations fall well short of supporting the $5,000 loss element of a civil CFAA hacking claim. *Delacruz v. State Bar of Cal.*, No. 16-cv-06858-BLF, 2018 WL 3077750, at *8 (N.D. Cal., Mar. 12, 2018); *Brodsky v. Apple Inc.*, No. 19-CV-00712-LHK, 2019 WL 4141936, at *8 (N.D. Cal., Aug. 30, 2019).

Moreover, the revenue allegedly lost from TST members who allegedly left due to Defendants' actions simply does not apply to the $5,000 loss threshold. Although "lost revenue incurred because of an interruption of service falls within the definition of 'loss,' . . . claims of lost business opportunities, damaged reputation, loss of assets, and other missed revenue . . . do not constitute 'loss.'" *Eagle v. Morgan*, No. 11-4303, 2011 WL 6739448, at *9 (E.D. Pa., Dec. 22, 2011). In other words, if, for example, members of TST were unable to donate due to interruption of service on the Facebook page, such lost revenue *might* count toward the loss threshold. But that is not what TST is alleging. Rather, TST contends that because of Defendants' actions as to the social media accounts, some of its members became disaffected and did not donate. This is not due to "interruption of service," but rather, if anything, a "lost business opportunit[y], damaged reputation, . . . and other missed revenue," which plainly "do not constitute 'loss.'" *Id.*

TST also contends that attorney's fees qualify as a "loss." Response at 7. While attorney's fees incurred in *remediating* harm from a CFAA may count as a "loss," attorney's fees incurred in *prosecuting* a CFAA claim do not. *Wichansky v. Zowine*, 150 F. Supp. 3d 1055, 1071-72 (D. Ariz.); *Wilson v. Moreau*, 440 F. Supp. 2d 81, 110 (D.R.I. 2006), *aff'd* 492 F.3d 50 (1st Cir. 2007). TST has pled that it incurred $6,000 in preparing its complaint. SAC ¶ 79. That is plainly a litigation expense that courts do not count for the $5,000 CFAA loss threshold.

Finally, TST does nothing to address that its loss allegation as to the Allies page is only slightly more than $1,000. Because "loss" is evaluated on a computer-by-computer basis, TST cannot meet the $5,000 threshold as to the Allies page. *Hayes v. Packard Bell NEC, Inc.*, 193 F. Supp. 2d 910, 912 (E.D. Tex. 2001).

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 5

ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

**5. TST Fails to Allege Fishbaugh's and Sullivan's Involvement in the Alleged CFAA Violations or how Meehan's Alleged Actions were Fraudulent**

TST does not address (1) that it failed to allege Fishbaugh's and Sullivan's involvement in the purported CFAA violations, (2) how Meehan's alleged actions were fraudulent, or (3) the entirely conclusory "loss" allegation as to Johnson's alleged attempted hacking of the Twitter account. Accordingly, TST's claims against Sullivan, Fishbaugh, Meehan, and Johnson (as to the Twitter account) must be dismissed for failure to allege essential elements or plead the fraudulent aspect of an 18 U.S.C. § 1030(a)(4) claim with particularity. *See* Motion at 14-16.

**B. TST Fails Adequately to Plead a Claim for Tortious Interference**

A tortious interference claim requires that the interference be "wrongful by some measure beyond the fact of the interference itself." *Moore v. Commercial Aircraft Interiors, LLC*, 168 Wn. App. 502, 510, 278 P.3d 197 (2012). TST correctly notes that the "wrongful" element can be established by reason of a statute or other regulation, or a recognized rule of common law, or an established standard of trade or profession. Response at 10 (citing *Pleas v. City of Seattle*, 112 Wn.2d 794, 803-04, 774 P.2d 1158 (1989)). Yet, TST does not even attempt to explain how it has met this requirement and indeed, it has not. It has not alleged any violation of a statute, regulation, common law or an established standard or trade or profession.

Instead, TST argues that Defendants published derogatory messages about TST on its Facebook pages for the purpose of harming it, and that this conduct should satisfy the improper purpose/wrongful means element. Response at 10-11. This argument is essentially a repackaging of its defamation claim that the Court dismissed on First Amendment grounds. Dkt. No. 20. As with its defamation claim, TST again points to Defendants' criticisms, including that TST leadership are cozy with the alt-right, are white supremacists, and do not conform to the Defendants' impression of Satanism. Response at 11 (citing, *inter alia,* SAC ¶¶ 52 and 55). These are the very types of statements that the Court found it was barred from delving into by the ecclesiastical abstention doctrine. Dkt. No. 20 at 18 ("That would require the Court or jury to

ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

define the beliefs held by The Satanic Temple and to determine that ableism, misogyny, racism, fascism, and transphobia fall outside those beliefs. That the Court cannot do without violating the First Amendment."). TST should not be allowed to perform an end-run around the First Amendment or the Court's Order by restyling its defamation claim as a tortious interference claim. Just as the First Amendment required dismissal of the defamation claim, so does it require dismissal of a tortious interference claim based on the same statements. *See, e.g.*, *Ogle v. Church of God*, 153 F. App'x 371, *4 (6th Cir. 2005) (First Amendment barred the exercise of subject matter jurisdiction over claim for tortious interference with business relationships); *Jennison v. Prasifka*, 391 S.W.3d 660, 668 (Tex. App. 2013) (ecclesiastical abstention doctrine applied to tortious interference claim); *Cmty. Econ. Dev., Inc. v. Cote*, No. TTD CV 07-5001261-S, 2008 WL 5481209, at *4 (Conn. Super. Ct., Dec. 1, 2008) ("Thus, it has been held that the ministerial exception is . . . equally applicable to defamation and tortious interference claims linked to church discipline where religious doctrine, faith or internal organization is involved."); *Goodman v. Temple Shir Ami, Inc.*, 712 So. 2d 775, 777 (Fla. Dist. Ct. App. 1998) (dismissing tortious interference and defamation claims pursuant to the ecclesiastical abstention doctrine).[5]

In addition, TST answers Defendants' point that TST has not alleged any damages relating to the Allies page not by identifying any factual allegations relating to damages, but by pointing to its conclusory statement it has suffered damages. Response at 11 (citing SAC ¶ 89). "The court, however, need not accept as true a legal conclusion presented as a factual allegation." *Kische USA, LLC v. Simsek*, No. C16-0168JLR, 2016 WL 6273261, at *2 (W.D. Wash., June 29, 2016). TST points to *Kische* for the proposition that damages do not need to be plead with specificity. However, they *do* require at least *some* factual basis. For example, in *Kische* the court found that the factual allegations that the plaintiff lost business relationships with suppliers and major retail clients was sufficient to allege damages. *Id.* at *10. Here, TST has not pled any such facts relating to damages for Defendants' use of the Allies page, *e.g.*, it has not alleged that it lost members or

---

[5] As noted in the Motion to Dismiss at 16, n. 6, TST's tortious interference claim as to the Chapter page also fails because TST has not alleged that its relationship with the Chapter page has been terminated. TST has not disputed this point.



1    lost income related to the use of the Allies page. Without any factual allegations in support of

2    damages, the mere conclusory statement that it has been damaged is not enough. *Ashcroft v. Iqbal,*

3    556 U.S. 662, 678 (2009). This is particularly true for TST's conclusory statement that it suffered

4    reputational damages as such damages must be pled with particularity. *Kische*, 2016 WL 6273261,

5    at *7 ("Injury to a business's reputation or goodwill generally constitutes special damages and, as

6    such, must be pleaded with particularity;" dismissing claim for reputational damages where

7    plaintiff offered only "generalized, largely conclusory allegations of reputational injury").

8    **C.  TST's Conversion and Trespass Claims as to the Chapter Page are Moot**

9         TST does not allege damages for its trespass and conversion claims but instead only seeks

10   injunctive relief. SAC ¶ 99 ("Based on the foregoing, TST is entitled to injunctive relief in the

11   form of a permanent injunction enjoining Defendants from accessing any of TST's "protected

12   computers" under threat of contempt, an order to return TST's membership related documents and

13   destroy any copies thereof, and costs and attorney's fees to be computed after entry of the

14   decree."); ¶ 105 (not alleging any damages for the conversion claim but instead stating that both

15   the trespass to chattels and conversion claims should be decided in tandem). Pursuant to Article

16   III of the U.S. Constitution, TST has the burden of establishing that its claim for injunctive relief

17   is still a live controversy. Motion to Dismiss at 17-19. However, as to the injunctive relief for the

18   Chapter page, TST has failed to do so. TST does not deny that its requested injunctive relief

19   seeking return of the Chapter page has been moot for well over a year, when it regained

20   administrative control of the Chapter page. *See* SAC ¶ 4. Nor does TST point to any facts that

21   indicate it could be wronged again, such as facts showing that Defendants continue to have the

22   ability to access the Chapter page. *See* Response at 13. Thus, TST's conversion and trespass claims

23   as to the Chapter page are moot and must be dismissed.

24   **D.  TST's Fails to Allege Conversion and Trespass as to Documents and the Allies Page**

25        When property is provided to a bailee, a refusal to return property upon demand is required

26   for the bailee's retention of the property to become conversion or trespass. *Burton v. City of*

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 8

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

1  *Spokane*, 16 Wn. App. 2d 769, 771, 482 P.3d 968 (2021) (citing *Judkins v. Sadler-Mac Neil,* 61

2  Wn.2d 1, 5, 376 P.2d 837 (1962)); *Guar. Nat. Ins. Co. v. Mihalovich*, 72 Wn. 2d 704, 710, 435

3  P.2d 648 (1967) ("[I]f a bailee merely holds over after the end of the period for which the chattel

4  was bailed to him, he may be liable for a breach of contract, but he is not guilty of conversion or

5  of any other tort. He has not deprived the owner of the possession, for there is nothing to show that

6  the plaintiff may not have the chattel again whenever he desires it.") (quoting *Salmond on the Law*

7  *of Torts* (9th ed. 1936), s 78, p. 310). The same analysis applies to trespass to chattels claims, *i.e.*,

8  when a party is originally in rightful custody of property, he is not liable for trespass to chattels

9  unless, upon demand, he refuses to return the property. *See, e.g.*, *In re Alan Wood Steel Co.*, 2 B.R.

10  161, 163 (Bankr. E.D. Pa. 1980) ("When a bailee, originally in rightful custody of property,

11  wrongfully refuses to surrender the property *on demand* to the owner, an action either for the full

12  value (conversion) or for damages (trespass to chattels) will lie.") (emphasis added); *Zapata v.*

13  *Ford Motor Credit Co.*, 615 S.W.2d 198, 201 (Tex. 1981) ("A detention of personalty lawfully

14  obtained, *after demand*, is a wrongful act constituting a trespass.") (emphasis added). TST fails to

15  address the undisputed fact that this case involves a bailment. Specifically, TST does not dispute

16  the fact that the Defendants lawfully obtained possession of the membership documents and the

17  Allies page as councilors on TST's advisory council. TST also does not dispute that it has not

18  alleged that it ever asked Defendants to return either the membership documents or the Allies

19  page.[6] Absent any allegation that TST demanded return of the property and Defendants refused,

20  its conversion and trespass to chattels claims fail as a matter of law.[7]

21

22

23

24  [6] Nor has TST alleged that it asked Facebook to give it administrative privileges for the Allies page.

25  [7] Indeed, one the cases cited by TST, *Burton,* supports this point. In *Burton,* the police, who lawfully obtained a crime victim's property were sued by the victim's mother after the police refused to return the property after

26  repeated demands. The case illustrates that the demand/refusal was an essential element to turning the police's lawful possession of the victim's property into a potential conversion. This case differs significantly from *Burton* because TST has never alleged that it ever asked for the return of the property and that Defendants refused.

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

**E.  TST's FTDRA Claims Must be Dismissed[8]**

      **1.  TST Fails to Plead Facts Supporting the Alleged Use**

      TST explains that the essence of its FTDRA claim is that Defendants have a competing organization that is using TST's marks in the organization's name and that Defendants are using the Allies page to promote the organization in competition with TST. Response at 15. Defendants moved to dismiss the FTDRA claim because TST has failed to allege *any* facts in support of its conclusory assertion that such a competing organization exists and is using TST's marks in its name or otherwise. Motion to Dismiss at 20-22. TST completely fails to address this argument. Instead, TST simply repeats the same conclusory statement that there is a competing organization and, based on a third party's comment to a Facebook post, that it was initially planned to be named either "The Satanic Temple 2: Electric Boogaloo" or "Satanic Washington-Archived Temple Chapter." Response at 15; Motion to Dismiss at 20-22. TST does not point to a single factual allegation in the SAC that plausibly suggests that such an organization exists, *i.e.*, no facts as to when it was established, what type of organization it is, what its current name is, where it is located, who runs it, whether it has any members, etc.[9] Absent even a single alleged fact that would allow the Court plausibly to infer the existence of a competing organization that is using TST's marks to compete against it, TST's has failed adequately to plead that its marks are being used.

      **2.  TST Fails Adequately to Allege Commercial Use of Its Marks**

      TST has also failed adequately to allege that its marks are being used for a commercial purpose. The FTDRA expressly provides that any noncommercial use of a mark is not actionable as either dilution by blurring or tarnishment. 15 U.S.C. § 1125(c)(3)(C). TST does not address or dispute Defendants' argument that their alleged use of TST's mark for purposes of their critical commentary does not constitute a commercial use. Motion to Dismiss at 21-23. And indeed

---

[8] TST does not dispute that if the Court dismisses the CFAA and FTDRA claims there is no remaining basis for federal question jurisdiction over any remaining state law claims. Thus, if the Court dismisses the CFAA and FTDA claims, it should decline to exercise supplemental jurisdiction over any remaining state law claims.

[9] If a competing organization actually existed, TST would have undoubtedly included it as a party in this action.



ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

FTDRA expressly provides that use of marks for criticism is a fair use. 15 U.S.C. § 1125(c)(3)(A).[10] Instead, TST continues to loop back to its unsupported conclusory allegation that Defendants are running an organization that is competing with TST for donations, members, and merchandise sales and that this competition constitutes commercial use. Response at 16. Again, lacking a single factual allegation indicating the existence of a competing organization this argument is insufficient to establish commercial use.

### 3. TST Fails to Allege that It has a Famous Trademark in the Allies Page

In addition to not establishing the required elements of commercial use, TST also fails adequately to plead dilution by blurring or tarnishment. A dilution claim requires that (1) the mark is famous and distinctive; (2) the defendant is making use of the mark in commerce; (3) the defendant's use began after the mark became famous; and (4) the defendant's use of the mark is likely to cause dilution by blurring or dilution by tarnishment. "A mark is famous 'if it is widely recognized by the general consuming public of the United States as a designation of source of the goods or services of the mark's owner.'" *A.V.E.L.A., Inc. v. Estate of Marilyn Monroe*, 131 F. Supp. 3d 196, 215 (S.D.N.Y. 2015) (quoting 15 U.S.C. § 1125(c)(2)(A)). Courts have recognized that "the inclusion . . . of the phrase 'widely recognized by the general consuming public of the United States' 'was intended to reject dilution claims based on niche fame, *i.e.* fame limited to a particular channel of trade, segment of industry or service, or geographic region.'" *Solid 21, Inc. v. Jomashop Inc.*, No. 19-CV-1179 (MKB), 2020 WL 9816843, at *11 (E.D.N.Y. Nov. 30, 2020) (quoting *Luv N' Care Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 757–58 (S.D.N.Y. 2012)). Failure to allege facts that indicate that the mark is famous beyond a niche audience requires dismissal. *Id* (dismissing dilution claim for failing adequately to allege the mark was famous).[11]

---

[10] "The following shall not be actionable as dilution by blurring or dilution by tarnishment under this subsection: . . . (ii) identifying and parodying, criticizing, or commenting upon the famous mark owner or the goods or services of the famous mark owner."

[11] *See also, e.g.*, *Stroud v. Richmond*, No. 4:17-CV-01469-KAW, 2017 WL 3782700, at *2 (N.D. Cal. Aug. 31, 2017) (dismissing dilution claim for failing to allege that the mark was famous); *Wellnext LLC v. OVM LLC*, No.

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 11



ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

1    TST claims that the Allies page (entitled "TST WA Allies") bears TST's trademark and

2    that by using the Facebook page to sell products for a competing organization Defendants are liable

3    for dilution by blurring. Response at 16-17. However, in addition to alleging no facts to support

4    the existence of the alleged competing organization, TST does not identify what the alleged

5    trademark on the Allies page is (is it the name "TST WA Allies"?) and does not allege that the

6    unidentified trademark is famous or that it is famous beyond a niche audience. Without these

7    required allegations, TST's dilution claim fails as a matter of law. Further, the harm that TST

8    alleges for its tarnishment claim makes it clear that TST's true concern is that Defendants had the

9    audacity to criticize TST's practices and beliefs. TST argues that Defendants have harmed TST by

10   falsely associating TST "with ableism, misogyny, racism, fascism, transphobia, and the

11   endorsement of brutality, as well as political extremist organizations." Response at 18. (This is the

12   same allegation upon which TST based its dismissed defamation claim). However, the FTDRA

13   expressly provides that it does not apply to the use of a mark for criticism or commentary. 15

14   U.S.C. § 1125(c)(3)(A). TST has failed to adequately allege claims under the FTDRA.

**F.  TST Should not be Permitted to Amend.**

16   Liberality in granting leave to amend is subject to limitations, including undue prejudice

17   to the opposing party, bad faith by the movant, and futility. *Cafasso, U.S. ex rel. v. Gen. Dynamics*

18   *C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011). Further, "[t]he district court's discretion to

19   deny leave to amend is particularly broad where plaintiff has previously amended the

20   complaint." *Id.* TST has been allowed three bites at the apple through its original Complaint, its

21   First Amended Complaint, and its current Second Amended Complaint. TST has had more than

22   adequate opportunities to plead viable claims against Defendants. TST knows that Defendants

23   have limited financial means and its repeated attempts to fish for claims against them is nothing

24   more than an attempt to punish former members for their critical opinions. Enough is enough.

---

17-CV-62107, 2018 WL 7048129, at *5 (S.D. Fla. Feb. 16, 2018) (dismissing dilution claim for failure to allege beyond a conclusory statement that the mark was famous).

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 12


ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

1    DATED: July 2, 2021.

2                                         **ARETE LAW GROUP PLLC**

3                                         By:  */s/ Jeremy Roller*
                                          Jeremy E. Roller, WSBA No. 32021
4                                         1218 Third Avenue, Suite 2100
                                          Seattle, WA 98101
5                                         Phone:  (206) 428-3250
                                          Fax:  (206) 428-3251
6                                         jroller@aretelaw.com

7                                         *Attorneys for Defendants David Alan Johnson, Leah*
                                          *Fishbaugh, Mickey Meehan, and Nathan Sullivan*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 13

ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

1   **CERTIFICATE OF SERVICE**

2       I, Janet Fischer, certify that on July 2, 2021, I electronically filed the foregoing document

3   with the Clerk of the Court using the CM/ECF system, thereby sending a notification of such filing

4   to the following parties:

5
6       Benjamin Justus
        Lybeck Pedreira & Justus, PLLC
7       Chase Bank Building
        7900 SE 28th Street, Fifth Floor
8       Mercer Island, WA 98040
        (206) 687-7805
9       ben@lpjustus.com

10      Matthew A. Kezhaya
        Kezhaya Law PLC
11      1202 NE McClain Rd
        Bentonville, AR 72712
12      (479) 431-6112
        matt@kezhaya.law
13

14  DATED: July 2, 2021, at Seattle, Washington.

15

16                          */s/ Janet Fischer*
                            Janet Fischer
17                          Paralegal

18

19

20

21

22

23

24

25

26

REPLY IN SUPPORT OF
MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 14

ARÊTE LAW GROUP
1218 THIRD AVE, STE 2100
SEATTLE, WA 98101
O: (206) 428-3250