UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| United Federation of Churches, LLC (dba "The Satanic Temple"),<br><br>Plaintiff,<br><br>v.<br><br>David Alan Johnson (aka "ADJ"), Leah Fishbaugh, Mickey Meeham, and Nathan Sullivan,<br><br>Defendants. | No. 2:20-cv-00509-RAJ<br><br>PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION |

**I.     Introduction**

**COMES NOW** Plaintiff United Federation of Churches, LLC (dba "The Satanic Temple") (hereinafter "TST"), by and through counsel of record, with a response in opposition to Defendants' Rule 12(b)(1) motion to dismiss. The Court has diversity jurisdiction over the surviving state law claims. Complete diversity exists because both of TST's members are Massachusetts residents, whereas all Defendants are Washington residents. The amount in controversy exceeds $75,000 because a review of the permissible categories of damages suggests that a lawful verdict could issue for at least $435,901.44.

In the course of responding to this motion, TST found that a necessary party is missing. TST's non-profit entity (The Satanic Temple, Inc.) has suffered some of the harm alleged below. *See*

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 1

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

§§ H-J, below. As detailed in §§ L-M, the Court should join The Satanic Temple, Inc. as a plaintiff, or should grant leave to amend the complaint.

## II.   Argument

### A. Legal standards.

At issue is whether the Court has diversity jurisdiction. 28 USC § 1332; Fed. R. Civ. P. 12(b)(1). The question posed is whether it is "legally impossible" for a lawful verdict to issue in the jurisdictional sum when taking the good faith allegations of the complaint as true and giving TST the benefit of all reasonable inferences. *Geographic Expeditions, Inc. v. Est. of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010). Defendants' motion is a facial attack, *i.e.*, one not supported by any evidence to contest the allegations of the complaint; thus, no evidence is needed to defeat the motion. *See id.* (reversing a contrary finding). Instead, it is sufficient to state in good faith and subject to Rule 11 that TST expects the damages to exceed $75,000. *See id.* (pleading a "reasonable, good-faith belief that the damages exceed $75,000" was sufficient alone).

### B. Summary of damages.

To make a good-faith determination that it expects damages to exceed $75,000, TST considered the compensable injuries alleged in the complaint. Wright & Miller, 14AA Fed. Prac. & Proc. Juris. § 3702 (4th ed.). At issue are claims for: (1) tortious interference with business expectancy; and (2) conversion, or trespass to chattels. (Dkt. # 31). Those theories for relief entitle TST to various categories of damages, the sum of which could exceed $**435,901.44**. Particularly: the lost value of the Chapter website at the time of the tortious interference ($42,973.92); the lost value of the Allies website at the time of Defendants' tortious interference / conversion / trespass to chattels ($1,037.52); the not-in-good-faith improved value of the Allies website at the time of

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 2

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

judgment ($42,973.92-plus); profits that the Defendants wrongfully made arising out of the cause of action ($21,981-plus); TST's lost donations and lost profits because of the cause of action ($1-plus); TST's reputational damages because of the cause of action ($1-plus); TST's attorney's fees as consequential damages of correcting the reputational harm ($1-plus); and punitive damages ($326,926.08-plus)[1]. We substantiate each category under separate headers below.

### C. The parties have complete diversity.

Diversity jurisdiction requires "complete diversity," *i.e.*, all plaintiffs must be residents of different states from all defendants. *Watson v. Roff*, No. C21-1622 RSM, 2022 WL 374454, at *2 (W.D. Wash. Feb. 8, 2022) (citing *In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1234 (9th Cir. 2008)). TST's principals are both Massachusetts residents. *See* Dkt. 34. All Defendants are Washington residents. *See* Dkt. 26 (2d Am. Compl.), ¶ 6. Because all plaintiffs are diverse from all defendants, the complete diversity requirement is satisfied. Further, as detailed under separate headers below, TST has a good-faith basis to believe that compensable damages for the surviving claims will exceed $75,000.

### D. A lost value of the Chapter website award could issue for $42,973.92.

The lost value of the Chapter website is compensable through the surviving tortious interference claim. *See* Dkt. 31 at 24. The interference was *both* to the Chapter page and the Allies page. Id., at 23. In a tortious interference claim, damages include "pecuniary losses." Restatement (Second) of Torts § 774A(1)(a), cmt. *b* (1979); *see also Mut. of Enumclaw Ins. Co. v. Gregg Roofing, Inc.*, 178 Wash. App. 702, 315 P.3d 1143 (2013) (applying § 774A); *see also Dowd v. Iantosca*, 27 Mass. App. Ct. 325, 335, 538 N.E.2d 33, 38 (1989) (same).[2]

---

[1] As discussed in detail in §K below, punitive damages are available.

[2] There will be a conflicts of law problem regarding the issue of punitive damages. *See* infra, § K. This also raises

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 3

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1  Here, the direct out-of-pocket losses includes the lost value of the Chapter page at the time
2  of the interference. Preliminary estimates of the Chapter page valued it at $42,973.92 at the time
3  of interference. 2d Am. Compl., ¶ 77.

4  Defendants may object that TST was able to subsequently recover the page. 2d Am. Compl.
5  ¶ 4. But the collateral source rule prohibits the fact-finder from considering any mitigation TST
6  received from a third party. *Diaz v. State*, 175 Wash. 2d 457, 465, 285 P.3d 873, 878 (2012); *L.
7  v. Griffith*, 457 Mass. 349, 354–55, 930 N.E.2d 126, 131 (2010). The collateral source rule fur-
8  thers a policy that tortfeasors should bear the costs of their own conduct; and, if a windfall would
9  inevitably result from a judgment, the windfall is better assigned to the injured plaintiff than the
10 defendant who caused the injury. *Ibid.* Even though TST received the page back, TST is still
11 entitled to the value of the lost Chapter page at the time of interference because Defendants did
12 not return the page of their own volition. Thus, it is not impossible for a verdict to award TST
13 $42,973.92 to compensate TST for Defendants' interference with the Chapter website pursuant
14 to the tortious interference claim.

**E.  A lost value of the Allies website award could issue for $1,037.52.**

TST is also entitled to compensation for the value of the Allies page at the time of the tortious interference. Restatement (Second) of Torts § 774A(1)(a), cmt. *b* (1979); *Gregg Roofing*, *supra* (Washington has applied § 774A); *Dowd*, *supra* (so has Massachusetts). The same award is available through the conversion and trespass to chattels claims. Restatement (Second) Torts §§ 922, 927, 931 (1979); *Straka Trucking, Inc. v. Est. of Peterson*, 98 Wash. App. 209, 211, 989 P.2d 1181, 1183 (1999) (applying § 927); *Squeri v. McCarrick*, 32 Mass. App. Ct. 203, 209 n. 13, 588

---

a question of whether there are any conflicts of law problems beforehand. Where possible, we cite to Massachusetts authority to show that there appear to be no other conflicts.

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 4

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

1  N.E.2d 22, 26 n. 13 (1992) (same). The value of the Allies page was $1,037.52 at the time of the

2  interference/conversion. 2d Am. Compl., ¶ 77. An award for this sum could issue.

### F. A "bad-faith improved value" award could issue for $42,973.92-plus.

Not only is TST entitled to the value of the Allies page at the time of the conversion, TST is also entitled to the improved value of the Allies page at the time of judgment, providing that the Court finds either that the improved value was not the subject of a good faith mistake or that the Defendants were TST's agent. Restatement (Second) of Torts § 927, cmt. *f, j* (1979); *Straka*, above; *Crawford-Brunt v. Kruskall*, 489 F. Supp. 3d 1, 3 (D. Mass. 2020); *see also* Restatement (Second) of Torts at § 931(a), cmt. *b* and *d*; *Howard v. Edgren*, 62 Wash. 2d 884, 886, 385 P.2d 41, 42 (1963).[3]

Under § 927 cmt. *f*, any improvements the defendant makes to property are improvements to property which is rightfully owned by another; the rightful owner is entitled to the improvements, unless the defendant had a good faith basis to believe the property was not rightfully owned by another. Here, Defendants knew that the business relationship between TST and Facebook had value to TST (i.e., they did not mistake the Allies page for their own) because they publicly bragged that they "stole" the Allies page from TST. 2d Am. Compl., ¶ 48. Any improvements value the Defendants subsequently made to the Allies page are TST's rightful property.

Under § 927 cmt. *j*, any improvements a defendant-fiduciary makes to the property of their principal are rightfully owed to the principal as a breach of the fiduciary relationship. A "fiduciary" relationship is one where there is a duty for one to act for or give advice to the other on matters within the scope of the relationship. Restatement (Second) of Torts § 874, cmt. *a* (1979).

---

[3] TST could find no Massachusetts authority which agrees with or rejects the Restatement rule relied upon here. There is no apparent conflict of law.

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 5

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

An agent owes fiduciary duties to their principal. *Id.* In a breach of fiduciary duty case, the agent is liable to the principal for any wrongful profits arising out of the breach of fiduciary duty. *Id.*, cmt. *c*. Analogizing this, § 927 cmt. *j* proffers that any improved value an agent makes to property they took from their principal in violation of a breach of fiduciary duty is properly assigned to the principal.[4]

Here, Defendants' understanding of the Allies page uniquely arose from their agency relationship with TST. 2d Am. Compl., ¶¶ 17, 36. When they took their former principal's property, they did so in violation of their obligation to refrain from taking advantage of information entrusted to them as part of the agency relationship. Restatement (Second) of Agency § 387 (1958) (generally defining the duty of loyalty); *id.* § 393 (more specifically prohibiting an agent from competing with the principal "concerning the subject matter of his agency;" here, the "subject matter" included the Allies page).

As of this writing, the Allies page now sits at nearly 21,000 followers, which exceeds the Chapter page at the time of interference. *See* 2d Am. Compl., ¶ 30 (the Chapter page had a following of more than 17,000). The economic value of a social media account is directly related to its number of followers. *See* 2d Am. Compl., ¶ 77. Thus, it is not impossible for a verdict to lawfully award judgment for the improved value of the Allies page in excess of $42,973.92.

**G. A wrongful profits award could issue for $21,981-plus.**

TST is also entitled to recover the profits that Defendants wrongfully made in connection with their theft of the Allies page. Restatement (Second) of Torts § 927, cmt. *f* and *j;* § 931, cmt. *a* (1979) (addressing conversion and trespass to chattels, respectively); *Straka*, *supra*; *Kruskall*,

---

[4] If the Court finds that the absence of a claim for breach of fiduciary duty in the 2d Am. Compl. precludes this argument, it should grant leave to amend the complaint under Fed. R. Civ. P. 15.

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 6

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

*supra*. Defendants' purpose in stealing the Allies page was to divert donations from TST to Defendants' competitor organization. 2d Am. Compl., ¶ 78. By stealing the Allies page, they goaded this legal action and for the past two years have been operating a GoFundMe page, seeking public donations to help pay for their defense.[5] To date, that GoFundMe has raised $21,981. *See* **Exhibit 1 hereto**. That GoFundMe page is directly traceable to the Allies page because it is "pinned" as the first post any visitor sees.[6] *See* **Exhibit 2 hereto**; Dkt. 26-3 (2d Am. Compl., Exhibit 3) (what is now called "Evergreen Memes for Queer Satanic Fiends" began as the Allies page). Because some portion of these donations are traceable to the website, it is up to the factfinder to determine how much of these donations are compensable to TST. See Restatement (Second) of Torts § 548A, cmt. *a* (1977). It is not impossible for a jury to determine all of them are compensable, so this category is at least $21,981.

Defendants also market their competitor organization's online store through the Allies page, for which they presumably derive some amount of profit traceable to the Allies page. *See* https://www.facebook.com/queersatanic/about/ (linking to queersatanic.com):[7]

---

[5] https://www.gofundme.com/f/legal-fund-for-victims-of-satanic-temple1 (last visited June 5, 2022)

[6] https://www.facebook.com/queersatanic (last visited June 5, 2022)

[7] https://www.facebook.com/queersatanic (last visited June 5, 2022)

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 7

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

> **About**  See all
>
> Queer Satanic memes. We value liberty, bodily autonomy, and fighting unjust hierarchies. We oppose irrational, supernatural approaches to the world, I... See more
>
> 19,168 people like this including 8 of your friends
>
> 20,911 people follow this
>
> https://queersatanic.com/
>
> Send message
>
> queersatanic@gmail.com
>
> Religious Organization

In turn, that links to their competitor organization's online store.[8] Presumably, some portion of the profits from this store is traceable to the Allies page, so it is up to the factfinder to determine how much of those profits are compensable to TST. *See* Restatement (Second) of Torts § 548A, cmt. *a* (1977). But TST currently lacks any information about Defendants' online store to determine how profitable it, is or how much of the profits may be fairly traced to the Allies page. If this category is material to the Court's analysis, it should order jurisdictional discovery on the question. *See Read v. Moe*, 899 F. Supp. 2d 1024, 1028 (W.D. Wash. 2012) (jurisdictional discovery is appropriate where the information sought will aid the Court's analysis).

**H.  A lost donations and lost profits award could issue for $1-plus.**

TST is also entitled to an award of any lost donations or lost profits under each of the three surviving claims. Restatement (Second) of Torts § 774A, cmt. *c* and *d* (1979) (tortious interfer-

---

[8] https://www.redbubble.com/people/queersatanic/shop (last visited June 5, 2022).

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 8

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

ence); *id.*, § 927, cmt. *m* (conversion); *id.* § 931, cmt. *e* (trespass to chattels). Because of Defendants' actions, TST has lost a portion of its donation base. *See* 2d Am. Compl., ¶ 62 (as of the original complaint, more than two years ago, TST lost 20-30 members). TST will require an expert opinion to determine the precise amount of lost donations and lost profits proximately caused by Defendants' conduct. For a conservative estimate, we assume at least $1 will be provable at trial.

Originally, the complaint anticipated that the cause of action was primarily rooted in the Defendants' intentional trespass on TST's trademark rights (which are exclusively owned by United Federation of Churches, LLC). But this category of damages implicates the interests of TST's non-profit entity (The Satanic Temple, Inc.). The Court should either join The Satanic Temple, Inc. as a necessary party-plaintiff, or grant leave to amend the complaint to add The Satanic Temple, Inc. as a plaintiff. Fed. R. Civ. P. 19(a)(1)(A) (a party must be joined if "in that person's absence, the court cannot accord complete relief among existing parties."); Fed. R. Civ. P. 15(a)(2). This argument is further developed at § L, below.

### I. A reputational harm award could issue for $1-plus.

TST is also entitled to an award of reputational harm under each of the three surviving claims. Restatement (Second) of Torts § 774A, cmt. *d* (1979) (tortious interference, providing that defendants reasonably expected the harm to result from the interference); *id.* § 927 cmt. *m* (same for conversion); *id.* § 931, cmt. *e* (same for trespass to chattels); *see also* Dkt. 31, at 23. Defendants not only "reasonably expected" TST to suffer reputational harm, they intended that harm. 2d Am. Compl., ¶¶ 45, 87-88. As with lost donations, an expert opinion is needed to evaluate the precise loss. For a conservative estimate, TST assumes at least $1 will be provable at trial.

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 9

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

As discussed in § H above, this category of damages implicates the interests of TST's non-profit entity (The Satanic Temple, Inc.). The Court should either join The Satanic Temple, Inc. as a necessary party-plaintiff, or grant leave to amend the complaint to add The Satanic Temple, Inc. as a plaintiff. This argument is further developed at § L, below.

**J. A consequential damages award for attorneys fees could issue for $1+**

TST is also entitled to attorney's fees as consequential damages incurred in remedying the disparaging statements made by Defendants in connection with their wrongful use of TST's property. Restatement (Second) of Torts § 774A, cmt. *c* and *d* (1979) (tortious interference); *id.* § 927 cmt. *m* (same for conversion); *id.* § 931, cmt. *e* (same for trespass to chattels). More particularly, Defendants have been very busy in the past two years, using TST's Allies page to goad third parties into making provably false statements about TST which have a tendency to diminish TST's reputation.[9] *See also* 2d Am. Compl., ¶ 89.

As a direct and foreseeable consequence of Defendants' misuse of TST's property, TST has incurred and will continue incurring legal fees to vindicate its reputation in the public sphere. *See The Satanic Temple, Inc. v. Newsweek Magazine LLC et al.*, no. 1:22-cv-1343 (S.D.N.Y. 2022); compare Restatement (Second) of Torts § 435B, Illustration 2 (1965) (the unintentional consequence of an intentional violation may still be compensated). For a conservative estimate, TST assumes at least $1 will be provable at trial.

---

[9] E.g. Julia Duin, *Newsweek*, "Orgies, Harassment, Fraud: Satanic Temple Rocked by Accusations, Lawsuit" (October 29, 2021); https://www.newsweek.com/orgies-harassment-fraud-satanic-temple-rocked-accusations-lawsuit-1644042 (last visited June 6, 2022); Iilluminaughtii, *YouTube*, "Is The Satanic Temple Really An Arbiter for Justice?" https://www.youtube.com/watch?v=wHxu_fMXHNI (last visited June 6, 2022); thesatanichousewife, TikTok "#TST cannot save your #abortion rights!" https://www.tiktok.com/@thesatanichousewife/video/7094299391112138030 (last visited June 6, 2022).

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 10

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

As discussed in § H above, this category of damages implicates the interests of TST's non-profit entity (The Satanic Temple, Inc.). The Court should either join The Satanic Temple, Inc. as a necessary party-plaintiff, or grant leave to amend the complaint to add The Satanic Temple, Inc. as a plaintiff. This argument is further developed at § L, below.

**K.  A punitive damages award could issue for $326,926.08-plus.**

Last, TST is also entitled to an award of punitive damages. Doubtlessly, Defendants will object that Washington law precludes a punitive award unless a statute authorizes it. This creates a conflicts of law problem that must be resolved first. First TST addresses why Massachusetts law controls.  Then TST explains why a verdict could award at least $326,689.08 in punitive damages.

**1.  Washington conflict of law principles apply.**

The punitive damages question raises a conflict of law problem, *i.e.*, one where the end result is different under two States' laws. *Woodward v. Taylor*, 184 Wash. 2d 911, 917, 366 P.3d 432, 435 (2016). The rule is to apply the forum State's law to determine whether a particular legal issue should be considered under the law of another State. *Bryant v. Wyeth*, 879 F. Supp. 2d 1214 (W.D. Wash. 2012); *Woodward v. Taylor*, 184 Wash. 2d 911, 917–19, 366 P.3d 432, 435–36 (2016). A conflict exists if an issue (here, the *quantum* of judgment) is different under the laws of two different States. *Woodward*, 184 Wash. 2d at 917. For tort cases, that requires a heavy reliance on the Restatement (Second) of Conflicts of Laws (1971). *Woodward*, at 915.

The conflicts of law problem arises here because Washington's public policy precludes punitive damages absent an authorizing statute. *Kammerer v. W. Gear Corp.*, 96 Wash. 2d 416, 421, 635 P.2d 708, 711 (1981). Massachusetts, on the other hand, permits punitive damages where the factfinder finds the conduct was caused by "the defendant's evil motive or his reckless

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 11

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

indifference." Restatement (Second) of Torts § 908 (1979); *Tryon v. Massachusetts Bay Transportation Auth.*, 98 Mass. App. Ct. 673, 686, 159 N.E.3d 177, 189 (2020).

The Court of Appeals of Washington has addressed a conflicts of law in the first instance. *Williams v. Leone & Keeble, Inc.*, 170 Wash. App. 696, 285 P.3d 906 (2012). It involves a two-part test, addressed in sequence below under separate headers. *Williams*, 170 Wash. App. at 705. The first prong resolves the interests between the States; the second prong resolves the interests between the parties.

**2. The Section 6 test strongly favors applying Massachusetts law.**

The first prong resolves the States' respective interests in this dispute by applying the seven-factor "Section 6" test. *Williams*, 170 Wash. App. at 705; Restatement (Second) of Conflict of Laws § 6(2)(a)-(g) (1971). Each factor is detailed below but, to summarize, the test strongly favors Massachusetts with a score of 5-1-1; or, if the Court finds that factor 2 is neutral, 4-2-1.

*First*, the Court should consider which State has greater needs on the issue. *Id.* The remedy is at issue, and Massachusetts has the greater interest in providing TST a remedy because TST is headquartered there. This factor weighs in favor of Massachusetts.

*Second*, the Court should ask if the forum State has *any* interest on the matter; if so, this factor is neutral. Restatement (Second) of Conflict of Laws § 6(2)(a)-(g), cmt. *e*. On the narrow issue of remedy, Washington has no interest on the matter. But it is fair to point out that Washington has a public policy to protect Defendants from the consequences of their evil motive absent an authorizing statute. This factor either weighs in favor of Massachusetts, or it is neutral.

*Third*, the Court should try to apply the general rule among the several States. *Id.*, cmt. *f*. Massachusetts is among the consensus of the several States in its willingness to award punitive

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 12

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

damages. See Restatement (Second) of Torts § 908 (1979). This factor weighs in favor of Massachusetts.

*Fourth*, the Court should apply the law that most protects justified expectations. Restatement (Second) of Conflict of Laws § 6(2)(d). In tort, all parties are presumed to be acting without giving thought to the legal consequences of their conduct or to the law that may be applied. *Id.*, cmt. *g*. This is neutral.

*Fifth*, the Court should apply the law of the State with the better rationale. *Id.*, cmt. *h*. Massachusetts has the better rationale because it best furthers the irreducible purpose of the civil courts to provide a remedy for private wrongs. U.S. Const. Amend. I ("Congress shall make no law…abridging…the right of the people…to petition the Government for a redress of grievances.") The purpose in having public remedies for private wrongs is to induce injured parties and their clan to seek relief from courts rather than resorting to violent means of self-help. Restatement (Second) of Torts § 901, cmt. *c* (1979). Punitive damages not only deter defendants from engaging in wrongful conduct, they deter plaintiffs from engaging in violent retribution in kind. *Id.*

States that provide for punitive damages posit that a given harm is made worse when the defendant intended to cause the harm. Punitive damages are there to deter an evil intent. Washington disagrees with the premise of the common consensus, positing instead that courts are there to provide a remedy for the wrong; and, if punishment is to be done, then it should be done through the criminal courts.

This point should go to Massachusetts. Washington's framework uses an axe to do the job of a scalpel. The factfinder will hear evidence and determine whether *these* Defendants caused *this* harm with an evil intent. There are even legal challenges Defendants can raise to the amount of

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 13

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

punitive damages. It is most efficient to resolve the societal harm caused by Defendants' actions in a single case, presented by these parties, because these two parties have the greatest competing interests in the question.

*Sixth*, the Court should consider which State's law furthers certainty, predictability, and uniformity of result. *Id.*, cmt. *i*. People know that stealing is bad. That isn't just a heady proposition of property law, it's a basic moral tenet. People know that society deters stealing by punishing thieves. Punitive damages further the general societal preference to punish thieves. This factor weighs in favor of Massachusetts.

*Seventh*, the Court should apply the law of the State that has easier law. This point goes to Washington.

In summary, Massachusetts has a supermajority of the points on the first prong. TST submits that there is no need for the Court to discuss "prong two" when disposing of the motion because the first prong should leave no doubt that Massachusetts law controls. *Williams*, 170 Wash. App. at 705. We include briefing on prong two so the Court can have full briefing on the issue.

**3. The applicable Restatement test also favors applying Massachusetts law.**

The second prong resolves the issue through the lens of the parties' dispute. *Williams*, 170 Wash. App. at 706; Restatement (Second) of Conflict of Laws § 145 (1971). The test involves addressing four factors. Restatement (Second) of Conflict of Laws § 145(2) (1971). Each is discussed in turn, but the final score will strongly favor Massachusetts, at 3-1-0. Depending on the second factor, the single point is either neutral or it favors Washington.

*First*, the Court should determine the law of the State where the injury occurred. *Id.*, cmt. *e*. In turn, that requires applying different tests depending on the kind of harm. *Id.*, at §§ 146-155.

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 14

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

At issue are property wrongs (stolen property, and all pecuniary damages therefrom) and personal wrongs (reputational harm). The applicable tests refer back to the "Section 6" test, which we resolved above to be strongly in favor of Massachusetts. Restatement (Second) of Conflict of Laws §§ 147, 150 (1971); *see also id.* § 146. This point goes to Massachusetts.

*Second*, the Court should determine which State's law applies to the conduct that caused the injury; particularly if the rule involved is to deter misconduct, but not if it encourages defendants to conduct their activities in a State whose tort rules are favorable. *Id.*, at § 145(2)(b), cmt. *e*. The first and second clauses suggest this point should go to Washington, but the third clause suggests it should go to Massachusetts because Defendants could have just as easily stolen any other Congregation's[10] page. This point is either neutral, or goes to Washington.

*Third*, the Court should balance the domicil, residence, nationality, place of incorporation and place of business of the parties. Id. Issues of residency are particularly important where the harm is felt in several states, where the harm is financial in nature, and where the plaintiff does little or no business in the forum state. Id., cmt. *e*. TST suffered reputational losses in states other than Washington and Massachusetts. 2d Am. Compl. ¶ 13. TST complains of pecuniary losses. 2d Am. Compl. ¶ 78. And TST's business in the forum State is limited to one of very many Congregations. 2d Am. Compl. ¶ 13. All three clauses favor Massachusetts, so point to Massachusetts.

*Fourth*, the Court should apply the law of the State where the relationship, if any, between the parties is centered. Restatement (Second) of Conflict of Laws § 145, cmt. *e* (1971). Where there is a multistate reputational injury or multistate financial loss, the plaintiff's domicile is the

---

[10] During this litigation, TST has reorganized its administrative structures. "Chapters" are now "Congregations."

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 15

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

1  "single most important contact for determining the state of applicable law." *Id.*, cmt. *f*. The
2  agency relationship between the parties was subject to centralized control in Massachusetts. 2d
3  Am. Compl. ¶ 13. And, Defendants' purpose in stealing TST's websites was to form a competitor
4  organization and to harm TST's reputation and bottom line *everywhere*, not just in Washington.
5  2d Am. Compl., ¶¶ 45, 87-88. This point goes to Massachusetts.

6  In summary, Massachusetts has a supermajority of points under prong two and benefits from
7  "the most important contact," which is the plaintiff's domicile. Because both prongs of the test
8  strongly favor applying Massachusetts law, a lawful judgment for punitive damages can issue.

**4. Availability of punitive damages.**

Punitive damages are available wherever the jury finds that the injury is "outrageous, because of the defendant's evil motive or his reckless indifference." *Tryon*, 98 Mass. App. Ct. at 686. They are available in any measure, subject to a due process challenge based on (1) the degree of reprehensibility; (2) the ratio of the punitive award to the actual harm; and (3) similar civil or criminal penalties for comparable misconduct. *Clifton v. Massachusetts Bay Transp. Auth.*, 445 Mass. 611, 623, 839 N.E.2d 314, 323 (2005) (applying *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 116 S. Ct. 1589, 134 L. Ed. 2d 809 (1996)).

*First*, Defendants engaged in their culpable conduct with the highest degree of reprehensibility. They purposefully took advantage of a position of trust to cause financial and reputational harm to their former principal and to create a competitor organization.

*Second*, without reducing the constitutional concern into a "simple mathematical formula" *Gore*, 517 U.S. at 582, quadruple the harm seems to be "close to the line." *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 425, 123 S. Ct. 1513, 1524, 155 L. Ed. 2d 585 (2003).

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 16

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255   Fax 206-230-7791

*Third*, triple damages are available as a sanction in the similar misconduct of a dilution claim. *See* 15 USC § 1125(c). We are mindful that the Court rejected application of the dilution claim, but the test only requires that the sanction be "similar." The dilution claim is similar because, as here, it involves a defendant's unprivileged use of the plaintiff's intellectual property which causes harm to the plaintiff's business interests. If the Court is unpersuaded on this point, the *Gore* Court which notes that a 700-year study suggests that triple damages is the normal punitive award. *Gore*, 517 U.S. at 559, f. 33; (citing David G. Owen, *A Punitive Damages Overview: Functions, Problems and Reform*, 39 Vill. L. Rev. 363 (1994)).

For sake of simplicity, and subject to subsequent refinement, we apply a punitive award not in excess of 3x the compensatory damages detailed above. As detailed above, it is not-impossible for the sum of compensatory damages to exceed $108,972.36. Multiplying the compensatory damages by three yields $326,926.08. A lawful verdict could award that punitive sum to TST.

**L. A motion is forthcoming to add The Satanic Temple, Inc. as a plaintiff.**

As alluded to at §§ H-J, above, researching and writing this response led TST to find that a necessary party-plaintiff is missing. *See* Fed. R. Civ. P. 19(a)(2). Defendants' complained-of wrongful conduct caused The Satanic Temple, Inc. to lose income, suffer compensable reputational harms, and suffer consequential damages in the form of attorneys fees in rectifying the reputational harms. Because The Satanic Temple, Inc. is not currently a plaintiff, the Court cannot afford complete relief among the existing parties. *Id.* Joinder is required, and it would not defeat complete diversity because The Satanic Temple, Inc. is a Massachusetts resident for purposes of the diversity statute. *Id.* The Court should grant leave to amend. Fed. R. Civ. P. 15(a)(2).

Counsel for TST raised this issue to opposing counsel as soon as it became apparent that The Satanic Temple, Inc. was a necessary party, requesting that Defendants consider stipulating to a

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 17

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA 98040
206-230-4255 Fax 206-230-7791

third amended complaint. Defense counsel responded with an objection to timeliness. But, absent an argument that the applicable statutes of limitations have passed or that there is no good cause to amend the scheduling order, there is no ground for a timeliness objection.

The limitations periods for claims arising from the Chapter and Allies pages have not run. *See* RCW 4.16.080 (all three surviving claims are subject to a three-year statute); *Woods View II, LLC v. Kitsap Cnty.*, 188 Wash. App. 1, 20, 352 P.3d 807, 816 (2015) (tortious interference); *Crisman v. Crisman*, 85 Wash. App. 15, 18, 931 P.2d 163, 165 (1997) (conversion); *Woldson v. Woodhead*, 159 Wash. 2d 215, 219, 149 P.3d 361, 363 (2006). The *Woldson* Court explains that TST has a new tort claim for every day that Defendants continue trespassing on TST's property rights. *Id.* The three-year statute only bars recovery of damages more than three years before the complaint, it does not bar the complaint in full. *Id.*

And there being no scheduling order, there is no need to argue "good cause" to amend the scheduling order. The Court should freely grant leave to amend as justice requires. Compare Fed. R. Civ. P. 16(b)(4), 15(a)(2) ("good cause" is required to amend the scheduling order, not to amend the complaint). Justice requires an amendment because a necessary plaintiff is missing. If the Court denies leave to amend, that will require the courts to handle two lawsuits instead of one.

The rules permit Defendants to file multiple motions to dismiss, but not to complain that it is taking too long to resolve their piecemeal objections. They are free to develop a laches defense on the merits, but a timeliness objection to a third amended complaint would be unfounded for a case which remains at the pleadings stage. *See* Fed. R. Civ. P. 15(a)(2). Because LCR 15 requires a proposed amended complaint, this section is intended to simply apprise the Court that the motion is unavoidable and forthcoming.

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 18

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

**M. The Court should grant jurisdictional discovery or leave to amend.**

If, for any reason, the Court finds that the existing facts and analysis is insufficient to satisfy the diversity jurisdiction statute, the Court should grant jurisdictional discovery on the question of Defendants' wrongful profits and grant leave to amend the complaint to more adequately detail the amount of damages and the grounds therefor. *Read*, *supra*, 899 F. Supp. 2d at 1028; Fed. R. Civ. P 15(a)(2).

At the time of the original Rule 7.1 statement, TST anticipated the complaint would proceed on federal question jurisdiction. Now that TST alleges diversity jurisdiction, TST has filed a supplemental statement. No leave is required to supplement the statement. Fed R. Civ. P 7.1(b)(2). If the Court finds that leave was required, the Court should grant leave to amend the Rule 7.1 statement.

### III.   Conclusion

For the reasons discussed above, TST respectfully requests that this Court find that there is complete diversity for the reasons in § C; find that the amount in controversy exceeds $75,000 for the reasons in §§ D-K; grant leave to amend the complaint if the Court deems it necessary and appropriate as detailed in §§ L-M; and deny Defendants' Rule 12(b)(1) motion in its entirety.

Respectfully submitted this 6th day of June, 2022.

LYBECK PEDREIRA & JUSTUS, PLLC

By: */s/ Benjamin Justus*
Benjamin Justus (#38855)
Attorneys for Plaintiff
Chase Bank Building
7900 SE 28th St., Fifth Floor
Mercer Island, WA 98040
206.687.7805 /phone  206.230.7791 /fax
ben@lpjustus.com / email Justus

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 19

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791

And: */s/ Matthew A. Kezhaya*
Matthew A. Kezhaya (AR#2014161), admitted *pro hac vice*
Attorney for Plaintiff
Kezhaya Law PLC
1202 NE McClain Rd
Bentonville, AR 72712
479.431.6112 /ph 479.282.2892 /fax
matt@kezhaya.law / email Kezhaya

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of June, 2022, I electronically filed PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS SECOND AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties of record. Signed in Seattle, Washington, on the 6th day of June, 2022. *s/ Benjamin Justus*

RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF SUBJECT JURISDICTION - 20

No. 2:20-cv-00509-RAJ

Lybeck Pedreira & Justus PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA  98040
206-230-4255  Fax 206-230-7791