The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED FEDERATION OF CHURCHES, LLC d/b/a THE SATANIC TEMPLE,<br><br>Plaintiff,<br><br>v.<br><br>DAVID ALAN JOHNSON, an individual; LEAH FISHBAUGH, an individual; MICKEY MEEHAM, an individual; and NATHAN SULLIVAN, an individual,<br><br>Defendants. | No. 2:20-cv-00509-RAJ<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**<br><br>NOTED ON MOTION CALENDAR:<br>**June 10, 2022** |

DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS
No. 2:20-cv-00509-RAJ

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

## I.   INTRODUCTION

In its Response to Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction ("Motion"), Plaintiff, United Federal of Churches, LLC, d/b/a The Satanic Temple ("TST"), does not deny either ground for dismissing its Second Amended Complaint ("SAC"). TST does not address or even mention the arguments Defendants presented as to why this Court should decline to exercise supplemental jurisdiction over TST's remaining state law claims. Thus, these arguments are conceded.

TST also does not deny that it failed to plead diversity jurisdiction in its SAC. Specifically, TST does not deny that its SAC does not allege that there is diversity among the parties or that its claims meet the required amount in controversy. TST simply ignores this fatal pleading failure. Instead, without seeking leave to amend, TST essentially attempts to amend its SAC by asserting for the first time that diversity exists and that it has additional, unalleged damages that push the amount in controversy over $75,000. TST's belated assertions regarding diversity and the amount in controversy should not be considered. Because TST failed to plead diversity in its SAC, the analysis in this facial jurisdictional challenge ends and TST's claims should be dismissed for lack of subject matter jurisdiction.

Even if the Court were inclined to look beyond TST's failure to plead diversity, TST's belated assertion of additional damages does not cure the lack of subject matter jurisdiction. TST's newly asserted damages are not made in good faith, as demonstrated by TST's counsel's representation to Defendants' counsel that TST did not have $75,000 in damages, as well as TST's counsel's public statements revealing bad faith in asserting additional damages, including a public statement that he needs to "come up with" damages to survive this Motion and a public statement that he hopes the attorneys' fees in this case "squeeze[] every last penny from you living corpses [referring to Defendants], and anyone that gives [Defendants] the time of day." Declaration of Jeremy Roller ("Roller Decl.") ¶¶ 3, 5 & Exs. 1, 3.

DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 1

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

Further, as a matter of law, TST is not entitled to newly asserted punitive damages under Washington law. Similarly, TST's baffling new assertion of "bad-faith improved value" damages is also invalid due to entirely contradictory allegations in its SAC. TST is also precluded from seeking its newly asserted damages for wrongful profits based on breach of a fiduciary duty because it has not pleaded a fiduciary relationship or breach of a fiduciary duty and because these "profits" (which in reality are donations to assist Defendants in defending against this abusive litigation) are not tied to Defendants' few surviving state law claims.

In short, TST has not, and cannot, plead diversity jurisdiction and it does not dispute that it is not appropriate to exercise supplemental jurisdiction over its state law claims. This matter should be dismissed.

## II.     ARGUMENT

### A.  TST Does not Dispute That This Court Should Decline to Exercise Supplemental Jurisdiction.

Defendants' Motion explains why, given that TST's federal claims have been dismissed, this Court should decline to exercise supplemental jurisdiction over TST's remaining state common law claims. Motion at 6-9. TST does not address or even mention these arguments in its Response. Defendants' arguments for declining supplemental jurisdiction therefore are conceded. *Texas v. United States*, 49 F. Supp. 2d 27, 31 (D.D.C. 2014) ("[T]he failure to respond to an opposing party's arguments results in waiver as to the unaddressed contentions.").

### B.  TST Does not Deny That it has Failed to Plead Diversity Jurisdiction.

Defendants' Motion sets forth the clear, facial barrier to this Court's exercise of diversity jurisdiction over TST's remaining state law claims—TST did not plead diversity jurisdiction or the factual basis for diversity jurisdiction in its SAC. Motion at 4-6. Specifically, TST does not allege diversity jurisdiction exists under its "Jurisdiction and Venue" statement in the SAC. SAC ¶¶ 5-7. Nor does TST allege anywhere in the SAC that the parties are diverse or that its claims meet the required amount in controversy threshold. "Because federal courts are of limited jurisdiction, there is a presumption against the existence of diversity jurisdiction." *Loughlin v.*

DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 2

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

*United States*, 393 F.3d 155, 171 (D.C. Cir. 2004) (quoting *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 792 (D.C. Cir. 1983) (internal citations omitted)). Accordingly, the party seeking to invoke diversity jurisdiction bears the burden of pleading the required elements for such jurisdiction. Stated another way, for a court to exercise diversity jurisdiction, a plaintiff must plead diversity jurisdiction, including the diversity of the parties and the required amount in controversy. When a plaintiff fails to plead diversity, the court cannot exercise diversity jurisdiction. *Rilling v. Burlington N. R. Co.*, 909 F.2d 399, 400-01 (9th Cir. 1990) ("Since [Rilling] made no allegations in the complaint respecting the citizenship of [Burlington] or the dollar value of the amount in controversy, the district court could not properly exercise diversity jurisdiction over [his] claim."); *Citizens Comm. to Save Land Grant Railroads v. Burlington N., Inc.*, 708 F.2d 1430, 1435 (9th Cir. 1983) ("Since the plaintiffs made no allegations in the complaint respecting the citizenship of [defendant] or the dollar value of the amount in controversy, the district court could not properly exercise diversity jurisdiction over the bond-related claim. Moreover, since the district court concluded that all other causes of action raised by plaintiffs that were allegedly based on federal law were either insubstantial or not within the district court's jurisdiction, the district court properly exercised its discretion to refuse pendent jurisdiction over claims of violation of the bond indenture based on state law."); *Schlesinger v. Councilman*, 420 U.S. 738, 745, n.9, 95 S. Ct. 1300, 1306, 43 L. Ed. 2d 591 (1975) ("[A] complaint under § 1331 is fatally defective unless it contains a proper allegation of the amount in controversy . . . ."); *Fukuda v. Wong*, CV 19-00661 ACK-WRP, 2020 WL 110746, at *2 (D. Haw., Jan. 9, 2020) (plaintiff cannot invoke diversity jurisdiction when plaintiff fails to adequately plead in his complaint the diverse citizenship of the parties and the required amount in controversy).

      TST does not deny that it did not plead diversity jurisdiction in its SAC, including failing to allege complete diversity or that its claims meet the required amount in controversy. Instead of demonstrating why its SAC adequately pleads diversity, TST ignores its faulty SAC and, without seeking leave to amend (other than announcing its intention to seek leave to amend to add a new

DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 3

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

party—not allegations as to damages), it asserts in its Response *entirely new contentions and types of damages*. Specifically, unlike the SAC, in its Response TST alleges *for the first time*, that the parties are diverse. Response at 1, 3. It also asserts *for the first time* entirely new types and amounts of damages, such as punitive damages. As a matter of law, in a facial challenge to its SAC, TST cannot sidestep its fatal pleading errors and simply offer new allegations outside of the complaint. "The essential elements of diversity jurisdiction, including the diverse residence of all parties, must be affirmatively alleged in the pleadings." *In re Mexico City Aircrash,* 708 F.2d 400, 404 n. 4 (9th Cir. 1983). Where the plaintiff originally files in federal court, "the amount in controversy is determined from the face of the pleadings." *Crum v. Circus Circus Enterprises*, 231 F.3d 1129, 1131 (9th Cir. 2000). The allegations within the four corners of TST's SAC control, and TST does not deny that its SAC fails to allege diversity jurisdiction. Accordingly, as a matter of law, this Court lacks diversity jurisdiction over this case under 28 U.S.C. § 1332.

**C.    TST's new Unpled Damages Contentions are not in Good Faith and Fail as a Matter of Law.**

When determining the amount in controversy, the starting point is the amount pled in the complaint. "The general federal rule has long been to decide what the amount in controversy is from the complaint itself, unless it appears or is in some way shown that the amount stated in the complaint is not claimed 'in good faith.'" *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 353, 81 S. Ct. 1570, 1573, 6 L. Ed. 2d 890 (1961). Here, the good faith analysis starts with the SAC. In the SAC, TST alleges far less than $75,000 in damages for its (only surviving) common law claims. That amount controls. TST is now contradicting its own SAC by asserting new unpled (and legally baseless) damages. Setting aside that the only damages that matter are those pled in the SAC, this attempted about-face plainly indicates the absence of good faith.

    **1.    TST's Attorney Represented That TST Does not Have the Requisite Damages for Diversity Jurisdiction.**

Based on the allegations in the SAC, TST's counsel's representations in the pre-Motion meet-and-confer, as well as public statements by TST's counsel, TST's belated attempt to allege

DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 4

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

new damages in its Response plainly is not in good faith. In the SAC, the only damages TST alleges for its common law claims are $33,689.70 for alleged misappropriation of the "Chapter" Facebook page, $1,037.52 for alleged misappropriation of the "Allies" Facebook page, and $8,246.70 for hypothetical damages that *could have* occurred *if* Defendants had appropriated Plaintiff's Twitter account, but which TST acknowledges Defendants did not do. SAC ¶ 77 & § IV(3). Even including the hypothetical damages for the Twitter account (which TST agrees was not appropriated), the total damages TST alleges for its common law claims is $42,973.92, far less than the required jurisdictional threshold of $75,000. *Id.*

Defendants' counsel confirmed with TST's counsel that TST did not have claimed damages sufficient for diversity jurisdiction. Prior to filing the Motion to Dismiss, Defendants' counsel conferred with TST's counsel regarding Defendants' plan to file its Motion. Roller Decl. ¶ 2. Despite that the SAC does not allege diversity jurisdiction, Defendants' counsel asked TST's counsel whether TST would be arguing for diversity jurisdiction and claiming damages in excess of $75,000. *Id.* In response, TST's counsel, Matthew Kezhaya, stated that TST could not claim damages in excess of $75,000, and instead would rely upon supplemental jurisdiction to attempt to avoid dismissal of this case from this Court. *Id.* TST's assertions of new damages in its Response directly contradict that representation—indicating that TST's assertions of new damages that exceed the jurisdictional amount are not in good faith, but rather are manufactured in an attempt to keep this dispute in this Court.

TST's counsel has also made public statements to TST's supporters that to defeat the Motion to Dismiss he needed to "come up with" $75,000 in damages, suggesting that the newly alleged damages are not true damages, but rather are only asserted to feign diversity jurisdiction and defeat this Motion. *Id.* ¶ 5 & Ex. 3 ("I need to come up with a credible justification that it is not-impossible [sic] a jury could legally award at least $75,000 in damages."). TST's counsel has also publicly stated he was shocked that Defendants had been forced to spend $80,000 in attorneys' fees in this case: "I can't believe you morons [*i.e.*, Defendants] have spent more than $80,000
DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 5

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

fighting to keep TST's Facebook page. You are pathetic." *Id.* ¶ 3 & Ex. 1. In other words, through this comment TST's counsel admits that the value of the case is far less than $80,000. He further has publicly explained that the reason he wanted to be in federal court with the now-dismissed federal claims was to maximize damages and collect attorneys' fees. *Id.* ¶ 4 & Ex. 2 ("I wanted some federal statutes to apply because that would maximize TST's damages, would keep us in Federal court (as opposed to State court), and provided the option to collect attorney's fees for having to litigate this."). This, too, suggests that TST's newly asserted damage contentions are merely pretextual for the purpose of trying to remain in federal court.

TST's attorney has also made public statements reflecting the absence of good faith in pursuing this matter—referring to Defendants as "morons" and "pathetic" and stating his hope that they incur an unsustainable amount of attorneys' fees in defending against this matter. *Id.* ¶ 3 & Ex. 1 ("I hope he [Defendants' attorney] squeezes every last penny from you living corpses, and anyone that gives you the time of day."). Against this background, TST plainly is not asserting its newly alleged damages in its Response in good faith. Setting aside that TST has failed to *plead* damages in excess of $75,000, and instead is merely asserting such (implausible) damages in response to this Motion, assertions of the amounts are not in good faith—and the case must be dismissed—when "made solely for the purpose of obtaining federal jurisdiction." *Hamilton v. Hartford Accident and Indem. Co.*, 425 F. Supp. 224, 226 (E.D. Pa. 1997) (citing *Arnold v. Torccoli*, 344 F.2d 842 (2d Cir. 1965)); *see also Morales v. Allstate Texas Lloyds*, 410 F. Supp. 3d 816, 819-20 (S.D. Tex. 2019) ("[T]he sum demanded in good faith in the initial pleading shall be deemed to be the amount in controversy."). Even if this Court ignores that TST's new damages are unpled (as described above) and fail as a matter of law (as described below), the pleadings do not control the amount in controversy when "made in bad faith." *Cavazos v. Allstate Vehicle & Prop. Ins. Co.*, No 7:17-CV-368, 2017 WL 11317904, at *2 (S.D. Tex., Dec. 12, 2017) (in removal context).

DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 6

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

**2. TST's Newly Asserted Damages are not Credible and Fail as a Matter of Law.**

TST's Response asserts for the first time over $392,927 in new damages that are not included in its SAC, including punitive damages of over $326,926 (Response at 3 and at Section II.K), a "bad-faith improved value" of the Allies Facebook page of over $42,973 (Response at 2-3, 5-6), lost donations and lost profits of $1 or more (Response at 3, 8-9), reputational damages of $1 or more (Response at 3, 9-10), and attorneys' fees as consequential damages of correcting reputational harm in the amount of $1 or more (Response at 3, 10-11). None of these newly asserted damages are credible or viable as a matter of law.

In considering these apparitional damages, the alleged conduct and claims should be considered. TST's common law claims for trespass, conversion, and tortious interference are based on Defendants' alleged use of two Facebook pages. TST alleges that Defendant Johnson, who was the administrator of TST's Washington Chapter Facebook page, improperly posted content that was critical of TST for two months in 2020 before Facebook removed Johnson as the administrator of the page at TST's Washington's Chapter's request. SAC ¶¶ 51-66 & Ex. 2. TST alleges that it lost between 20 and 30 members because of Johnson's critical posts during the two-month period. *Id.* ¶ 62. TST also alleges that Defendants wrongfully used a Facebook page originally called "TST WA Allies," which facilitated communications with individuals who did not want to identify as TST members, but who were interested in TST. SAC ¶ 32. Defendants changed the name of the TST Allies Page to "Evergreen Memes for Queer Satanic Friends [sic, Fiends]" on March 14, 2020, renounced affiliation with TST, and began posting content critical of TST. *Id.* ¶¶ 44-48, TST does not allege that it has ever sought the return of the Allies page. TST originally alleged $42,973.92 in damages for its common law claims based on this alleged conduct, and now, in its Response, suddenly claims nearly ten times that in additional damages.

   **a.  Punitive Damages are Barred on Washington Common Law Claims.**

TST's newly asserted claim for punitive damages should not be considered—not only because it is unpled, but also because Washington law plainly bars punitive damages for common

DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 7

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

law claims. As Washington's Supreme Court explained, "[s]ince its earliest decisions, this court has consistently disapproved punitive damages as contrary to public policy." *Dailey v. N. Coast Life Ins. Co.*, 129 Wn. 2d 572, 574, 919 P.2d 589, 590 (1996); *see also Pac. 5000, L.L.C. v. Kitsap Bank*, ___ P.3d ___, No. 55558-1-II, 2022 WL 2035630, at *7 (Wash. Ct. App. June 7, 2022) ("[U]nlike other states, Washington prohibits punitive damages as a matter of public policy unless expressly allowed by statute."). It is black letter law that TST's unalleged claim for punitive damages is not viable.

TST acknowledges this clear ban on punitive damages, but nonetheless asks the Court to sidestep it by applying Massachusetts law. TST's arguments hold no water. For a conflict of law analysis for tort claims, a court must determine which state has the "most significant relationship" to the issue. *Korslund v. Dyncorp Tri-Cities Servs., Inc.*, 121 Wn. App. 295, 334-35, 88 P.3d 966, 985 (2004), *aff'd*, 156 Wn. 2d 168, 125 P.3d 119 (2005); *Johnson v. Spider Staging Corp.,* 87 Wn.2d 577, 580, 555 P.2d 997 (1976). In a tort case, Washington courts examine the following contacts to determine which state has the most significant relationship:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Korslund*, 121 Wn. App. at 334-35, citing Restatement (Second) of Conflicts of Law § 145(2).

All these factors here point to Washington. Both the alleged injuries and the alleged conduct took place in Washington. TST itself states in its SAC that Defendants are Washington residents and their actions took place in Seattle, Washington. SAC at ¶ 6-7. The conduct at issue is the alleged misuse of two Facebook pages that are aimed at Washington audiences—TST's "Washington Chapter" page and TST's "WA Allies" page. The Washington Chapter page is described in by TST in the SAC as being for the purpose of disseminating information for what

DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 8

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

was, at the time, the Seattle Chapter (SAC ¶ 29), and the TST WA Allies page by its name ("WA Allies") is clearly targeted at a Washington audience. SAC ¶ 32. The alleged misconduct involves allegations that Defendants exceeded their authority as members TST's Washington Chapter's advisory council by posting critical content on the two Washington-focused Facebook pages. SAC ¶¶ 13-17, 39-68. This conduct, occurring in Washington, by Washington residents, involving a Washington organization (TST's Washington Chapter), and based on Defendants' conduct involving TST's Washington Chapter Facebook pages, is clearly connected to Washington.

The relationship between the parties also plainly was based in Washington State. The dispute, as described by TST in its SAC, at all times was between TST's "Washington leadership" or TST's "Washington Chapterhead," on one hand, and Defendants (residents of Washington) who are former members of TST's Washington Chapter, on the other. *See, e.g.*, SAC ¶¶ 41, 43, 44, & 49. In other words, the relationship was entirely Washington-based. There is not one reference to Massachusetts in the SAC. Indeed, in response to Defendants' motions to dismiss its common law claims, TST relied solely on Washington law.[1] *See* Response in Opposition to Motion to Dismiss (Dkt. No. 12) at 13 (relying upon Washington law); Response in Opposition to Motion to Dismiss SAC (Dkt. No. 28) at 9-14 (relying upon Washington law). Now, for the first time TST contends that one sole connection to Massachusetts—that TST's two LLC members, who were not an active part of this dispute, apparently live in Massachusetts—mandates application of Massachusetts law.[2] This one slim connection, unrelated to the conduct described in the SAC relating to the

---

[1] Because TST *prevailed* on saving some of its Washington common law claims by arguing against Defendants' motions to dismiss based on *Washington* law, TST should be judicially estopped from now contending that Massachusetts law applies. "Judicial estoppel 'precludes a party from gaining an advantage by taking one position, then seeking a second advantage by taking an incompatible position.'" *O'Brien v. City of Tacoma*, No. C04-5458FDB, 2005 WL 2045882, at *2 (W.D. Wash., Aug. 24, 2005) (quoting *Risetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 587, 600 (9th Cir. 1996)). The judicial estoppel doctrine "applies to a party's stated position whether it is an expression of intention, a statement of fact, *or a legal assertion*." *Wagner v. Prof'l Engineers in Cal. Gov't*, 354 F.3d 1036, 1044 (9th Cir. 2004).

[2] Defendants having pointed out in the Motion that TST's original corporate disclosure used a false name—Calvin Soling—TST has since filed a corrected corporate disclosure statement, apparently

DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 9



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

1  Washington Chapter and its Facebook pages, is woefully insufficient to establish that
2  Massachusetts has a stronger connection to this case than Washington.

3  The main reason why TST advocates for Massachusetts law to apply to punitive damages
4  is that TST disagrees with Washington's policy prohibiting punitive damages. Response at 13-14
5  (arguing that Massachusetts' policy regarding punitive damages is better than Washington's
6  policy). However, that TST prefers Massachusetts' policy over Washington's is irrelevant. The
7  analysis focuses on which state has the most significant contacts with the dispute. The contacts in
8  this case overwhelmingly favor Washington, the state where the conduct occurred and the only
9  state with any relationship to the events at issue. *See, e.g., Korslund*, 121 Wn. App. at 335
10  (rejecting plaintiff's argument that Virginia's punitive damage law should apply where the
11  significant contacts of the case favored application of Washington law).

**b.  TST Pleads the Opposite of its Newly Asserted "Improved Value" Damages.**

13  In its Response, TST argues for the first time that it should be entitled to an award for the
14  "improved value" to the WA Allies page. It is unclear if this damage theory is recognized in
15  Washington. The only case cited by TST addresses reasonable rental damages under RCW
16  59.04.050 and does not address the common law principle upon which TST relies, as stated in
17  Restatement (Second) of Torts § 927. No matter. It is abundantly obvious that the doctrine cannot
18  apply here because TST has alleged the exact opposite in its SAC. Far to the contrary of alleging
19  that Defendants have improved the Washington Allies page, TST alleges that Defendants have
20  damaged TST by posting critical content on the Allies page, changing its name to "Evergreen
21  Memes for Queer Satanic Friends [sic, Fiends]" and allegedly causing TST reputational damage
22  due to critical content on the page. *See, e.g.*, SAC ¶¶ 39, 46-48, 88. Indeed, one of TST's now-
23  dismissed claims was based on the premise that Defendants' use of the Facebook pages tarnished
24  TST's trademark. SAC Count 5. The severe positional contradictions—alleging in the SAC that
25  Defendants have harmed TST and now arguing that they actually have increased value for TST—

---

26  now using Mr. Soling's true first name, Cevin. *See* Motion at 5 n.2; (Amended) Corporate Disclosure Statement (Dkt. No. 34).

DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 10



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

are befuddling. This nonsensical theory of damages cannot support satisfying the amount in controversy threshold for diversity jurisdiction.

### c. TST's Damage Request for Wrongful Profits Fails Because TST has not Alleged a Fiduciary Relationship or Breach of Fiduciary Duties.

In its Response, TST also asserts for the first time that it is apparently seeking wrongfully obtained profits, which are a form of damages for conversion of chattels by a fiduciary. Response at 6-7 (citing Restatement (Second) of Torts § 927, comment j ("Conversion of a chattel by a fiduciary)). TST's damage claim for wrongful profits cannot stand because it has not alleged in its SAC any fiduciary relationship or any breach of a fiduciary duty.[3] TST cites no authority as to how damages for breach of fiduciary duties should or could apply in this case. It shouldn't.

### d. The Newly Alleged $1 Damages do not Provide the Required Jurisdictional Amount.

TST also alleges several categories of damages in the amount of $1 each: (1) lost donations or lost profits under its three common law claims (Response at 8-9); (2) reputational harm (Response at 9-10); and (3) consequential damages for attorneys' fees in remedying disparaging statements.[4] These assertions of a combined $3 in damages, even when combined with the actually pled alleged damages, fall far short of $75,000.

**D.    No Amendment Should be Permitted.**

In its Response, TST informs the Court that at some point it intends to file a motion to amend its Complaint to add an additional plaintiff, The Satanic Temple, Inc. Because TST has not yet moved the Court for leave to amend to add The Satanic Temple, Inc., Defendants will not respond to the hypothetical motion to amend here, other than to note that if TST files such a motion

---

[3] Even if such a damages theory could apply, TST does nothing to distinguish between such "profits" (which are not profits, but rather funds Defendants have raised to defend against TST's ill-conceived lawsuit) arising from the numerous dismissed federal and common law claims, and the remaining conversion / trespass to chattels claims.

[4] Damages related to remedying disparaging statements also appear to be an improper attempt to revive TST's defamation claim, which was dismissed with prejudice by this Court on February 26, 2021 (Dkt. No. 20), and for which TST's motion for reconsideration was denied by this Court on April 12, 2022 (Dkt. No. 30). TST simply cannot let go of its fatally flawed defamation claim.

DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 11



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3763

Defendants will object on the grounds that it is futile, belated, and unfairly prejudicial. TST has always known about its related corporate entity and there is no reason why The Satanic Temple, Inc. could not have been joined in this action at any point over the last two years.

TST has not sought leave to amend its SAC to properly plead diversity jurisdiction. In resolving this motion, this Court should not grant leave to amend. Liberality in allowing amendments is subject to limitations, including undue prejudice to the opposing party, bad faith by the movant, and futility. *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1058 (9th Cir. 2011). Further, "[t]he district court's discretion to deny leave to amend is particularly broad where plaintiff has previously amended the complaint." *Id.* TST has been allowed three bites at the apple through its original Complaint, its First Amended Complaint, and its current Second Amended Complaint. TST has had ample opportunity to plead diversity jurisdiction. TST knows that Defendants have limited financial means. Its efforts to multiply this litigation by, among other things, asserting implausible and possibly frivolous claims and arguments, are an attempt to punish former members for their critical opinions, as made abundantly clear by TST's counsel's public statements that he hopes the attorneys' fees in this case "squeezes every last penny from you living corpses [referring to Defendants], and anyone that gives [Defendants] the time of day." Roller Decl. ¶ 3 & Ex. 2.

Enough is enough. TST should not be allowed a fourth shot. To the extent TST wants to continue litigating its remaining common law claims, it can refile those claims in state court, which provides several cost-saving options for resolving this matter, including mandatory arbitration. *See* KCLCAR 2.1(a).

### III.   CONCLUSION

For the reasons set forth above and in Defendants' Motion, this case should be dismissed for lack of subject matter jurisdiction. TST should not be granted leave to amend. If it wishes to proceed on its common law claims against Defendants, those claims belong in King County Superior Court.

DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 12



ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

DATED: June 10, 2022.

**ARETE LAW GROUP PLLC**

By: */s/ Jeremy Roller*
Jeremy E. Roller, WSBA No. 32021
1218 Third Avenue, Suite 2100
Seattle, WA 98101
Phone: (206) 428-3250
Fax: (206) 428-3251
jroller@aretelaw.com

*Attorneys for Defendants David Alan Johnson, Leah Fishbaugh, Mickey Meehan, and Nathan Sullivan*

DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 13

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

# CERTIFICATE OF SERVICE

I certify that on June 10, 2022 I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system, thereby sending a notification of such filing to the following parties:

Benjamin Justus, WSBA No. 38855
LYBECK PEDREIRA & JUSTUS, PLLC
Chase Bank Building
7900 SE 28th Street, Fifth Floor
Mercer Island, WA 98040
(206) 687-7805
ben@lpjustus.com

Matthew A. Kezhaya
Kezhaya Law PLC
1202 NE McClain Rd
Bentonville, AR 72712
(479) 431-6112
matt@kezhaya.law

DATED: June 10, 2022, at Seattle, Washington.

*/s/ Janet Fischer*
Janet Fischer
Paralegal

DEFENDANTS' REPLY IN
SUPPORT OF MOTION TO DISMISS
No. 2:20-cv-00509-RAJ – Page 14

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250