# 2:20-cv-509

## In the United States District Court
## For the Western District of Washington

United Federation of Churches, LLC (dba "**TST**"),
*Plaintiff*

*v.*

David Alan Johnson; Leah Fishbaugh; Mickey Meeham; and Nathan Sullivan
*Defendants.*

## Motion for preliminary injunction

Note on motion calendar: **December 16, 2022**



**Matt Kezhaya**             matt@crown.law
Ark. # 2014161    direct: (479) 431-6112
Minn. # 0403196  general: (612) 349-2216

1202 NE McClain Rd. Bentonville, AR 72712

**COMES NOW** TST in support of its motion for injunctive relief.

## 1: Introduction

At issue is the Allies page and business documents. For over two and a half years, Defendants have continuously exercised wrongful dominion and control over TST's property. The Court should order that they immediately return everything they "stole."

### 1.1: Procedural history

On April 3, 2020, TST complained that Defendants stole the Allies page and business documents. (ECF 1.) TST attached Defendants' public admission that they "stole" the Allies page. (ECF 26 ¶ 48; id., exhibit 5.) After some back-and-forth on the adequacy of the complaint, the Court found that TST had pleaded viable causes for tortious interference with business expectancy, trespass to chattels, and conversion. (ECF 31, at 32.)

### 1.2: Relevant facts

Throughout this lawsuit, Defendants have regularly posted anti-TST commentary on TST's social media. (ECF 26.) On

February 22, 2022, Defendant Johnson again admitted to usurping TST's Allies page in a podcast. (Decl. Chambliss, ¶ 10).

## 2: Argument

In order to preserve TST's reputation from further harm, TST seeks a preliminary injunction enjoining Defendants' from further using TST's social media sites to push their own agenda. See Decl. of Rachel Chambliss at ¶ 12. The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. *University of Texas v. Camenisch*, 451 U.S. 390 (1981) (citing *Progress Development Corp. v Mitchell*, 286 F.2d 222 (7th Cir. 1961)). Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits. *Id*. A party thus is not required to prove his case in full at a preliminary-injunction hearing. *Id*.

To succeed on a motion for preliminary injunctive relief, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that a balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest. See *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit employs a "sliding scale" approach, according to which these elements are balanced, "so that a stronger showing of one element may offset a weaker showing of another." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under the *Winter* test, a party merits relief when it raises serious questions going to the merits of its case and a balance of hardships that tips sharply in its favor, provided it also makes a showing for the irreparable harm and public interest factors. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131. (9th Cir. 2011).

### 2.1: Defendants admitted they stole TST's Facebook page.

TST is likely to win on the merits of the conversion / trespass to

chattels claim because Defendants admitted to intentionally usurping TST's property. Claims for trespass to chattel and conversion arise from "the intentional interference with a party's personal property without justification that deprives the owner of possession or use." *Sexton v. Brown*, 147 Wash. App. 1005, 2008 WL 4616705, at *5 (Wash. Ct. App. Oct. 20, 2008) (unpublished) (citing Restatement (Second) of Torts § 217 (1965)).

Defendants have repeatedly admitted to intentionally dispossessing TST of its property. (ECF 26 at ¶¶ 46, 48, and exhibit 5). On February 15, 2022, Defendant Johnson was a guest on episode 66 of podcast, *The Dixieland Proletariat*. (Chambliss Decl. ¶ 10). During that interview, Johnson stated that "I used the admin rights to … basically talk about what had actually happened and also criticize the national leaders." (Decl. of Rachel Chambliss ¶ 10; id., exhibit A, at p. 5.)

These statements show that Defendants knew they do not have a lawful ownership interest in the Allies page, and that they intentionally dispossessed TST of its lawful ownership interest for

the greater purpose of harming TST for so long as they can get away with it. Because Defendants have repeatedly admitted to the only element of the cause of action, TST likely to win on the merits.

*2.2: TST has suffered reputational harm.*

Defendants stole the Allies page as a launching pad to promote their website[1] (the sole purpose of which is to deter people from affiliating with TST) and other social media platforms. In furtherance of Defendant's own goals, Defendants take every opportunity on social media platforms where TST is discussed among likely potential donors and members of TST to disparage TST. (Decl. Chambliss, ¶ 12.)

This is an ongoing issue. Defendants are still using TST's Facebook page to deter people from aligning with TST's beliefs. E.g.,

---

[1] https://queersatanic.com/ (last visited November 23, 2022)

from March 30, 2022:[2]



This is the digital equivalent of graffitiing TST's storefront with disparaging remarks and blockading TST from cleaning up the mess. The only remedy to this situation is an order from this Court directing Defendants to return control of TST's social media sites to TST. Because TST has lost current and potential members, and general public goodwill, TST has demonstrated irreparable harm. *Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013) ("evidence of lost control over business reputation and damage to goodwill could constitute irreparable harm.")

*2.3: The balance of equities tips in favor of TST.*

Defendants wrongfully possess property which rightfully belongs

---

[2] available at https://www.facebook.com/queersatanic/posts/pfbid0bPzi4xMYKWzMH2tN3zeJDcTTA4Q2wyRKECtGFLNn8dFLXuDLa4jjxEXLjwZQjn4hl?comment_id=1453685091727351 (last visited November 23, 2022).

to another, publicly and repeatedly admit that they "stole" the property, and are using it on an ongoing basis to harm the rightful property owner. The balance of equities plainly supports the prayed-for injunction to enjoin this "illegal activity." *Zynga Game Network, Inc. v. Goh*, No. C-09-05297-SBA (DMR), 2011 WL 13376996 (N.D. Cal. Feb. 14, 2011), report and recommendation adopted, No. C 09-05297 SBA, 2011 WL 13376997 (N.D. Cal. Mar. 1, 2011).

## 2.4: *Public policy supports the order.*

Social media dominates our society. Billions of dollars and immeasurable amounts of time are paid to Facebook for organizations to spread their message or peddle their wares. Each of these companies operates a social media presence on platforms like Facebook. Each of these organizations have people in positions of trust who are responsible for safeguarding the time, money, and attention expended on building a following.

Refusing to enter this injunction sends a message to every disgruntled employee, every would-be competitor, and every wannabe

anarchist that there are no real consequences for breaching a position of trust. Someone will want to do this again. This case could deter that wrong.

*2.5: There should be either no bond or a nominal bond.*

A bond is contemplated by the Rules. FRCP 65(c). The purpose of this security requirement is to compensate the enjoined party for any harm from a wrongful injunction. Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2954 (3d ed.). There is no credible argument that Defendants would be "harmed" by a wrongful injunction. The property indisputably belongs to TST. Defendants had no colorable claim to "steal" their principal's property. There is no harm in the loss of "their" social media platform because they should not have built the platform on property which rightly belongs to another. Thus, there should be either no bond or a nominal bond.

**WHEREFORE** the Court should enter orders as follows:

1. Compel the Defendants to immediately return admin privileges to the Allies page over to TST's control; and

2. Compel the Defendants to immediately relinquish all admin privileges to the Allies Facebook page.

Respectfully submitted on November 23, 2022.



| | |
|---|---|
| **Matt Kezhaya** | matt@crown.law |
| Ark. # 2014161 | direct: (479) 431-6112 |
| Minn. # 0403196 | general: (612) 349-2216 |

100 S. Fifth St., Ste 1900, Minneapolis, MN 55402

### CERTIFICATE OF SERVICE

**NOTICE IS GIVEN** that I, Matt Kezhaya, efiled the foregoing document by uploading it to the Court's CM/ECF system on August 15, 2022, which sends service to registered users, including all other counsel of record in this cause. *s/ Matt Kezhaya*