The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON

UNITED FEDERATION OF CHURCHES,
LLC d/b/a THE SATANIC TEMPLE,

                Plaintiff,

        v.

DAVID ALAN JOHNSON, an individual;
LEAH FISHBAUGH, an individual;
MICKEY MEEHAM, an individual; and
NATHAN SULLIVAN, an individual,

                Defendants.

No. 2:20-cv-00509-RAJ

**DECLARATION OF JEREMY ROLLER IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

NOTED ON MOTION CALENDAR:
December 16, 2022

I, Jeremy Roller, declare as follows:

1.     I am a member of the law firm Arete Law Group PLLC, counsel for defendants David Johnson, Leah Fishbaugh, Mickey Meehan, and Nathan Sullivan (collectively, "Defendants") in this matter. I make this declaration upon personal knowledge and, if called to testify, could and would testify competently to the facts set forth herein.

2.     Attached hereto as **Exhibit 1** is an electronic copy of a recording of a March 15, 2022 online (Zoom) meeting in mp4 format under the title "GMT20200315-220437_Town-Hall-_640x360 (1).mp4." The electronic copy of this recording was provided to me on December 6, 2022, by David Johnson. The electronic copy of the recording is being

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

1   submitted to the Court on a thumb drive.  The file GMT20200315-220437_Town-Hall-

2   _640x360 (1).mp4 will be provided to opposing counsel today via FTP.

3          3.      Between Wednesday, June 22, 2022, and Friday, June 24, 2022, Plaintiff's

4   lead counsel, Matthew Kezhaya, and I had a series of email exchanges relating to Plaintiff's

5   intention to bring an application for temporary restraining order.  Attached hereto as **Exhibit**

6   **2** is a true and correct copy of that email exchange, including an email I had attached to my

7   June 23 email to Mr. Kezhaya, which is further described in the contemporaneously filed

8   Declaration of David A. Johnson in Opposition to Plaintiff's Motion for Preliminary

9   Injunction and Declaration of Nathan Sullivan in Opposition to Plaintiff's Motion for

10  Preliminary Injunction.

11

12         I declare under penalty of perjury of the laws of the United States that the foregoing

13  is true and correct.

14

15         Executed in Seattle, Washington, on December 12, 2022.

16

17                                          */s/ Jeremy Roller*
                                            Jeremy Roller

18

19

20

21

22

23

24

25

26

DECLARATION OF JEREMY ROLLER
IN OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION
No. 2:20-cv-00509-RAJ – Page 2

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

1

**CERTIFICATE OF SERVICE**

2          I certify that on this date I electronically filed the foregoing document with the Clerk

3    of the Court using the CM/ECF system, thereby sending a notification of such filing to the

4    following parties:

5
           Benjamin Justus
6          Lybeck Pedreira & Justus, PLLC
           Chase Bank Building
7          7900 SE 28th Street, Fifth Floor
           Mercer Island, WA 98040
8          (206) 687-7805
           ben@lpjustus.com
9
           Matthew A. Kezhaya
10         Kezhaya Law PLC
           1202 NE McClain Rd
11         Bentonville, AR 72712
           (479) 431-6112
12         matt@kezhaya.law
13

14    DATED: December 12, 2022, at Seattle, Washington.
15

16                                        */s/ Janet Fischer*
                                          Janet Fischer
17                                        Paralegal

18

19

20

21

22

23

24

25

26

DECLARATION OF JEREMY ROLLER
IN OPPOSITION TO PLAINTIFF'S MOTION
FOR PRELIMINARY INJUNCTION
No. 2:20-cv-00509-RAJ – Page 3

ARÊTE LAW GROUP
1218 THIRD AVE., STE 2100
SEATTLE, WA 98101
O: (206) 428-3250

# EXHIBIT 1

Filed in Physical Form

# EXHIBIT 2

| | |
|---|---|
| **From:** | Matthew A. Kezhaya |
| **To:** | Jeremy Roller |
| **Cc:** | Benjamin Justus; Sonia A. Kezhaya |
| **Subject:** | Re: TST v. Johnson -- demand for return of Allies page; notice of forthcoming motion for TRO/Prelim. Injunction. |
| **Date:** | Friday, June 24, 2022 4:58:04 PM |
| **Attachments:** | image001.png |
| | image.png |
| | image001.png |

Thanks for your patience.

My original email did not recognize your previously-noticed vacation. I apologize for causing you offense. This business is stressful enough even with vacations. At no point did I intend to even suggest that I would be interfering with your time off. I have a lot of cases to oversee and your notice of unavailability simply slipped my mind. As indicated in an earlier email, I have absolutely no intention of filing anything before July 9, other than the previously-addressed letter to the Court that the Rule 65 motion and the motion to amend are forthcoming but are delayed by your vacation.

I wish you had revealed your case theory before yesterday at close of business. We could have gotten on the same page sooner, rather than litigating serial motions to dismiss over the past 27 months. Maybe that would have saved our clients a lot of time and money; not to mention Court's time and attention. Based on your email, it appears that your clients intend to rely on the affirmative defense of waiver. See FRCP 8(c) (waiver is an affirmative defense); *E.g. Kellogg v. Nat'l R.R. Passenger Corp.*, 199 Wash. 2d 205, 229, 504 P.3d 796, 810 (2022) (waiver is universally the "intentional and voluntary relinquishment of a known right and can be made unilaterally and without consideration.") More particularly, your clients appear to be under the misimpression that Tarkus had the power to waive TST's claim. As detailed below, your clients are either mistaken about the law or are confused about the facts. Below, I address the errors in their analysis. This is not a Rule 11 warning letter. See FRCP 11(c). My purpose in this letter is to invite a discussion so that we can tailor our briefing to focus on the issues of dispute.

*1: Your clients waived their waiver defense.*

Your clients will have a threshold problem of overcoming an objection that they waived their waiver defense. *See Trinity Universal Ins. Co. of Kansas v. Ohio Cas. Ins. Co.*, 176 Wash. App. 185, 197, 312 P.3d 976, 983 (2013)

(an affirmative defense, including waiver, is waived by either (1) the defendant's assertion of a defense is inconsistent with previous behavior; or (2) the defendant is dilatory in asserting the defense). Defendants waived their defense because they stated they "stole" the website (not it was given to us); and did not file a timely answer which asserts the waiver defense. FRCP 8(c), 12(a)(4).

## 1.1: Your clients acted inconsistently with their waiver defense by publicly declaring they "stole" the Allies page.

Your clients waived their defense by stating, one day after receiving Tarkus's email, that they "stole" the Allies page. 2d Am. Compl. exhibit 5, at 3 (doc. 26-5 at 3). That one declaration demonstrates that they knew full well that TST did not waive any claims and they knew full well that they had no lawful right to possess it. But their subjective beliefs are not at issue. The law examines their actions, not their self-serving testimony. By publicly declaring they "stole" the Allies page, your clients cannot thereafter claim that TST "gave" them the Allies page.

## 1.2: Your clients were dilatory in noticing their waiver defense.

Further, your clients waived their defense by being dilatory in noticing their waiver defense. At play is a policy that a defendant may not inhibit the litigation process with "trial by ambush" tactics. *Lybbert v. Grant Cnty., State of Wash.*, 141 Wash. 2d 29, 40, 1 P.3d 1124, 1130 (2000). The email on which your clients rely was sent on March 14, 2020, *i.e.* more than two years ago. They have had more than an adequate opportunity to notice this defense within the timing of the rules, and yet they chose to sit on it until it was convenient for their case strategy.

The rules do not allow for this tactic. Affirmative defenses are presented in the answer. FRCP 8(c). There is a deadline to file the answer. FRCP 12(a). That deadline is extended up to 14 days after an order denying a motion to dismiss, unless the court orders otherwise. FRCP 12(a)(4). The Court did not order otherwise. Doc. 31. Thus, your clients' timely Rule 12(b)(6) motion extended the deadline to timely notice their affirmative defenses, but only for 14 days after the order disposing of their Rule 12(b)(6) motion to dismiss. FRCP 12(a)(4). The motion to dismiss was denied on April 15, 2022. Doc. 31. Fourteen days later was April 29, 2022. Thus, your clients' deadline to issue proper notice of their affirmative defenses (waiver included) has lapsed. If this email was some new evidence not

previously available to your clients, I would be persuadable that they have not been dilatory. But, again, they have had this email for over two years. Thus, your clients failed to timely preserve their affirmative defense. Your Rule 12(b)(1) motion, hypothetically, could have further extended the deadline, but that was not filed by April 29, 2022.

### 2: Tarkus did not have the power to waive TST's claim.

Assuming without conceding that the Court will overrule the above objection, your clients' waiver defense still fails on the merits. While Tarkus was an "agent," he lacked both express and apparent authority to waive TST's chose in action. Thus, even if Tarkus had the intention of waiving TST's chose in action (he didn't), the waiver defense still fails.

### 2.1: We agree that Tarkus was an "agent."

At the relevant time of this email, Tarkus was the Media Liaison for TST. We agree that Tarkus was a common law "agent" of TST, *i.e.*:

> Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act.

*Restatement (Third) Of Agency* § 1.01 (2006); *Univ. of Washington v. City of Seattle*, 188 Wash. 2d 823, 837, 399 P.3d 519, 526 (2017) (explicitly adopted in Washington); *Ajemian v. Yahoo!, Inc.*, 478 Mass. 169, 176, 84 N.E.3d 766, 772 (2017) (same in Massachusetts).

Clearly Tarkus had authority to act for TST in *some* capacity. That was the apparent end of your clients' analysis, but it is not the end of ours.

## 2.2: Tarkus did not have authority to waive any claims to the Allies page.

The legal question at play in your clients' waiver defense is whether TST intentionally waived its chose in action. To support that claim, your clients assert that Tarkus was an agent. But that is missing a necessary step. To waive TST's claim, Tarkus first needed authority. *See Restatement (Third)*

*Of Agency* 2 Intro. Note (2006). Authority may be "actual" or "apparent." Tarkus had neither.

### 2.2.1: Tarkus did not have "actual" authority.

The scope of Tarkus's actual authority is the subject of an agreement. See Restatement (Third) Of Agency § 2.01 (2006) ("An agent acts with actual authority when, at the time of taking action that has legal consequences for the principal, the agent reasonably believes, in accordance with the principal's manifestations to the agent, that the principal wishes the agent so to act"). To substantiate my claim, I have affiliation agreement documents. These documents are being withheld, for now, because they are sensitive operational materials that are not available to the public and are not to be made available to the public. If you agree to a protective order that these materials shall be attorneys-eyes-only (*i.e.*, made available to you or any successor counsel of record and your support staff), shall never be made available to the *Johnson* defendants or the public, and shall be destroyed upon demand, I will be happy to provide them to you. Otherwise, I need to move the Court for a protective order and you will have to take me at my word below.

Tarkus's agreement with TST is comprehensive. Tarkus's scope of authority entailed the power to *use* (not own) TST's "Protected Content." Affiliation Agreement at § 2. "Protected Content" is contractually-defined to include any TST Facebook page. Id. at § 1(b). Tarkus's right to *use* the page does not translate into an *ownership* interest. Tarkus had to ensure that TST had administrative access to the Allies page at all times. Affiliation Agreement at p. 3, § 4(c). Tarkus disclaimed any ownership over the Allies page (and any other "Protected Content"), and he even covenanted not to directly or indirectly aid others in contesting TST's ownership of the Allies page. Id. § 6(a). Not only did Tarkus not have actual authority to convey a Facebook page, the contract explicitly precludes a claim that he did have actual authority to claim it.

Plainly, TST's Allies page is both *a* Facebook page and is *TST's* Facebook page. *E.g.,* 2d Am. Compl. at Exhibit 3 (doc. 26-3); see also South Sound Satanists Operational Guide. The South Sound Satanists Operational Guide controls the Allies page (which, at the time, was named the "South Sound Satanists: Friends of TST"). The Operational Guide was in existence since May 2019, well before your clients co-opted my client's property in March 2020 (see screenshot of metadata, below).

The Operational Guide permitted your clients to access the page but, again, access is not ownership. The Operational Guide repeatedly reinforces that the Allies page is the property of TST, and that it is subject to TST's control at all times. Id. at art. II, pt. D, § 3(a)(1). I am informed that your clients were provided this Operational Guide. They had subjective knowledge that TST, and not Tarkus, had the sole ownership rights and sole control rights over the Allies page. Thus, there is no meritorious claim that Tarkus had any "actual" authority to waive TST's claim to exclusive ownership over the Allies page.

image.png



## 2.2.2: Tarkus did not have "apparent" authority.

Nor did Tarkus have any "apparent" authority to waive TST's claim to exclusive ownership over the Allies page. Such apparent authority must be rooted in a "manifestation," traceable to TST, which caused your clients to "reasonably believe" that Tarkus had the power to abandon the claim. See Restatement (Third) Of Agency § 1.03 (2006) (a manifestation occurs where "A person [here, TST] manifests assent or intention through written or spoken words or other conduct"); Restatement (Third) Of Agency § 2.03 (2006). As the proponent of the claim that Tarkus had authority to act in this way for TST, it is your clients' burden to prove the following: (1) there was a manifestation that Tarkus could abandon the claim; (2) that manifestation is traceable to TST; and (3) that manifestation affords a reasonable basis for your clients to believe that Tarkus had the power to abandon the claim. See State v. Bryant, 146 Wash. 2d 90, 104, 42 P.3d 1278, 1285 (2002) ("The burden of establishing agency rests upon the one who asserts it"); see also, generally, FRCP 8(c) (waiver is an affirmative defense).

Concededly, the email satisfies the first element. However, it does not, by itself, prove the second or third elements. The second element is missing

because Tarkus is legally distinct from TST and had no actual authority to act on behalf of TST in this manner. The third element is missing because no reasonable person can rely on the manifestations of the agent to prove the agent's scope of apparent authority. *State v. Bryant*, 146 Wash. 2d 90, 103–04, 42 P.3d 1278, 1285 (2002) ("Apparent authority of an agent can be inferred only from the acts and conduct of the principal; the extent of an agent's authority cannot be established by his own acts and declarations.") Thus, Tarkus's email is not, by itself, a meritorious ground to assert a waiver defense.

## 3: There is no waiver or laches in a Rule 65 motion.

Your email contemplates a defense that a Rule 65 motion is time-barred. You do not enunciate any particular equitable theory, so I assume it is one of waiver or laches. At no point has TST indicated that it waives the right to pursue injunctive relief before a final judgment on the merits. That TST seeks injunctive relief is evident from the caption on the original complaint as well as its prayer for relief. Nor is there any deadline for TST to move for such relief. Nor is there any form of reasonable and detrimental reliance, by your clients, upon TST not filing the motion sooner. Mostly because of your clients' strategy of filing serial Rule 12 motions, there has been no plan for discovery, trial preparation, and no other substantive activity. When this litigation began, it was in a lower priority category, relative to TST's other organizational goals. That has changed in light of your clients' repeated efforts (in connection with the cause of action here) to induce third parties into making defamatory claims about TST. Now that I am having to sue out a series of defamation claims all over the country because of your clients, my attention has been forced to this matter instead of the organization's otherwise more important goals. That change, caused by your clients, preempts any claim of "dilatory" conduct.

You do not otherwise rebut my points and authorities, so I assume there is no bona fide dispute about whether your clients are in possession of my client's property in violation of my client's exclusive property rights. Again, your clients publicly admitted to all of the necessary elements to the legal claims by stating they "stole" the Allies page. 2d Am. Compl. Exhibit 5, at 3 (doc. 26-5, at 3).

## I do not address secret evidence.

You also make a cryptic reference to a "video by another TST agent in which that agent states--after the alleged misappropriation--that 'we're not going to ask [my client] to give the page back in any way.' " I do not address secret evidence. Present the proof and tie it to a discrete legal theory, with substantiating authorities, or do not waste my time with innuendo.

## I am not impressed by Rule 11 bluffs.

You also make a cryptic threat of Rule 11 sanctions, but your email does not purport to satisfy the requirement of a Rule 11 letter. FRCP 11(c)(1). I am not impressed by bluffs. Serve the motion as contemplated by the rule, or do not waste my time. Be you forewarned that any Rule 11 motion will be met with a counter-demand for attorney's fees from you, personally, when it fails. FRCP 11(c)(2) ("If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion"); FRCP 11, 1993 amendment notes ("Monetary responsibility for such violations [a frivolous legal contention] is more properly placed solely on the party's attorneys.")

### No waiver

My statements above are intended to prompt discussion for more productive briefing. Nothing in this email is intended to waive any argument, claim, defense or otherwise.

Matthew A. Kezhaya

Arkansas office:
Kezhaya Law PLC
1202 NE McClain Rd
Bentonville, AR 72712
p: (479) 431-6112
f: (612) 349-2760
e: matt@kezhaya.law

Minnesota office:
Kezhaya Law PLC
333 N Washington Ave, #300

Minneapolis, MN 55401
p: (479) 431-6112
f: (612) 349-2760
e: matt@kezhaya.law

This message may contain confidential or privileged information and was
intended for a particular recipient.  If it appears that I sent this to you in
error, please inform me and delete this message.


On Fri, Jun 24, 2022 at 2:34 PM Matthew A. Kezhaya <matt@kezhaya.law> wrote:

> Likewise, *buon viaggio*.
>
> Matthew A. Kezhaya
>
> Arkansas office:
> Kezhaya Law PLC
> 1202 NE McClain Rd
> Bentonville, AR 72712
> p: (479) 431-6112
> f: (612) 349-2760
> e: matt@kezhaya.law
>
> Minnesota office:
> Kezhaya Law PLC
> 333 N Washington Ave, #300
> Minneapolis, MN 55401
> p: (479) 431-6112
> f: (612) 349-2760
> e: matt@kezhaya.law
>
> This message may contain confidential or privileged information and was
> intended for a particular recipient.  If it appears that I sent this to you in
> error, please inform me and delete this message.
>
>
> On Fri, Jun 24, 2022 at 2:33 PM Jeremy Roller <jroller@aretelaw.com> wrote:
>
>> Thank you, and have a good weekend.
>>
>>
>> Jeremy
>>
>>
>> **Jeremy Roller**

**Signature Block7**



www.aretelaw.com | direct: (206) 428-3254

**From:** Matthew A. Kezhaya <matt@kezhaya.law>
**Sent:** Friday, June 24, 2022 12:31 PM
**To:** Jeremy Roller <jroller@aretelaw.com>
**Cc:** Benjamin Justus <ben@lpjustus.com>; Sonia A. Kezhaya <sonia@kezhaya.law>
**Subject:** Re: TST v. Johnson -- demand for return of Allies page; notice of forthcoming motion for TRO/Prelim. Injunction.

That is fair. There will be no form of a request for injunctive relief before July 9. We have also identified that we are contemplating a motion for leave to amend. That will also not be filed before July 9. I will, however, likely file a letter notice to the Court that these forthcoming motions are not being filed until or on after July 9 by agreement of counsel in light of your previously noticed vacation.

Matthew A. Kezhaya

Arkansas office:

Kezhaya Law PLC

1202 NE McClain Rd

Bentonville, AR 72712

p: (479) 431-6112

f: (612) 349-2760

e: matt@kezhaya.law

Minnesota office:

Kezhaya Law PLC

333 N Washington Ave, #300

Minneapolis, MN 55401

p: (479) 431-6112

f: (612) 349-2760

e: matt@kezhaya.law


This message may contain confidential or privileged information and was intended for a particular recipient.  If it appears that I sent this to you in error, please inform me and delete this message.


On Fri, Jun 24, 2022 at 2:28 PM Jeremy Roller <jroller@aretelaw.com> wrote:

> Matt,
>
> Just tell me whether or not you are going to be filing a TRO application or PI motion between now and July 9.  I need to know that.  It's not too much to ask.
>
> Jeremy
>
> **Jeremy Roller**
>
> **Signature Block7**
> 
>
> www.aretelaw.com | direct: (206) 428-3254
>
> ---
>
> **From:** Matthew A. Kezhaya <matt@kezhaya.law>
> **Sent:** Friday, June 24, 2022 12:21 PM
> **To:** Jeremy Roller <jroller@aretelaw.com>
> **Cc:** Benjamin Justus <ben@lpjustus.com>; Sonia A. Kezhaya <sonia@kezhaya.law>
> **Subject:** Re: TST v. Johnson -- demand for return of Allies page; notice of forthcoming motion for TRO/Prelim. Injunction.

I will respond in good time.


Matthew A. Kezhaya


Arkansas office:

Kezhaya Law PLC

1202 NE McClain Rd

Bentonville, AR 72712

p: (479) 431-6112

f: (612) 349-2760

e: matt@kezhaya.law


Minnesota office:

Kezhaya Law PLC

333 N Washington Ave, #300

Minneapolis, MN 55401

p: (479) 431-6112

f: (612) 349-2760

e: matt@kezhaya.law


This message may contain confidential or privileged information and was intended for a particular recipient.  If it appears that I sent this to you in error, please inform me and delete this message.


On Fri, Jun 24, 2022 at 2:20 PM Jeremy Roller <jroller@aretelaw.com> wrote:

Matt and Ben,

Can you get back to me on my inquiry at the end of my email below?  I need to figure out whether I need to try to get one of my partners up to speed on this matter in the next few hours.  Thanks.

Jeremy

**Jeremy Roller**

**Signature Block7**



www.aretelaw.com | direct: (206) 428-3254

---

**From:** Jeremy Roller
**Sent:** Thursday, June 23, 2022 4:08 PM
**To:** Matthew A. Kezhaya <matt@kezhaya.law>
**Cc:** Benjamin Justus <ben@lpjustus.com>; Sonia A. Kezhaya <sonia@kezhaya.law>
**Subject:** RE: TST v. Johnson -- demand for return of Allies page; notice of forthcoming motion for TRO/Prelim. Injunction.

Matt,

Thank you for your email.  I must admit I am perplexed by it, both in timing and substantively.  Below and attached are a few points for your consideration.

1. As to timing, as you should know from the notice of unavailability I filed in early June, I am out of the office the weeks of June 27 and July 4.  If this were just a trip to visit family members somewhere in the U.S., I wouldn't have filed such a notice and likely would be able to deal with anything filed in this case or other matters.  But I am going abroad and do expect to be pretty close to fully disengaged.  Indeed, on the first half of the trip I will be hiking with my family in the Dolomites and am unlikely to have even cell phone service (and will certainly not have a computer in my backpack).  This case has been pending for

nearly two and a half years, and there is no reason why this proposed preliminary injunctive relief need be considered in the only period of time I have truly been out-of-pocket since before COVID.

2. Further as to timing, TST's long delay in seeking injunctive relief severely undermines its claim of irreparable harm. *See, e.g., Garcia v. Google, Inc.*, 786 F.3d 733, 746 (9th Cir. 2015) (upholding district court's finding that delay of approximately three months before seeking preliminary injunction "undercut [Plaintiff's] claim of irreparable harm"); *see also Oakland Tribune, Inc. v. Chronicle Publ'g Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm."); *Lydo Enters., Inc. v. City of Las Vegas*, 745 F.2d 1211, 1213 (9th Cir. 1984) ("By sleeping on its rights a plaintiff demonstrates the lack of need for speedy action.") (quoting *Gillette Co. v. Ed Pinaud, Inc.*, 178 F. Supp. 618, 622 (S.D.N.Y. 1959)).  Nothing prevented TST from bringing this request for preliminary injunctive relief 27 months ago.  That all this time has passed will severely undercut, if not be fatal to, TST's request for preliminary injunctive relief.  Much more, seeking a TRO now given that passage of time is plainly unwarranted.

3. The purpose of preliminary injunctive relief is to preserve the status quo pending determination of the action on the merits. *L.A. Mem'l Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1200 (9th Cir. 1980).  Here, the status quo— for years—has been that my clients have controlled the Allies page.  In limited circumstances, a court will issue a mandatory (as opposed to prohibitory) injunction, as TST threatens here.  But "[a] mandatory injunction goes well beyond simply maintaining the status quote pendente lite and is particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009).  Indeed, "[i]n general, mandatory injunctions are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages." *Id.*  The mandatory injunction TST threatens is not based on alleged harm that comes close to meeting this high standard.

4. Finally, you are wrong that TST has an "indisputable" likelihood of success on the merits.  There are abundant reasons for that, but the attached email (along with other evidence in my clients' possession) is fatal to TST's claim as to the Allies page.  In this email, TST's Paul Case / Tarkus Claypool, writes that the Allies page is "yours free and clear and we've no desire to claim it."  Critically, this email was sent *after* the alleged appropriation about which TST complains.  Case / Claypool plainly was acting as an agent of TST.  Indeed, TST's Second Amended Complaint (and First Amended Complaint and original Complaint) relies upon Case / Claypool's demand for return of the Chapter page.  This is not the only evidence of TST's abandonment of any claim to the Allies page.  For example, my clients possess a video by another

TST agent in which that agent states—after the alleged misappropriation—that "we're not going to ask [my client] to give the page back in any way." Given this evidence, any TRO application or preliminary injunction motion seeking return of the Allies page would violate your and Mr. Justus's Rule 11(b) certifications that "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation," and that "the factual contentions have evidentiary support." Indeed, given that you now have this evidence (which I presume your client has not previously provided to you), you should drop the claims as to the Allies page. I don't invoke Rule 11 lightly – in 20+ years of practice I can count on one hand (not even using my thumb) the number of times I have raised it – but it does apply here.

This is not an exhaustive recitation of the reasons TST's contemplated TRO application / PI motion is unwarranted.

==Please confirm by tomorrow morning that TST will not seek a TRO or preliminary injunction relating to the Allies page. If TST is unwilling to do that, at a minimum please confirm that no such application or motion will be filed between now and my return from Italy on July 9.==

Thank you.

Jeremy

**Jeremy Roller**

**Signature Block7**


www.aretelaw.com | direct: (206) 428-3254

---

**From:** Matthew A. Kezhaya <matt@kezhaya.law>
**Sent:** Wednesday, June 22, 2022 1:44 PM
**To:** Jeremy Roller <jroller@aretelaw.com>
**Cc:** Benjamin Justus <ben@lpjustus.com>; Sonia A. Kezhaya <sonia@kezhaya.law>
**Subject:** TST v. Johnson -- demand for return of Allies page; notice of forthcoming

motion for TRO/Prelim. Injunction.


Hi Jeremy,


Please see below for a formal demand for the immediate return of the Allies page to the exclusive control of my client. If your clients do not heed this demand, I will file a motion for temporary restraining order and for preliminary injunction. My points and authorities for the motion are under enumerated headers below. This letter is intended to satisfy my notice obligations under FRCP 65(a)(1) and (b)(1)(B).


## *Demand for the return of the Allies page*

I've seen in some of your briefing an objection that TST has not formally demanded the return of the Allies page. In recognition that a formal demand is not necessary to plead or prove the trespass to chattels or conversion claims, see doc. 31 at 27-28, please consider this email an immediate demand for the return of full control over the Allies page to TST. And I do mean this demand for full control shall be "immediate" *i.e.*, "occurring without delay; instant." *Black's Law Dictionary*, IMMEDIATE (11th ed. 2019).


Notwithstanding the formality of my demand, I assume your clients will continue to refuse to relinquish control of TST's property. In response, I will have to move for a temporary restraining order and preliminary restraining order. FRCP 65(a), (b). Each request requires two showings: (1) a likelihood of success on the merits; (2) irreparable harm; and (3) the balance of the equities favors immediate relief. I am prepared to show all points.


## *1: TST has a likelihood of success on the merits*

It confounds me, that your clients refuse to relinquish control over my client's property *because* success on the merits is inevitable. Indisputably, your clients are in possession of my client's property. The Allies page was created by an agent of TST in the course and scope of the agency to propagate TST's message. Facebook publishes all former names of every Facebook page; the subject

website began as "South Sound Satanists: Friends of TST." 2d Am. Compl., doc. 26-3, **Exhibit 3**. Your clients even eliminated any potential defense of a good faith mistake when they publicly bragged that they "stole" TST's website.  2d Am. Compl., doc. 26-3, **Exhibit 5** at 3. They knew the property was not theirs and they knew that it was unlawful for them to be in possession of it. Yet they took that property anyway.

It is bad enough that your clients are self-described "thieves." It is worse that they went even further by "stealing" their former principal's property for the purpose of making the initial capital contribution to their competitor organization. **Id.** at 3-4. That was a breach of their fiduciary duty of loyalty to their principal. See Restatement (Second) of Torts § 874 (1979); *Micro Enhancement Int'l, Inc. v. Coopers & Lybrand, LLP*, 110 Wash. App. 412, 433–34, 40 P.3d 1206, 1217–18 (2002); *Ward v. Costello*, No. 984871J, 2002 WL 31973253, at *7 (Mass. Super. Dec. 17, 2002); *Hanover Ins. Co. v.* Sutton, 46 Mass. App . Ct. 153, 167, 705 N.E.2d 279, 290 (1999) ("A person who owes a fiduciary duty to a corporation is prohibited from taking, for personal benefit, an opportunity or advantage that belongs to the corporation.")

Based on your clients own public admissions, it is indisputable that TST has a "likelihood of success on the merits."

## *2: TST is continuing to incur irreparable harm*

Not only does my client have a likelihood of success on the merits, my client will continue to suffer irreparable harm during the pendency of this litigation. Your clients are using my client's property to cause reputational harm to my client. E.g. **Exhibit 1** (publicly discouraging people from associating with TST, using TST's "stolen" advertising platform). Your clients repeatedly claim that they have a right to criticize TST. They do. They just need to do it within the bounds of the law, *i.e.*, by limiting their criticisms to matters of pure opinion (as opposed to provably-false facts or mixed opinions that impliedly suggest a provably-false factual premise); and they need to do only in connection with their own social media platforms. If they could just mind the legal limits of their criticisms, we could all go our separate ways in peace.

But they aren't. As stated above, it is an abuse of my client's property rights (and your clients' fiduciary duties) to use my client's property to make harmful statements about my client. Irrespective of any defamation liability, the reputational harm is *still* enjoinable through the trespass to chattel and conversion claims. *Galaxy Oil Co. v. Ameeti*, No. SACV2100311CJCKESX, 2021 WL 4047405, at *3 (C.D. Cal. Mar. 9, 2021) (applying California common law claims). Same for the tortious interference claim.  *eBay, Inc. v. Bidder's Edge, Inc.*, 100 F. Supp. 2d 1058 (N.D. Cal. 2000).


Reputational harm is textbook "irreparable harm." E.g. *Herb Reed Enterprises, LLC v. Fla. Ent. Mgmt., Inc.*, 736 F.3d 1239, 1250 (9th Cir. 2013). As is plain from the posts and commentary on my clients' website, your clients' use of my clients' property is causing my client reputational harm. Thus, irreparable harm exists and TST is entitled to a TRO and a preliminary injunction.


You have previously objected that Washington's application of the common law *may* be different from other States' common law. Doc. 37 at 9. But that's a fallacious appeal to ignorance. It is your threshold burden to demonstrate that the end result is different under two States' laws. *Woodward v. Taylor*, 184 Wash. 2d 911, 917, 366 P.3d 432, 435 (2016). Washington, Massachusetts, and California, all receive the common law, unless the common law is repugnant to or inconsistent with Federal or State law. RCW §§ 1.12.030 and 4.04.010 (Washington); Mass. Const. Pt. 2, C. 6, art. VI (Massachusetts); Cal. Civ. Code § 22.2 (California).


Thus, irreparable harm exists under the common law, notwithstanding that some of my authorities come out of California or Massachusetts or the  ALI's *Restatements of the Law*.


*3: The equities favor immediate injunctive relief.*

The motion also requires a balance of the equities. Magistrate Judge Ryu has found that the balance of the equities favors an injunction where the "Plaintiff essentially seeks to enjoin illegal activity and not legitimate business operations by [the] Defendant." *Zynga Game Network, Inc. v. Goh*, No. C-09-05297-SBA (DMR), 2011 WL 13376996 (N.D. Cal. Feb. 14, 2011), *report and recommendation adopted,* No. C 09-05297 SBA, 2011 WL 13376997 (N.D. Cal. Mar.

1, 2011).

As stated in § 1, your clients' use of my client's property is in violation of my client's exclusive rights. Your clients are engaging in ongoing illegal activity. It is not a legitimate business operation to "steal" someone's website. *Zynga*, above. Thus, the balance of equities clearly favor an immediate return.

*4: There should be either no bond or a nominal bond.*

A bond is contemplated by the Rules. FRCP 65(c). The purpose of this security requirement is to compensate the enjoined party for any harm from a wrongful injunction. Wright & Miller, 11A Fed. Prac. & Proc. Civ. § 2954 (3d ed.).  I can conceive of no credible argument that your clients would be "harmed" by a wrongful injunction. The property indisputably belongs to TST. The Defendants had no colorable claim to "steal" their principal's property. There is no harm in the loss of "their" social media platform. They should not have built the platform on property which belongs to another. Thus, there should be either no bond or a nominal bond.

# Summary

We can fight about damages during the litigation. But *pendente lite*, my client is entitled to exclusive control over its property. Your clients must return the property immediately, or I will move for immediate injunctive relief at my earliest opportunity. As you can see, the motion is all but drafted. I am not waiting for an affirmative response that the property will be returned. Please have your clients return full control of the Allies page, immediately and without any further modification.

Matthew A. Kezhaya

Arkansas office:

Kezhaya Law PLC

1202 NE McClain Rd

Bentonville, AR 72712

p: (479) 431-6112

f: (612) 349-2760

e: matt@kezhaya.law


Minnesota office:

Kezhaya Law PLC

333 N Washington Ave, #300

Minneapolis, MN 55401

p: (479) 431-6112

f: (612) 349-2760

e: matt@kezhaya.law


This message may contain confidential or privileged information and was intended for a particular recipient. If it appears that I sent this to you in error, please inform me and delete this message.



## Evergreen Memes for Queer Satanic Fiends

1 message

**Tarkus Claypool** <tarkus.claypool@gmail.com>                                    Sat, Mar 14, 2020 at 9:09 PM
To: Lenore Calavera <lenorecalavera@gmail.com>

Hi Lenore,

I saw that you made some changes to the TST WA State Allies FB group. I just wanted to let you know that it's yours free and clear and we've no desire to claim it. You and ADJ built it and have done a great job doing so. I'm confident you'll both continue doing awesome work.

Sorry the way things panned out, and I do mean all of it. I wish you and your family well, and respect your need to fight the fight your way.

Rock on,

Tarkus Claypool
Media Liaison, The Satanic Temple of Washington
(he/him)
--

CONFIDENTIALITY NOTICE

The content of this email is confidential and intended only for those parties who received the email directly from the tarkus.claypool@gmail.com address. It is strictly forbidden to share any part of this message with any third party, without a written consent of the sender.